IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA

RECEIVED

2006 APR 27  A 9: 44

James Charley Moon, #212228,          )
                                      )
        Petitioner,                   )
                                      )
    v.                                )         Civil Action No._____
                                      )
Samuel Rayapati, M.D., et al.,        )         2:06CV384 - WKW
                                      )
        Defendant(s)                  )


## ADDITION TO §1983 COMPLAINT FORM


    The following are additions to the §1983 Complaint Form filed in
this matter.  They are listed by section and number.


### ADDITIONAL DEFENDANTS

1.)  Nettie Burks, R.N., Prison Health Services, Inc.
2.)  Prison Health Services, Inc. (Medical Provider)
3.)  Dr. Miers (Dentist), Prison Health Services, Inc.
4.)  Dr. West (Dental Surgeon), Prison Health Services, Inc.
5.)  Dr. W.E. Shirley (Dentist), Prison Health Services, Inc.
6.)  Richard Allen, Commisioner, Alabama Department of Corrections
7.)  Ruth Naglich, Associate Commissioner, Alabama Department of Corrections
8.)  J. C. Giles, Warden III, Ventress Correctional Facility
9.)  Larry Monk, Captain, Ventress Correctional Facility
10.) Sherwin Carter, Sargaent, Alabama Department of Corrections, Ventress
     Correctional Facility


### SECTION I

I.  Previous Lawsuits

    A.  Have you begun other lawsuits in state or federal court(s) dealing
        with the same facts involved in this action or otherwise relating
        to your imprisonment?

        Yes ( X )          No (  )


    B.  If your answer to (A) is "Yes" describe each lawsuit in the space
        below.  (If there is more than one lawsuit, describe the additional
        lawsuit(s) on another piece of paper, using same outline.

        1.  Parties to this previous lawsuit:
            Plaintiff(s):  James C. Moon

(1)

Defendant(s):  Dr. Rayapati, M.D., Ventress Correctional Facility
                Nettie Burks, R.N., Ventress Correctional Facility
                Prison Health Services, Inc.


This involved a lawsuit about esophageal stricture that I had.  The
parties involved would not approve the dilation of the esophagus so that
food would pass through the stomach.  I brought up during the hearing
about the dental problems I was having due to "NO" dentist during June, 2004
through March, 2005 **Lack of Staff**.  They said "I would have to sue them
separately on this because I did not name anyone in particular.


2.  Court (if federal court, name the district; if state court,
    name the county).

    In the Circuit Court of Montgomery County, Alabama.

3.  Docket Number:  CV-04-3287

4.  Name of Judge to whom case was assigned:  Judge Charles Price

5.  Disposition:  (for example, was the case dismissed?  Was it
    appealed?  Is it still pending?

    Yes, appealed.    Yes, dismissed.   Yes, still pending.

6.  Approximate date of filing lawsuit:   Jan. 17, 2005

7.  Approximate date of disposition:  Pending


II.  Place of present confinement:  Ventress Correctional Facility

A.  Is there a prisoner grievance procedure in this institution?

    Yes (XX)      No (X)
    Yes to Prison Health Services, Inc.
    No to Alabama Department of Corrections having a grievance
     procedure.


B.  Did you present the facts relating to your complaint in the
    state prisoner grievance procedure?

    Yes ( X )      No ( )

    Yes as to pertaining to Prison Health Services, Inc.
    There is no grievance procedure in the Alabama Department of
     Corrections.


C.  If your answer is Yes:

    1.  What steps did you take?  Prison Health Services, Inc. has
a complaint form which I filed, and grievance form(s) which I filed at least
three (3) request forms I sent to the Director of Nursing (D.O.N.).

The Alabama Department of Corrections (ADOC) has no grievance procedure or administrative remedy, but I did file request slips and put the Department of Corrections and Prison Health Services, Inc.  on Notice that their conduct is violating established law if the State of Alabama law at the time gave them "fair warning" that their conduct would be unconstitutional five (5) pages of case law and allegations.


   2.  What was the result?  As to this writing, I still have not had my partial plates made, my false tooth has not been replaced, my teeth still need cleaning, stricture still needs to be stretched (esophageal tube), due to taking so much pain medication for abcessed teethe for 7 1/2 months. There is no tooth paste for brushing my teeth, that has not been resolved.


   D.  If your answer is NO, explain why Not?


   III.  Parties

   In Item (A) below, place your name(s) in the first blank and place your present address in the second blank.  Do the same for additional plaintiffs, if any.

**PLAINTIFF**

James Charles Moon
Ventress Correctional Facility
P.O. Box 767
Clayton, AL  36016

**DEFENDANTS**

1.)  Samuel Rayapati, M.D.
     Medical Department
     Ventress Correctional Facilty
     P.O. Box 767
     Clayton, AL  36016

2.)  Nettie Burks, D.O.N.
     Medical Department
     Ventress Correctional Facility
     P.O. Box 767
     Clayton, AL  36016

3.)  Prison  Health Services, Inc.
     V.C.F. Medical Provider for inmates
     West Park Dr. (Suite 200)
     Brentwood, TN  37027

4.)  Dr. W.E. Shirley, Dentist
     Dental Depat.
     Ventress Correctional Facility
     Clayton, AL  36016

5.)  Dr. Miers, Dentist
     Dental Dept.
     Ventress Correctional Facility
     P.O. Box 767
     Clayton, AL  36016

6.)  Dr. West, Dental Surgeon
     Dental Dept.
     Ventress Correctional Facility
     P.O. Box 767
     Clayton, AL  36016

-3-

7.) Richard Allen, Commissioner
Alabama Department of Corrections
1400 Lloyd St.
Montgomery, AL  36130

8.) Ruth Naglich, Associate Comm.
Alabama Department of Corrections
1400 Lloyd St.
Montgomery, AL  36130

9.) J. C. Giles, Warden III
Ventress Correctional Facility
P.O. Box 767
Clayton, AL  36016

10.) Larry Monk, Captain
Ventress Correctional Facility
P.O. Box 767
Clayton,  AL  36016

11.) Sherwin Carter, Sargeant
Ventress Correctional Facility
P.O. Box 767
Clayton, AL  36016

12.) Ms. Marsh,L.P.N.
Ventress Correctional Facility
P.O. Box 767
Clayton, Al.  36016

-4-

## IV.  STATEMENT OF CLAIMS

1.)  The Plaintiff alleges that (Moon) has been eligible for dentures (partial plates) since 2004 has been told dentist in March 30, 2005.  He said he would have my teeth cleaned and partial plates made this still has not been done, as to this writing.  I even put a dental slip in 2004 to have my teeth cleaned.

2.)  The Plaintiff alleges and claims that defendants D.O.C. contracted out to Prison Health Services, Inc. is guilty of dereliction of duty in their failure to hire a permanent dentist for care and treatment of inmates hygiene in Ventress Correctional Facility, that said  defendants has <u>failed</u> to live up to their agreement with the Alabama Department of Corrections.  As Prison Health Services, Inc. <u>has</u> <u>not</u> and does not properly care and treat inmates dental needs, such as Plaintiff's (Moon) seriously infected gums, bad teeth and broken false tooth and to make partial plates, this delay of 2004-2006 years with "severe pain and resulting in permanent damage to his teeth ...bleeding gums, breaking teeth and his inability  to eat properly and as a direct result there of, plaintiff Moon has severly suffered unnecessary harm, pain and substantial hardship over and obviously unnecessary period of time.

3.)  The plaintiff alleges and claims that due to D.O.C. not having a full time dentist here at Ventress Correctional Facility and taking so much pain relieving medication for dental pain, that it has caused substantial damage to Moon's esophagus that it caused a stricture where plaintiff cannot swallow said "medication for depression prescribed by mental health that plaintiff takes for his well being" is being  effected for Moon is no longer being prescribed and as a direct result thereof, Plaintiff has severly suffered unnecessary harm, pain and substantial hardship over an obviously unnecessary period of time.

4.)  Plaintiff alleges that the Department of Corrections (Defendants) failed to provide toothpaste.  We are supposed to get tooth paste every 2 months, one 2.7 ounce tube.  If you brush your teeth three times a day after meals it will last about two weeks.  This leaves 6 weeks without tooth past.

If you are not awake around 11:00 p.m. til midnight on Friday nights they will not leave you any toothpaste at the foot of your bed, then if you go to the Shift Office and ask for some they cuss you out and say "Can't you read, we're out!"

5.) Plaintiff alleges Dr. Rayapati delayed recommended "E.G.D." after intensive therapy (anti-reflux therapy with proton pump inhibitor for two to three months) because of the severe inflammation the patient (Moon) was not dilated. This delay was over 1 year, since this was recommended December 9, 2004 and again December 3, 2005 and was not performed until February 16, 2006. See "Operative Note" dated December 9, 2004 by Dr. Jackson, Montgomery Surgical Center. Also, in this typed letter he also recommended that what ever was necessary to take care of Moon's dental problem. A delay of 7 and 1/2 months or 225 days to extract #29 tooth as the dental charts along with emergency charts will show this caused severe damage to the esophagus.

6.) Plaintiff alleges Dr. Rayapati has failed to follow the express post-operative directions of the surgeon who had operated on the prisoner.

Clearly then, the defendants conduct, as alleged by Moon, was more that mere negligence or poor medical judgment; it is charged to have been deliberate indifference to, and defiance of explicit medical instructions, resulting in serious and obvious injuries.

The indifference can be manifested by Dr. Rayapati in taking the easier and less efficacious route in treating an inmate. If prison guards delay or deny access to medical or dental care or intentionally interfere with treatment once prescribed, the Eighth Amendment is violated.

7.) Plaintiff alleges Dr. Rayapati's thinking is treat the symptoms, not the problem, taking away pain relieving medication in not the answer to Plaintiff Moon's dental problems. We had no permanent dentist from June 2004

-6-

through March, 2005 due to his death in an auto accident.  Dr. Rayapati
could have sent Plaintiff to Easterling Correctional Facility, 30 minutes
away to have tooth #29 extracted.  As a result, there was a seven and one
half month delay in extracting the tooth caused by lack of staff during which
Plaintiff "suffered considerable pain."

8.)  Plaintiff alleges in Prison Health Services authorization letter
they would only authorize one visit for outpatient surgery:  for endoscopy
and dilation due to high cost this is as stated in above, know as delay
of necessary treatment for non-medical reason...establishes deliberate
indifference for (1) one year delay in treatment known to be necessary.
Dr. Rayapati refused to follow recommended treatment due to his defiance
of implicit medical instructions, to treat the symptoms not the problem,
caused detrimental, irreversible damage to Plaintiff Moons esophagus.
For the pain medicine Moon was taking for abcessed teeth, would stick to
the esophagus were the 1/4 inch stricture was and dissolve in the esophagus
instead in the stomach as intended, during which Plaintiff "suffered
considerable pain," obviously unnecessary period to time, for which Plaintiff
seeks just relief.

9.)  Plaintiff alleges prison officials showed deliberate indifference
to inmate's medical, dental and psychiatric care needs in violation of Eighth
Amendment, where, due to overcrowding, officials have failed to provide
adequate staffing and equipment, and failed to maintain environment conducive
to treatment of serious medical illness.  Unnecessarily causing Plaintiff
to suffer extreme physical and mental hardship for which Plaintiff seeks
just relief.

10.) Plaintiff alleges that Moon should be on chronic care for I have been on it before, when NaphCare had the D.O.C. medical contract.It has been over two years since I have seen a eye doctor,and when I did my eye pressure was high,25 pounds. He prescribed eye medication which took over a month and a half to receive,because the medication was deemed to "high cost".They did not want to pay,but received a cheaper medication was a delay in medical treatment,caused Plaintiff to suffer unnecessary harm,and pain and substantial hardship over an obviously unnecessary period of time.

11.) Plaintiff alleges the Department Of Corrections is intentionally defrauding thousands of inmate of there general funds by putting a freeze on their funds, but yet the Department Of Corrections is still allowed to collect interest off these funds.The D.O.C. does not allow the inmate to have use of these frozen funds until their release this falls under fraud because they are freezing inmates funds with no due process hearing ,hearing or legal stand point except to say that their funds are frozen and yet the D.O.C. still collects the monthly interest to use for their needs for an unlimited amount of years,depending on each individual's re-lease date.Plaintiff avers that this is a fraudlent criminal act and is clearly a violation of his rights D.O.C. has no jurisdiction to freeze or take or divert any funds belonging to an inmate without some sort of legal court order.Plaintiff has tried on the 9th day of February ,2006 to spend some of this $110.00 for store for such items as toothpaste,antacid tabets  for medical condiction,I have even asked in request slip's for release of these funds for the things that are nec-essary for one's personal hygiene and medical needs is a deliberate indiffernce to serious medical needs for which plaintiff would seek the federal courts inter-vention.How much could D.O.C. realistically make by defrauding thousands of inmates for an unknown and unpresidented amount of time to make and unknown amount of money which plaintiff seeks relief for.

**STATEMENT OF FACTS**

On August 18,2004,Plaintiff put in a dental slip for toothache and need to get his teeth cleaned,for it had been six (6) years since they had been cleaned.Our last dentist had died in an automobile accident in June of 2004, leaving us without a dentist.See Exhibits_____.On October 10,2004,I still had not been seen,and I had two (2) teeth had become abcessed.My right bottom started swelling and also  a broken and decayed tooth,front upper and swelling to the gum above.Dr. Raypatti prescribed Pen VK 500 mg.=10 days PO tid and Tylenol 500 =PO tid Prn 7 days,thier was also yellowish drainage coming from the gums.See Exhibits_____.This was the second request for dental help.

On October 27,2004,a dentist came from Kilby Correctional Facility.Dr. West looked at the two teeth that were abcessed,but said "He could not pull them"This was the third request to get the two teeth pulled.See Exhibit_____.The dental record sheet shows""read"See Exhibit_____.Two (2) months ago abcess on bottom tooth #8,abcess to distal #29.I was again put on anti-biotics again for seven days and seven days pain medication.Had Dr. West scheduled me an appointment for extraction at the end of the anti-biotics wich was seven days then I would not had to suffer for 225 days and continued pain medication which put my health at risk because of the erosion to the esophagus and stomach.

**"INTENTIONAL FAILURE TO PROVIDE SERVICE ACKNOWLEDGED TO BE NECCESSARY IS THE DELIBERATE INDIFFERENCE PROSCRIBED BY THE CONSTITUTION"**

Second,Plaintiff alleges that the defendants failed to provide proper medical care.Plaintiff,s allegations go far beyond that of a simple mistake or negligance.Rather,they maintain that the medical care provided was cursory as to amount to no treatment at all.Such actions,in this case,of serious medical problems,may violate the fourteenth amendment.

On December 4.2004.I sent an inmate request slip to Mrs. Burks,Director of Nursing (D.O.N.).This was the fourth request slip for medical help,I wrote. See Exhibit_____.I put in August,2004,a sick call slip for dental,since then I had done a body chart for abcessed or infected teeth,put on anti-biotics for two different times and pain medication,and I still have not been called back to have my teeth pulled or repaired.

On December 9,2004, I was shceduled for surgery,a dialation of the esophagus, where the esophagus would be stretched mechanically so the food would pass through to the stomach,So I could eat normally like other people do.See operative notes, Exhibit_____.Dr. Jackson,s diagnosis was,I had severe erosive esophagitis and that I had developed a esophagal stricture,but due to the severe inflamation the patient was not dialated or strecthed.Dr. Jackson sent a letter back stating that the prior to the procedure,that the patient gave a history of having severe toothache pain,that the pain medication was bad on the esophagus and we strongly reccomend whatever efforts neccesary to have his dental problem taken care of.See Exhibit _____.He also recommended a repeat esophagogastroduodenoscopy at the end of this treatment,in 8 to 12 weeks.

There at least three seperate,although somewhat overlapping aspects to Plaintiff''s claim of deliberate indifference.The first is Plaintiff's allegation that the defendants failed to provide, even the level of diagonostic care that themselves believed neccesary.The knowledge of the need for medical care and intentional refusal to provide that care has consistently been held to surpass negligence and constitutes "DELIBERATE INDIFFERENCE.""

(9)

In this case, the Plaintiff alleged that the Defendants knew that medical care was necessary by simply refused to provide it. Both Dr. Rayapati, Nurse Burks, and Nursh Marsh all knew I was suffering from dental pain. Upon arrival back from the surgical procedure at Ventress, Nurse Marsh was on duty. I asked Nurse Marsh for some tylenol for toothache pain. I said "he told them to give me some tylenol at the hospital, if you are not going to give me any-thing, then pull my teeth!" See Exhibit ____. The nurse, Mrs. Marsh, changed the medical instructions to include tylenol and ibuprofen. I had some that I had bought off the institutional store across the hall. I asked the officer could I have my personal property, I had some tylenol in it. She said, "I will have to ask the nurse." Nurse, Marsh (LPN) refused to let me have the **TYLENOL.**

I wanted to see Lt. Taylor and tell her what was going on. She stated, "I was going to give you a disciplinary but I understand about abcessed teeth." She said for me to write Captain Monk about my dental problems. This was my fifth request I had written. I wrote him and told him I was trying to get some help for dental repair, this was on December 14, 2004. I have had a body chart done once besides sick call and wrote Nurse Burks two (2) request slips in which she has not answered, so I am writing a grievance today. This was the sixth request for dental help. Captain Monk forwarded my request knowing that this has been going on for about four (4) months, but does nothing to help. His intervention was to say "Mrs. Burks decision was final." It took 133 days to get one of the teeth that was abcessed pulled. The dentist said I cannot pull but one of the teeth, which one hurt the most, and told me to put another sick call slip in, which I did the next day.

On January 12, 2005, Mrs. Burks finally answered my repeat requests and grievances. In this grievance, See Exhibit ____, I stated that I was still

getting choked when eating or taking medication, which Dr. Rayapati would not

discuss with me that there would be no surgery, and that I had been forced to

take pain medication for over 4 1/2 months to no end.  This is bad on the

esophagus and stomach, which in turn makes my health at risk.

Mrs. Burks retrieves the recommendations form from Dr. Jackson and reads

them aloud to me.  See Exhibit _____.  Where Dr. Jackson stated that I had been

having severe toothache pain prior to the endoscopy and he recommended whatever

efforts necessary to have my dental problems taken care of because the patient

has severe erosive esophagitis.  All she would have had to do was walk three (3)

steps to the dental admittance office and make me an appointment, as  an

emergency for the next week.  Instead, she stated, "That if you need to see

the dentist then put another sick call slip in."  Mrs. Burks never adhered to

the simple instructions she had just read to me.

The Eighth Amendment protects an inmate from a governmental actor's

**DELIBERATE INDIFFERENCE TO HIS BASIC NEEDS.**  Under this standard, conduct is

deliberately indifferent when the official acts in an intentional or criminally

negligent manner; e.g. the defendant must have known that the Plaintiff was at

serious risk of being harmed and decided not to do anything to prevent that harm

from occuring even though she could easily have done such.  The Eighth Amendment

protects prisoners from an official's deliberate indifference to conditions

posing an unreasonable risk of serious damage to prisoners present and future

health.

In this case, the Defendants have acted with deliberate indifference towards

the Plaintiff's health needs and continued to do such without following

another course of action recommended by another health professional whom the

Defendants referred the Plaintiff to.  This indifference amounts to a **"deliberate**

**course of action, otherwise why bother to sent Plaintiff to another doctor for a**

**further more in-depth evaluation and diagnosis."**

(11)

The dental problem cotinues on,so does the esophagal erosion from pain medication.
On Feb. 25,2005,I filled out another dental sick call slip and had it notorized.
See Exhibit_____I stated the dentist pulled a tooth,but left part of the tooth,
It is coming through my gum.He was to pull another tooth,but told me to put another
sick call slip in,so I did on Dec.30.I am putting another sick call slip in again
on Feb. 26,2005,"DR. RAYPATTI INITIALS THE REQUEST AND SO DOES THE DENTAL ASSISTANT."
      The following day I was hospitalized,I was taken to Bullock County Hospital
in Junction City,Al.They determined my pancreas was not working,that the abcessed
teeth along with the erosion of my esophagus more than likely caused this.When I
became stable I was returned to Ventress Correctional Facility at approximately 3:30
p.m. with instructions and thier findings.When I arrived back at H.C.U. it was close
to dinnertime and a tray was ordered for me by Mrs. Marsh,L.P.N.,and I ate some of
what was on the tray and after eating,30 minutes laterMrs. Marsh comes to me and takes
my tray and tells me I was not suppose to eat anything for a couple of days.A few
hours later in the morning of Feb. 28th,I experienced another attack like the one
the day before but only worse,Mrs. Marsh caused me to suffer serios medical problems
by not following the instructions of another health care provider.During the next 8
hours while waiting on Dr. Raypatti to come in,I constantly threw up,the pain was
unbearable,I thought I was going to die,"I BEGGED FOR SOMETHING FOR PAIN",all this
is in the nurses notes,See Exhibit_____.When Dr. Raypatti finally came in I was still
throwing up"I BEGGED HIM FOR SOMETHING FOR PAIN AND NAUSEA",so I could stop gagging,
I was now throwing up my bowels,He Stated"YOU NEED PAIN MANAGEMENT I DISCOURAGE
NARCOTICS",See Exhibit_____,as to this statement ,pancreatitis is the most severe
pain I have ever experienced.
      When I arrived at Baptist South Hospital I was still wretching in the emergency
room and the doctor ordered morphine for four days with phenegran and it worked
until I was transfered to the x-ray department.While at Baptist South I had also
contracted pneumonia in my left lung and was severely dehydrated prior to my I.V.
therapy,due more than likely to the stricture in my esophagus and abcessed teeth and
if not treated would expose me to"OPPURTUNISTIC INFECTIONS"as stated above.See Exhibit____
I stayed at Baptist South for five days ,On March 4,2005 I was released and was
transfered to Kilby Correctional were I was put on antibiotics,then I was sent back
to Ventress Correctional and I was put on two more antibiotics two more times,all
in the month of March,finally on the 30th of March,2005 I had #29 tooth extracted
by Dr. W.E. Shirley,at this point he stated"He would have me some partial plates
made"I told him about the esophagal stricture I had and told him I only have a 1/4
inch esophagus tube and I get choked because of ""NO"" mollar teeth to chew my food
with.He could have put Plaintiff on soft food diet but chose not to do so.
      On April 10,2005 I put in another dental request for repair of a tooth I
had broken trying to eat food with my front teeth.I had seven mollars on the bottom
missing  and I stated again"I NEED PARTIAL PLATES I HAVE NO TEETH TO CHEW WITH".On June
21,2005 I put another dental slip in ,I stated"On March 30th,2005 I seen dentist
and had a tooth pulled,the dentist said he would have me some plates made so I could
eat",but wanted my teeth that remained to be cleaned and he would handle this,but
I haven't been called back since,this is now June 21,2005.See Exhibit_____
      During the months of Oct. 2004 through the present March 2006,to mental
health records,will show repeated complaints of dental problems causing me severe
depression due to medical problems.See Exhibit_____.Eventually I had to get off my
medication for "well being' due to the stricture in the esophagus because I could
not swallow said medication.
      On July 6,2005 I seen C.R.N.P. Mrs. Floyd,she wrote me a soft food diet due to
missing teeth,See Exhibit_____,On Aug. 25,2005 I seen her again and got another soft
food diet wrote for six more months,through Feb. 25,2006.On March 29,2006 another
profile for 90 more days,I still don't have any partial plates ,with a normal esophagus
tube ,I would still have problems eating,but I still haven't my esophagus stretched back
to normal.

In September of 2005, my mother called Warden J. C. Giles and tried to get some help with my dental and esophageal stricture. He did talk to Nurse Burks. I also talked to Warden Giles, he called me to his office and I explained the problems I was having with dental and medical. I told him I had lost twenty pounds due to the 1/4 inch stricture in my esophagus and "NO" partial plates because I was unable to eat properly and I also told him I was tired of eating applesauce and cream potatoes. Mrs. Burks called me over to talk to her. I also explained everything to her so she would understand all that was going on. She retrieved my medical records and stated "I see where Dr. Jackson recommended a repeat endoscopy in 8 to 12 weeks." This was on December 9, 2004 and she also read where he stated that whatever means necessary needed to take care of my dental problems because I had severe esophagitis.

Mrs. Burks said she would talk to Dr. Rayapati about this situation and then she carried me over to the dental office and asked Dr. Miers to make me some plates. This was the first time she had adhered to the recommended treatment from Dr. Jackson's letter, however, it was four months before the bone was cut off my gum by Dr. Shirley. I spoke with the dental assistant on two occasions but I kept being put off for the oral surgery. Finally, on December 3, 2005, the surgery was performed. Both Dr. Miers and Dr. Shirley knew I had an esophageal stricture and I told them that my esophagus was only 1/4 inch in diameter and that I needed partial plates to chew my food.

In February of 2006, I saw Dr. Miers in the hallway at the Health Care Unit (HCU) and spoke to him about making my plates. He made an appointment for March 2, 2006. I made this appointment and he told me "The room where they had the plates in was full and did not have any room to make my molds." At this point he said "we will do an annual and we will bring you back in three weeks." See Exhibit _____. On March 13, 2006, I put Warden Giles on notice of the three wrongdoings. I also sent a copy to Richard Allen, D.O.C. Commissioner

(13)

and a copy to Ruth Naglich, Associate Commissioner of A.D.O.C.. I had also sent, in December, 2004 and October, 2005 letters addressing my dental and health problems, which I have copies of.

On March 15,2006, Mrs. Burks made me an appointment to see her but when I arrived at 1:00 p.m. I was met at the door by Officer McCloud and told my appointment had been cancelled. The following week I was called over to see Mrs. Burks. Warden Giles had sent her over a copy of the notice paperwork I had sent him. Also in my request slips states that I should be put on chronic care and asked for under model sentencing and corrections act (4-105C) July 2001 "that an inmate should be permitted to use own resources to obtain outside medical help." I asked to use the V.A. to get medical and dental and I told her that it had been one year since Dr. Shirley stated that he would make my plates. Mrs. Burks said that they haven't made your plates yet and I advised that they had not, yet she had asked them to do this in September, 2005. This was now March, 2006. I told her that I had still had a stricture and was still getting choked. I had the esophagus stretched on February 16, 2006 and she had my records out looking and stated that I had been recommended by Dr. Jackson for another dialation in 4 to 6 weeks. This was already the fifth week since my last dialation and she said all she had to do was get me approved. Had I not put D.O.C. and Prison Health Services, Inc. on notice, I would more that likely still be waiting (**DELAYED TREATMENT**). All of a sudden starts the ball rolling but in fact was that the damage had already been done. Dr. Miers made my impressions on March 22, 2006 and did my retainer impressions on March 23, 2006 and said he would speed things up by two weeks. There is no administrative remedy in place at Ventress so if you file a grievance with P.H.S. then Nurse Burks answers it and if you appeal it and file a grievance about your appeal then Nurse Burks answers this too. So the buck stops with

(14)

Mrs. Burks. When I tried to go through Capt. Monk to get some assistance he stated that "whatever Mrs. Burks decision was is final." This request was written on March 13, 2006. I had specifically asked Captain Monk for medical supplies off of the store because I was on restriction for a citation for 45 days. I needed a hygiene package or some toothpaste, razors and that I had a reflux condition and need some antacid tablets. This was a medical request. I had a $110.00 freeze on my account he said for the rest of my incarceration, which is nineteen (19) years left on my twenty-five (25) year sentence. This money was sent in my mother's name, which is on my funds list. See Exhibit _____. I also wrote Sgt. Carter to try to get medical supplies and toothpaste, he reply was to stay out of trouble. This was my first citation since my incarceration in May, 2000.

On April 6, 2006, I got my esophagus tube stretched again. This was the first relief so I could swallow in 18 months, since it was recommended in December 9, 2004, due to Dr. Rayapati's refusal to follow implicit medical instructions for a repeat E.G.D. after the 8 to 12 week healing process. Due to severe inflammation the patient was not dilated or stretched. He was also asked to take care of my dental problems, quote "whatever is necessary to take care of this" because the patient has sever esophagitis. This damage could have been prevented had Dr. Rayapati sent me to Easterling Correctional Facility, which is only 30 minutes away, to have number #29 tooth extracted. I still do not have my partial plates made. When I arrived back from the surgery on April 6, 2006, I was to return to H.C.U. Dr. Rayapati took me off my soft diet. I told him I needed it because I have "NO" molars to chew my food with. Mrs. Floyd had renewed it on March 29, 2006 for 90 days until my partial plates could be made. He declined my soft diet. See Exhibit _____. He put me on a regular diet. Also See Exhibits _____ where the nurse practitioner put me on a soft diet July 6, 2005, which states "waiting for

(15)

partial from dentist – no molars visible.  Dr. Rayapati is **RETALIATING AGAINST PLAINTIFF**.  He is also taking away my prolonged standing profile, I have a bulging disc at L4 and L5, which is pinching a nerve.  In a sworn affidavit I have he states that I am provided with these profiles to make Mr. Moon more comfortable, but declined even my bottom bunk profile, since this statement.  Also, in this affidavit states he was licensed in the State of Alabama since 1992, and medical director since February 18, 2004.  Samuel Rayapati was licensed to practice medicine in the State of Georgia, and was licensed at all time relevant to matters stated herein, See Exhibits No. _____, which states:

From on or about August 31, 1994, thru July 15, 1996, Dr. Rayapati provided treatment for patient J.M.  Patient died due to J.M. developing Stevens-Johnson disease as an adverse drug reaction to allopurinal.  Medical experts have opined Dr. Rayapati diagnoses and treatment fell below minimal standards of prevailing medical practice, in June 9, 2000 conduct constitutes sufficient grounds for imposition of upon Dr. Rayapati's license to practice in the State of Georgia, and ordered him to obtain thirty (30) hours of continuing medical education in areas of gout and adverse drug reactions, which took him four years.  On February 18, 2004 Dr. Rayapati the State Board of Medical Examiners in Georgia that the probation of respondents license to practice  medicine in the State of Georgia be terminated, and was so ordered.

Dr. Rayapati diagnosis and treatment is still falling below minimal standards of prevailing medical practice.  Dr. Rayapati knows I need a soft diet, but refuses to help me.  He has caused Plaintiff to suffer unnecessary harm, and pain and substantial hardship over an obviously unnecessary period of time.

## V.  RELIEF

**State briefly exactly what you want the court to do for you.  Make no legal arguments.  Cite no cases or statutes.**

1.)  Plaintiff respectfully requests trial by jury.  2.)  Plaintiff requests a declaratory judgment on all issues and claims.  3.)  Plaintiff seeks an injunction directing Defendant's to immediately issue an order for repair of the incompetent cardia.  4.)

Plaintiff requests a compensation judgment of $2,000,000; and double punitive judgment.  5.) Plaintiff seeks a judgment directing Defendant's to reimburse Plaintiff of all costs incurred in the prosecution of this meritorious cause of action.  6.)  Plaintiff seeks any and all forms of relief that he is entitled to.  7.)  Plaintiff seeks life time medical on damages done to the esophagus.

"I declare under penalty of perjury that the foregoing is true and correct.

Executed on _April 18, 2006_.

James Moon

AIS #212228,  Dorm 9

Ventress Correctional Facility

P.O. Box 767
Clayton, AL  36016-0767

_James C. Moon_
Signature(s)

(17)