IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JAMES CHARLEY MOON (AIS# 212228), | * | |
| Plaintiff, | * | |
| V. | * | 2:06-CV-384-WKW |
| SAMUEL RAYAPATI, M.D., ET AL., | * | |
| Defendants. | * | |
| | * | |

### SPECIAL REPORT OF DEFENDANTS MARVIN WEST, D.D.S., TRAVIS MIERS, JR., D.M.D. AND WILLIAM SHIRLEY, D.D.S.

COME NOW the Defendants Marvin West, D.D.S. (identified in the Plaintiff's Complaint at "Dr. West"), Travis Miers, D.M.D. (identified in the Plaintiff's Complaint as "Dr. Miers") and William Shirley, D.D.S. (identified in the Plaintiff's Complaint at "Dr. W.E. Shirley") and in response to this Honorable Court's Order present the following Special Report with regard to this matter:

### I. INTRODUCTION

The Plaintiff, James Charley Moon (AIS# 212228) is an inmate who has been confined at Ventress Correctional Facility located in Clayton, Alabama at all times pertinent to this lawsuit. (See Exhibit "A"). On April 27, 2006, Moon filed a Complaint against Marvin West, D.D.S., Travis Miers, D.M.D., and William Shirley, D.D.S., dentists at Ventress. (See Complaint). Dr. West, Dr. Miers and Dr. Shirley are currently employed by Smallwood Prison Dental Services, Inc., the company that contracts with

Prison Health Services, Inc. to provide dental services to inmates at Ventress and other correctional facilities in the State of Alabama.[1]

Mr. Moon has also named as Defendants in this matter Prison Health Services, Inc. (hereinafter "PHS"), Samuel Rayapati, M.D. Ventress's former Medical Director; Nettie Burks, R.N., H.S.A., Ventress's Health Services Administrator; Anthonette Marsh, L.P.N., a licensed practical nurse at Ventress; Ruth Naglich, Associate Commissioner for the Alabama Department of Corrections; Commissioner Richard Allen, Warden J.C. Giles, Sgt. Sherwin Carter, and Capt. Larry Monk. (See Complaint).

In his Complaint, Mr. Moon alleges that Dr. West, Dr. Miers and Dr. Shirley have failed to provide him with appropriate dental treatment for an abscessed tooth and bleeding gums. (See Complaint). He further claims that he has not been afforded dentures in a timely and appropriate fashion and that he has not received appropriate dental cleaning. (Id.) The Plaintiff demands $2,000,000 in compensatory damages as well as injunctive relief from the court in the form of an Order forcing these Defendants to provide him with "repair of the incompetent cardia."[2] (See Complaint).

As directed, the Defendants have undertaken a review of Plaintiff Moon's claims to determine the facts and circumstances relevant thereto. At this time, the Defendants are submitting this Special Report, which is supported by a Certified Copy of Plaintiff Moon's dental and medical records from June 2004 through July 2006 (attached hereto as Exhibit "A"), the Affidavit of Marvin West, D.D.S., (attached hereto as Exhibit "B"), the Affidavit of Travis Miers, D.M.D., (attached hereto as Exhibit "C"), the Affidavit of

---

[1] Dr. West was employed by Prison Health Services, Inc. at the time the alleged inappropriate treatment in this matter occurred. Smallwood Prison Dental Services, Inc., has contracted with PHS to provide dental care to inmates subsequent to May 9, 2005.

[2] While this inmate demands an Order from the court for treatment of his "incompetent cardia," he makes no claims regarding treatment for any cardiac condition.

William Shirley, D.D.S., (attached hereto as Exhibit "D"), and the Affidavit of Nettie Burks, R.N., H.S.A. (attached hereto as Exhibit "E"). These evidentiary materials demonstrate that Plaintiff Moon has been provided appropriate medical treatment for his complaints at all times, and that the allegations in his Complaint are without merit.

## II. NARRATIVE SUMMARY OF FACTS

At all pertinent times, the Plaintiff James Moon (AIS# 212228) has been incarcerated as an inmate at Ventress Correctional Facility. (See Exhibits "A" – "D"). Moon has been seen and evaluated by Ventress's dental staff, and has been referred to an appropriate care provider and given appropriate care, each time he has registered any dental complaints at this facility. (Id.)

Mr. Moon has made a complaint in this matter that Dr. West, Dr. Miers and Dr. Shirley have failed to provide him with appropriate dental treatment for an abscessed tooth and bleeding gums and that he has not been afforded dentures in a timely and appropriate fashion. (See Complaint). He also claims that he has not received dental cleanings in a timely fashion. (See Complaint). The Plaintiff's allegations are untrue however, as all of Mr. Moon's dental conditions and complaints have been evaluated and treated in a timely and appropriate fashion. (See Exhibits "A"-"D").

Mr. Moon alleges that Marvin West, D.D.S. has failed to provide him with appropriate dental care at Ventress subsequent to October 27, 2004. (See Complaint). Mr. Moon specifically claims that Dr. West failed to ensure that an abscessed tooth was extracted in a timely fashion. (Id.) Moon's allegations are unfounded. (See Exhibit "B").

On October 27, 2004, Dr. West provided Mr. Moon with dental evaluation and determined that a crown had fallen off of tooth #8. (Id.) Dr. West also recognized that he

3

had developed an abscess distal to tooth #29. (Id.) He re-cemented Mr. Moon's crown and informed him that he would extract tooth #29 during his next examination. (Id.) In order to treat Mr. Moon's abscess, Dr. West prescribed him Pen VK antibiotics and Tylenol for pain. (Id.) Mr. Moon was afforded an annual dental examination less than two months later on December 20, 2004. (Id.)

Dr. West again evaluated Mr. Moon on December 29, 2004 and discovered that his crown on tooth #8 had again detached. (Id.) The crown was re-cemented. (Id.) Mr. Moon made new complaints for pain at tooth #17. (Id.) Mr. Moon chose to have tooth #17 extracted instead of tooth #29. (Id.) Removing both teeth simultaneously would have made eating difficult. (Id.) Tooth #17 and its roots were extracted subsequent to a mandibular and long buckle nerve block. (Id.) Dr. West prescribed Mr. Moon Tylenol for pain. (Id.) He was scheduled for a dental screening on March 17, 2005 but he did not present for the appointment. (Id.)

William Shirley, D.D.S. first evaluated Mr. Moon on March 30, 2005. (See Exhibits "A" & "D"). Dr. Shirley noted that Mr. Moon had a chronic periapical abscess.[3] (Id.) Mr. Moon was provided x-ray evaluation and tooth # 29 was extracted. (Id.) Mr. Moon was again seen for dental evaluation on April 15, 2005, where he received a general dental screening and was scheduled for dental evaluation on April 26, 2005. (Id.) Dr. Shirley evaluated Mr. Moon on this date and determined that tooth # 9 was non-vital. (Id.) Dr. Shirley instructed Mr. Moon that it needed to be extracted, but, Mr. Moon refused the procedure. (Id.) Subsequent to Mr. Moon's refusal, Dr. Shirley removed decay from the tooth's medial facial lingual surface and filled it with composite. (Id.)

---

[3] Periapical abscess is a collection of pus usually caused by an infected tooth. This is the same abscess previously identified by Dr. West.

4

Travis Miers, D.M.D. first examined Mr. Moon on September 14, 2005. (See Exhibit "C"). He determined that Mr. Moon was significant for bilateral mandibular lingual tori.[4] (Id.) It was Dr. Miers' impression that these tori needed to be removed surgically prior to fitting Mr. Moon for lower partial dentures. (Id.) Dr. Miers scheduled Mr. Moon an appointment with Dr. Shirley on September 20, 2005 for his opinion regarding whether Mr. Moon could be fitted for lower partials without removing the tori. (Id.) Dr. Shirley recommended that the tori be removed surgically. (Id.) On December 5, 2005, Dr. Shirley removed Mr. Moon's tori surgically. (Id.) Mr. Moon returned to see Dr. Shirley again on December 12, 2005, for removal of his sutures. (Id.)

Dr. Miers examined Mr. Moon on March 2, 2006 and scheduled him an appointment to take impressions for lower partial dentures at the next available date. (See Exhibit "C"). Mr. Moon was again evaluated on March 22, 2006 where Dr. Miers made impressions for lower partials and the corresponding upper model. (Id.) He was seen the next day, March 23, 2006, for alignment and bite registration. (Id.) Mr. Moon's records indicate that he was afforded a dental cleaning on April 25, 2006. (Id.) Light calculus was noted with moderate bleeding. (Id.) He was encouraged to increasing flossing. (Id.)

Dr. Miers again evaluated Mr. Moon on May 11, 2006 for a "try-in" whereby his lower partials where tested for appropriate fit. (Id.) On May 25, 2006 Mr. Moon received his partials and they were appropriately adjusted. (Id.) On June 1, 2006 Mr. Moon was provided follow up evaluation where his partials were adjusted a second time to ensure proper fit. (Id.)

The evidence now before the Court clearly establishes that Mr. Moon has received excellent care for his dental complaints at all times. (See Exhibits "A" - "D").

---

[4] Mandibular tori are bony overgrowths that occur naturally.

Dr. West, Dr. Shirley and Dr. Miers have exercised the same degree of care, skill, and diligence as other similarly situated health care providers would have exercised under the same or similar circumstances. (Id.) In other words, the appropriate standard of care has been adhered to at all times in providing medical care, evaluation, and treatment to this inmate. (Id.)

At no time have these Defendants denied Mr. Moon any needed dental treatment, nor have they ever acted with deliberate indifference to any serious medical need of Mr. Moon. (Id.) At all times, Mr. Moon's dental complaints and conditions have been addressed as promptly as possible under the circumstances. (Id.)

### III. DEFENSES

The Defendants assert the following defenses to the Plaintiff's claims:

1. The Defendants deny each and every material allegation contained in the Plaintiff's Complaint and demand strict proof thereof.

2. The Defendants plead not guilty to the charges in the Plaintiff's Complaint.

3. The Plaintiff's Complaint fails to state a claim against the Defendants for which relief can be granted.

4. The Defendants affirmatively deny any and all alleged claims by the Plaintiff.

5. The Plaintiff is not entitled to any relief requested in the Complaint.

6. The Defendants plead the defense of qualified immunity and aver that the actions taken by the Defendants were reasonable and in good faith with reference to clearly established law at the time of the incidents complained of by the Plaintiff.

7. The Defendants are entitled to qualified immunity and it is clear from the face of the Complaint that the Plaintiff has not alleged specific facts indicating that the Defendants have violated any clearly established constitutional right.

8. The Defendants cannot be held liable on the basis of respondeat superior, agency, or vicarious liability theories.

9. The Plaintiff is not entitled to any relief under 42 U.S.C. § 1983.

10. The allegations contained in the Plaintiff's Complaint against the Defendants sued in their individual capacities, fail to comply with the heightened specificity requirement of Rule 8 in § 1983 cases against persons sued in their individual capacities. See Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992); Arnold v. Board of Educ. Of Escambia County, 880 F.2d 305, 309 (11th Cir. 1989).

11. The Defendants plead all applicable immunities, including, but not limited to qualified, absolute, discretionary function immunity, and state agent immunity.

12. The Defendants aver that they were at all times acting under color of state law and, therefore, are entitled to substantive immunity under the law of the State of Alabama.

13. The Defendants plead the general issue.

14. This Court lacks subject matter jurisdiction due to the fact that even if the Plaintiff's allegations should be proven, the allegations against the Defendants would amount to mere negligence which is not recognized as a deprivation of the Plaintiff's constitutional rights. See Rogers v. Evans, 792 F.2d 1052 (11th Cir. 1986).

15. The Plaintiff's claims against the Defendants in their official capacities are barred by the Eleventh Amendment to the United States Constitution.

16. Alabama law provides tort and other remedies for the allegations made by the Plaintiff herein and such remedies are constitutionally adequate.

17. The Defendants plead the defense that at all times in treating Plaintiff they exercised the same degree of care, skill, and diligence as other physicians and nursing staff would have exercised under similar circumstances and that at no time did they act toward the Plaintiff with deliberate indifference to a serious medical need.

18. The Defendants plead the affirmative defense that the Plaintiff's Complaint fails to contain a detailed specification and factual description of the acts and omissions alleged to render it liable to the Plaintiff as required by § 6-5-551 of the Ala. Code (1993).

19. The Defendants plead the affirmative defenses of contributory negligence and assumption of the risk.

20. The Defendants plead the affirmative defense that Plaintiff's damages, if any, were the result of an independent, efficient, and/or intervening cause.

21. The Defendants plead the affirmative defense that it is not responsible for the policies and procedures of the Alabama Department of Corrections.

22. The Defendants plead the affirmative defense that the Plaintiff has failed to mitigate his own damages.

23. The Defendants plead the affirmative defense that they are not guilty of any conduct which would justify the imposition of punitive damages against it and that any such award would violate the United States Constitution.

24. The Defendants adopt and assert all defenses set forth in the Alabama Medical Liability Act § 6-5-481, et seq., and § 6-5-542, et seq.

25. The Plaintiff has failed to exhaust his administrative remedies as mandated by the Prison Litigation Reform Act amendment to 42 U.S.C. § 1997e(a). The Plaintiff has failed to pursue the administrative remedies available to him. See Cruz v. Jordan, 80 F. Supp. 2d 109 (S.D. N.Y. 1999) (claims concerning Defendant's deliberate indifference to a medical need is an action "with respect to prison conditions" and is thus governed by exhaustion requirement).

26. The Prison Litigation Reform Act amendment to 42 U.S.C. § 1997(e)(c) mandates the dismissal of Plaintiff's claims herein as this action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks money damages from the Defendants who are entitled to immunity.

27. The Plaintiff's claims are barred by the Prison Litigation Reform Act of 1995, 42 U.S.C. §1997(e).

28. The Plaintiff has failed to comply with 28 U.S.C. § 1915 with respect to the requirements and limitations inmates must follow in filing in forma pauperis actions in federal court.

29. Pursuant to 28 U.S.C. § 1915 A, this Court is requested to screen and dismiss this case, as soon as possible, either before or after docketing, as this case is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks money damages from the Defendants who are state officers entitled to immunity as provided for in 42 U.S.C. § 1997 (e)(c).

30. The Defendants assert that the Plaintiff's Complaint is frivolous and filed in bad faith solely for the purpose of harassment and intimidation and requests this Court

pursuant to 42 U.S.C. § 1988 to award these Defendants reasonable attorney's fees and costs incurred in the defense of this case.

31. The Plaintiff's claims are moot because the events which underlie the controversy have been resolved. See Marie v. Nickels, 70 F., Supp. 2d 1252 (D. Kan. 1999).

## IV. ARGUMENT

**A.  The Plaintiff has failed to prove that these Defendants acted with deliberative indifference to any serious medical need.**

A court may dismiss a complaint for failure to state a claim if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations in the complaint. Romero v. City of Clanton, 220 F. Supp. 2d 1313, 1315 (M.D. Ala., 2002), (citing, Hishon v. King & Spalding, 467 U.S. 69, 73, (1984). "Procedures exist, including Federal Rule of Civil Procedure 7(a), or Rule 12(e), whereby the trial court may "protect the substance of qualified immunity," Shows v. Morgan, 40 F. Supp. 2d 1345, 1358 (M.D. Ala., 1999). A careful review of Moon's medical records reveals that Moon has been given appropriate dental treatment at all times. (See Exhibits "A"-"D"). All of the allegations contained within Moon's Complaint are either inconsistent with his medical and dental records, or are claims for which no relief may be granted. (Id.) Therefore, Moon's claims against the Defendants are due to be dismissed.

In order to state a cognizable claim under the Eighth Amendment, Moon must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 106 (U.S. 1976); McElligott v. Foley, 182 F.3d 1248, 1254 (11th Cir. 1999); Palermo v. Corr. Med. Servs., 148 F. Supp. 2d 1340, 1342 (S.D. Fla. 2001). In order to prevail, Moon must allege and prove that he

suffered from a serious medical need, that the Defendants were deliberately indifferent to his needs, and that he suffered harm due to deliberate indifference. See Marsh v. Butler County, 268 F.3d 1014, 1058 (11th Cir. 2001) and Palermo, 148 F. Supp. 2d at 1342. "Neither inadvertent failure to provide adequate medical care nor a physician's negligence in diagnosing or treating a medical condition states a valid claim of medical mistreatment under the Eighth Amendment." Id. (citations omitted).

Not every claim by a prisoner that medical treatment has been inadequate states an Eighth Amendment violation. Alleged negligent conduct with regard to inmates' serious medical conditions does not rise to the level of a constitutional violation. Alleged medical malpractice does not become a constitutional violation merely because the alleged victim is a prisoner. See Estelle, 429 U.S. at 106, McElligott, 182 F.3d at 1254, Hill, 40 F.3d 1176, 1186 (11th Cir. 1994), Palermo, 148 F. Supp. 2d at 1342. Further, a mere difference of opinion between an inmate and the physician as to treatment and diagnosis cannot give rise to a cause of action under the Eighth Amendment. Estelle, 429 U.S. at 106-108.

The Defendants may only be liable if they had knowledge of Moon's medical condition, Hill, 40 F. 3d at 1191, and acted intentionally or recklessly to deny or delay access to his care, or to interfere with treatment once prescribed. Estelle, 429 U.S. at 104-105. Obviously, Moon cannot carry his burden. The evidence submitted with this Special Report clearly shows that these Defendants did not act intentionally or recklessly to deny or delay medical or dental care, or to interfere with any treatment which was prescribed or directed. The evidence demonstrates, to the contrary, that appropriate standards of care

were followed at all times. (See Exhibits "A" – "D"). These facts clearly disprove any claim that the Defendants acted intentionally or recklessly to deny treatment or care.

The Defendants are, further, entitled to qualified immunity from all claims asserted by Moon in this action. There is no argument that the Defendants were not acting within the scope of their discretionary authority. See Eubanks v. Gerwen, 40 F. 3d 1157, 1160 (11th Cir. 1994); see also Jordan v. Doe, 38 F. 3d 1559, 1566 (11th Cir. 1994). Because the Defendants have demonstrated that they were acting within the scope of their discretionary authority, the burden shifts to Moon to show that the Defendants violated clearly established law based upon objective standards. Eubanks, 40 F. 3d at 1160. The Eleventh Circuit requires that before the Defendants' actions can be said to have violated clearly established constitutional rights, Moon must show that the right allegedly violated was clearly established in a fact-specific, particularized sense. Edwards v. Gilbert, 867 F.2d 1271, 1273 (11th Cir. 1989), aff'd in pertinent part, rev'd in part on other grounds, sub nom., Edwards v. Okaloosa County, 5 F. 3d 1431 (11th Cir. 1989).

The Eleventh Circuit further requires that the inquiry be fact specific, and that officials will be immune from suit if the law with respect to their actions was unclear at the time the cause of action arose, or if a reasonable person could have believed that their actions were lawful in light of clearly established law and information possessed by the individual. See Brescher v. Von Stein, 904 F.2d 572, 579 (11th Cir. 1990) (quoting, Anderson v. Creighton, 483 U.S. 635, 640, (U. S. 1987)). The question that must be asked is whether the state of the law in 2005 and 2006 gave the Defendants fair warning that its alleged treatment of Moon was unconstitutional. Hope v. Pelzer, 536 U.S. 730, 741 (U.S. 2002).

12

Therefore, to defeat summary judgment, Moon must be able to point to cases with "materially similar" facts, within the Eleventh Circuit, that would alert the Defendants to the fact that its practice or policy violates his constitutional rights. See Hansen v. Soldenwagner, 19 F.3d 573, 576 (11th Cir. 1994). In order for qualified immunity to be defeated, preexisting law must "dictate, that is truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances." Lassiter v. Alabama A & M Univ., Bd. of Trustees, 28 F. 3d 1146, 1151 (11th Cir. 1994). The Defendants submit that there is no case law from the United States Supreme Court, the Eleventh Circuit Court of Appeals, or District Courts sitting within the Eleventh Circuit showing that, under the facts of this case, it was clearly established that these alleged actions violated Moon's constitutional rights. All of Moon's medical and dental needs have been addressed or treated. (See Exhibits "A" -"D").

**B.    The Plaintiff failed to exhaust his administrative remedies prior to filing suit in violation of the Prison Litigation Reform Act (PLRA).**

Congress enacted the Prison Litigation Reform Act of 1995 (PLRA), 110 Stat. 1321-71, as amended, 42 U.S.C. § 1997e et seq., in 1996 in the wake of a sharp rise in prisoner litigation in the federal courts. See, e.g., Alexander v. Hawk, 159 F.3d 1321, 1324-1325 (CA11 1998) (citing statistics).[5] The PLRA was enacted in attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus, to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Nussle, 534 U.S., at 525, 122 S. Ct. 983,

---

[5] The PLRA contains a variety of provisions designed to bring inmate litigation under control. See, e.g., § 1997e(c) (requiring district courts to weed out prisoner claims that clearly lack merit); § 1997e(e) (prohibiting claims for emotional injury without prior showing of physical injury); § 1997e(d) (restricting attorney's fees).

152 L. Ed. 2d 12. See also Booth, 532 U.S., at 739, 121 S. Ct. 1819, 149 L. Ed. 2d 958. The PLRA was also designed to "reduce the quantity and improve the quality of prisoner suits." Nussle, supra, at 524, 122 S. Ct. 983, 152 L. Ed. 2d 12.

A centerpiece of the PLRA's effort "to reduce the quantity . . . of prisoner suits" is an "invigorated" exhaustion provision. See § 1997e(a), and Porter v. Nussle, 534 U.S. 516, 524, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002).[6] Specifically, the PLRA provides that prisoners may not file suit in Federal court for complaints regarding prison conditions unless they have first fully extinguished all administrative remedies available. Specifically,

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." § 1997e (a) (2000 ed.) (emphasis added).

Id. Courts have determined that under the PLRA, exhaustion of administrative remedies is no longer left to the discretion of the district court, but is mandatory. See Booth v. Churner, 532 U.S. 731, 739, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001) (emphasis added). 42 USC § 1997e states:

> (c) Dismissal
> (1) The court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.

---

[6] Requiring proper exhaustion gives prisoners an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors. This is particularly important in relation to state corrections systems because it is "difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons." Preiser v. Rodriguez, 411 U.S. 475, 491-492, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (1973).

Id. (emphasis added).

In order to avoid dismissal, prisoners must exhaust all "available" remedies, not just those that meet federal standards. Moreover, exhaustion of available administrative remedies is required for any suit challenging prison conditions, not just for suits under § 1983. See Nussle, supra, at 524, 122 S. Ct. 983, 152 L. Ed. 2d 12. See Pozo v. McCaughtry, 286 F.3d 1022, 1025 (CA7) ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require"), cert. denied, 537 U.S. 949, 123 S. Ct. 414, 154 L. Ed. 2d 293 (2002); Ross v. County of Bernalillo, 365 F.3d 1181, 1185-1186 (CA10 2004) (same); Spruill v. Gillis, 372 F.3d 218, 230 (CA3 2004) (same); Johnson v. Meadows, 418 F.3d 1152, 1159 (CA11 2005) (same).

A prisoner's lack of knowledge regarding the existence of the procedure does not relieve his/her responsibility to exhaust administrative remedies, and failure of officials to provide grievance forms is not a legitimate defense. See Abney v. McGinnis, 380 F. 3d 663 (2nd Cir. 2004). So long as the prisoner has access to writing material and officials do not interfere with the procedure, the process must be followed to conclusion before suit is filed. Id.

As relevant to the case at bar, Prison Health Services, Inc. (PHS) has established a simple three-step procedure for identifying and addressing inmate grievances at Ventress Correctional Facility. (See Exhibit "E"). If an inmate has a grievance regarding a healthcare issue he must submit to the healthcare unit an "Inmate Request Slip." (Id.) These are standard forms that may be requested from an inmate's supervising officer in his dormitory. (Id.) The inmate request slip allows an inmate to communicate any

healthcare related concern by placing the request slip in the sick call box or mailbox to be forwarded to the healthcare unit. (Id.)  H.S.A. Burks subsequently reviews the request and responds to the inmate verbally. (Id.)

If an inmate is unsatisfied with H.S.A. Burks' response, he may request an "Inmate Grievance" form from the healthcare unit. (Id.)  This form allows an inmate to again voice his concerns relating to the healthcare issue addressed with the inmate request slip. (Id.)  H.S.A. Burks again respond to the inmate verbally. (Id.)

If the inmate is still unsatisfied with H.S.A. Burks' response, he or she may request from the healthcare unit an "Inmate Grievance Appeal" form. (Id.)  This form is again submitted to H.S.A. Burks and represents the final step of the appeal process. (Id.)  After an inmate submits an inmate grievance appeal, H.S.A. Burks will again meet with the inmate in a final attempt to address his concerns. (Id.)

The Plaintiff, James Moon, has filed suit in this matter alleging that Marvin West, D.D.S., Travis Miers, D.M.D. and William Shirley, D.D.S. have failed to provide him with appropriate dental treatment. (See Complaint). However, Mr. Moon has failed to exhaust Ventress's informal grievance procedure relating to the receipt of dental care. (See Exhibit "E"). Specifically, as relevant to his Complaint, Mr. Moon submitted an inmate request slip with regard to dental care, but has failed to submit an Inmate Grievance or Inmate Grievance Appeal regarding the provision of dental care. (Id.) Mr. Moon has failed to exhaust Ventress's informal grievance procedure. (Id.) As such, the healthcare unit at Ventress has not been afforded an opportunity to resolve Mr. Moon's dental complaints prior to filing suit. (Id.)

Since Mr. Moon has failed to extinguish those administrative remedies available for him at Ventress, the Prison Litigation Reform Act of 1995 (PLRA) demands that the Plaintiff's lawsuit be dismissed.

## V. **CONCLUSION**

The Plaintiff's Complaint is due to be dismissed on its face, and is, further, disproven by the evidence now before the Court. All of the Plaintiff's requests for relief are without merit. The Defendants have demonstrated both through substantial evidence and appropriate precedent that there is not any genuine issue of material facts relating to a constitutional violation, and that they are, therefore, entitled to a judgment in their favor as a matter of law. The Plaintiff's submissions clearly fail to meet his required burden. Moreover, since the Plaintiff failed to exhaust those administrative remedies available to him at Ventress prior to filing suit, this case is due to be dismissed pursuant to the PLRA.

Accordingly, the Defendants request that this Special Report be treated and denominated as a Motion to Dismiss and/or a Motion for Summary Judgment and that this Honorable Court either dismiss the Plaintiff's Complaint, with prejudice, or enter a judgment in their favor.

Respectfully submitted,

s/L. Peyton Chapman, III
Alabama State Bar Number CHA060
s/R. Brett Garrett
Alabama State Bar Number GAR085
Attorneys for Marvin West, D.D.S.,
Travis Miers, D.M.D. and William
Shirley, D.D.S.

> RUSHTON, STAKELY,
> JOHNSTON & GARRETT, P.A.
> Post Office Box 270
> Montgomery, Alabama 36101-0270
> Telephone: (334) 834-8480
> Fax: (334) 262-6277
> E-mail: bg@rsjg.com

### CERTIFICATE OF SERVICE

I hereby certified that I have mailed via U.S. mail, properly addressed and first-class postage prepaid, the foregoing document this 26th day of September, 2006, to the following:

James Charley Moon (AIS# 212228)
Ventress Correctional Facility
P.O. Box 767
Clayton, AL 36016

> s/R. Brett Garrett
> Alabama State Bar Number GAR085
> Attorneys for Marvin West, D.D.S.,
> Travis Miers, D.M.D. and William
> Shirley, D.D.S.