IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JAMES CHARLEY MOON (AIS# 212228),       *

    Plaintiff,                            *

V.                                          2:06-CV-384-WKW
                                           *
SAMUEL RAYAPATI, M.D., ET AL.,
                                           *
    Defendants.
                                           *

### SPECIAL REPORT OF DEFENDANTS ANTHONETTE MARSH, L.P.N. AND NETTIE BURKS, R.N., H.S.A.

COME NOW Defendants Anthonette Marsh, L.P.N. and Nettie Burks, R.N., H.S.A. in response to this Honorable Court's Order and present the following Special Report with regard to the Plaintiff's claims in this matter:

#### I. INTRODUCTION

The Plaintiff, James Charley Moon (AIS# 212228) is an inmate confined at Ventress Correctional Facility located in Clayton, Alabama. (See Complaint). The Defendant, Anthonette Marsh, L.P.N., is a licensed, practical nurse at Ventress. (See Exhibits "B" & "C"). Defendant Nettie Burks, R.N., H.S.A. serves as Health Services Administrator at Ventress. (See Exhibits "B" & "C"). During the time period made the basis of Mr. Moon's Complaint, these Defendants have been employed by Prison Health Services, Inc. ("PHS"), the company that currently contracts with the Alabama Department of Corrections to provide medical care to inmates at Ventress and other prisons in the State of Alabama.

On April 27, 2006, Mr. Moon filed a Complaint alleging that Nettie Burks, R.N., H.S.A. acted inappropriately in failing to properly respond to certain administrative complaints regarding the provision of dental care to this inmate and that she has failed to provide him with appropriate dental care. (See Complaint). He also claims that Anthonette Marsh, L.P.N. failed to provide him with appropriate nursing care on two dates; December 9, 2004 and February 26, 2005. (See Complaint).

Mr. Moon has also named as Defendants in this matter Prison Health Services, Inc. (hereinafter "PHS"), Samuel Rayapati, M.D., Ventress's former Medical Director; Marvin West, D.D.S., Travis Miers, D.M.D., and William Shirley, D.D.S., dentists who have provided him with treatment at Ventress Correctional Facility; Ruth Naglich, Associate Commissioner for the Alabama Department of Corrections; Commissioner Richard Allen, Warden J.C. Giles, Sgt. Sherwin Carter, and Capt. Larry Monk. (See Complaint).

As directed, Nurses Burks and Marsh have undertaken a review of Plaintiff Moon's claims to determine the facts and circumstances relevant thereto. At this time, these Defendants are submitting this Special Report, which is supported by certified copies of Plaintiff Moon's medical and dental records from June 2004 through July 2006 (attached hereto as Exhibit "A"), the Affidavit of Anthonette Marsh, L.P.N. (attached hereto as Exhibit "B"), and the Affidavit of Nettie Burks, R.N., H.S.A. (attached hereto as Exhibit "C"). These evidentiary materials demonstrate that Plaintiff Moon has been provided appropriate treatment at all times, and that the allegations in his Complaint are false and without merit.

## II. NARRATIVE SUMMARY OF FACTS

At all pertinent times as related to this inmate's claims against these Defendants, the Plaintiff, James Moon (AIS# 212228), has been incarcerated as an inmate at Ventress Correctional Facility. (See Exhibits "A" – "C"). Mr. Moon has made allegations in this matter that Nurse Marsh acted inappropriately on December 9, 2004 by refusing to provide him with Tylenol, and again on February 26, 2005, by taking away his food tray subsequent to suffering an attack of pancreatitis. (Id.) Mr. Moon's allegations are completely unfounded, as Nurse Marsh has provided Mr. Moon with appropriate care at all times. (See Exhibits "A" & "B").

A review of this inmate's medical records indicates that Dr. Rayapati issued an Order on December 9, 2004 that Mr. Moon was not to be given NSAIDS (including Tylenol). (See Exhibit "A"). Nurse Marsh has no independent memory of Mr. Moon requesting Tylenol from her on December 9, 2004. (Id.) However, even if Mr. Moon had requested this particular medication on this date, she would have been unable to provide it to him as to do so would have been a direct violation of Dr. Rayapati's December 9, 2004 medical order. (See Exhibits "A" & "B").

Mr. Moon's medical records further indicate that he was returned to Ventress from Bullock County Hospital in the early morning hours of February 27, 2005 subsequent to being evaluated and treated for complaints of weakness and dizziness. (See Exhibits "A" & "B"). He was subsequently admitted to the infirmary for evaluation. (Id.) At approximately 8:30 a.m. Nurse Marsh evaluated Mr. Moon and advised him to refrain from eating until he could be evaluated by Dr. Rayapati. (Id.) Mr. Moon voiced his

3

understanding to her. (Id.) He was seen by Dr. Rayapati at approximately 10:30 a.m. later that morning. (Id.)

Mr. Moon has also made allegations in the above matter that Nurse Burks has failed to respond appropriately to numerous informal complaints regarding the provision of dental care and that she has failed to intervene in providing him with appropriate dental treatment. (See Complaint). Mr. Moon's allegations in this regard are completely unfounded. (Id.) Nurse Burks has responded to Mr. Moon's grievances, and afforded him appropriate and timely care at all times. (See Exhibit "C"). Specifically, Nurse Burks has responded to each of Mr. Moon's complaints and grievances in an appropriate and timely fashion under the circumstances. (Id.)

Moreover, importantly, as Ventress' Health Services Administrator, Nurse Burks is not responsible for designing Mr. Moon's care plan for dental treatment. (Id.) Nurse Burks defers to Mr. Moon's treating dentists Marvin West, D.D.S., Travis Miers, D.M.D., and William Shirley, D.D.S. regarding the appropriateness and timeliness of the care and treatment he receives for his dental complaints. (Id.)

All of Mr. Moon's medical conditions and complaints have been evaluated in a timely fashion at Ventress Correctional Facility, and his diagnosed conditions have been treated in a timely and appropriate fashion. (See Exhibits "A" – "C"). At all times, Mr. Moon has received appropriate treatment for his medical conditions from all of the medical and nursing staff at Ventress. (Id.) At no time has he been denied any needed medical treatment. (Id.) In other words, the appropriate standard of care has been adhered to at all times in providing medical care, evaluation, and treatment to this inmate. (Id.)

At no time has any of the medical, or nursing staff at Ventress Correctional Facility denied Moon any needed medical treatment, nor have they ever acted with deliberate indifference to any serious dental or medical need of Moon. (Id.) At all times, Moon's known medical complaints and conditions have been addressed as promptly as possible under the circumstances. (Id.)

### III. DEFENSES

These Defendants assert the following defenses to the Plaintiff's claims:

1. The Defendants deny each and every material allegation contained in the Plaintiff's Complaint and demand strict proof thereof.

2. The Defendants plead not guilty to the charges in the Plaintiff's Complaint.

3. The Plaintiff's Complaint fails to state a claim against the Defendants for which relief can be granted.

4. The Defendants affirmatively deny any and all alleged claims by the Plaintiff.

5. The Plaintiff is not entitled to any relief requested in the Complaint.

6. The Defendants plead the defense of qualified immunity and aver that the actions taken by them were reasonable and in good faith with reference to clearly established law at the time of the incidents complained of by the Plaintiff.

7. The Defendants are entitled to qualified immunity and it is clear from the face of the Complaint that the Plaintiff has not alleged specific facts indicating that the Medical Defendants have violated any clearly established constitutional right.

8. The Defendants cannot be held liable on the basis of <u>respondeat superior</u>, agency, or vicarious liability theories.

9. The Plaintiff is not entitled to any relief under 42 U.S.C. § 1983.

10. The allegations contained in the Plaintiff's Complaint against the Defendants, sued in their individual capacities, fail to comply with the heightened specificity requirement of Rule 8 in § 1983 cases against persons sued in their individual capacities. See <u>Oladeinde v. City of Birmingham</u>, 963 F.2d 1481, 1485 (11th Cir. 1992); <u>Arnold v. Board of Educ. Of Escambia County</u>, 880 F.2d 305, 309 (11th Cir. 1989).

11. The Defendants plead all applicable immunities, including, but not limited to qualified, absolute, discretionary function immunity, and state agent immunity.

12. The Defendants aver that they were at all times acting under color of state law and, therefore, they are entitled to substantive immunity under the law of the State of Alabama.

13. The Defendants plead the general issue.

14. This Court lacks subject matter jurisdiction due to the fact that even if Plaintiff's allegations should be proven, the allegations against the Defendants would amount to mere negligence which is not recognized as a deprivation of the Plaintiff's constitutional rights. See <u>Rogers v. Evans</u>, 792 F.2d 1052 (11th Cir. 1986).

15. The Plaintiff's claims against the Defendants in their official capacities are barred by the Eleventh Amendment to the United States Constitution.

16. Alabama law provides tort and other remedies for the allegations made by the Plaintiff herein and such remedies are constitutionally adequate.

17. The Defendants plead the defense that at all times in treating Plaintiff they exercised the same degree of care, skill, and diligence as other health care providers would have exercised under similar circumstances, and that at no time did they act towards the Plaintiff with deliberate indifference to any serious medical need.

18. The Defendants plead the affirmative defense that the Plaintiff's Complaint fails to contain a detailed specification and factual description of the acts and omissions alleged to render them liable to the Plaintiff as required by § 6-5-551 of the Ala. Code (1993).

19. The Defendants plead the affirmative defenses of contributory negligence and assumption of the risk.

20. The Defendants plead the affirmative defense that Plaintiff's damages, if any, were the result of an independent, efficient, and/or intervening cause.

21. The Defendants plead the affirmative defense that they a re not responsible for the policies and procedures of the Alabama Department of Corrections.

22. The Defendants plead the affirmative defense that the Plaintiff has failed to mitigate his own damages.

23. The Defendants plead the affirmative defense that they are not guilty of any conduct which would justify the imposition of punitive damages against them and that any such award would violate the United States Constitution.

24. The Defendants adopt and assert all defenses set forth in the Alabama Medical Liability Act § 6-5-481, et seq., and § 6-5-542, et seq.

25. The Plaintiff has failed to exhaust his administrative remedies as mandated by the Prison Litigation Reform Act amendment to 42 U.S.C. § 1997e(a). The Plaintiff

has failed to pursue the administrative remedies available to him. See Cruz v. Jordan, 80 F. Supp. 2d 109 (S.D. N.Y. 1999) (claims concerning defendants' deliberate indifference to a medical need is an action "with respect to prison conditions" and is thus governed by exhaustion requirement).

26. The Prison Litigation Reform Act amendment to 42 U.S.C. § 1997(e)(c) mandates the dismissal of the Plaintiff's claims herein as this action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks money damages from the Defendants who are entitled to immunity.

27. The Plaintiff's claims are barred by the Prison Litigation Reform Act of 1995, 42 U.S.C. §1997(e).

28. The Plaintiff has failed to comply with 28 U.S.C. § 1915 with respect to the requirements and limitations inmates must follow in filing in forma pauperis actions in federal court.

29. Pursuant to 28 U.S.C. § 1915 A, this Court is requested to screen and dismiss this case, as soon as possible, either before or after docketing, as this case is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks money damages from the Defendants who are state officers entitled to immunity as provided for in 42 U.S.C. § 1997 (e)(c).

30. The Defendants assert that the Plaintiff's Complaint is frivolous and filed in bad faith solely for the purpose of harassment and intimidation and request this Court pursuant to 42 U.S.C. § 1988 to award these defendants reasonable attorney's fees and costs incurred in the defense of this case.

## IV. ARGUMENT

A.  **The Plaintiff has failed to prove that these Defendants acted with deliberative indifference to any serious medical need.**

A court may dismiss a complaint for failure to state a claim if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations in the complaint. Romero v. City of Clanton, 220 F. Supp. 2d 1313, 1315 (M.D. Ala., 2002), (citing, Hishon v. King & Spalding, 467 U.S. 69, 73, (1984). "Procedures exist, including Federal Rule of Civil Procedure 7(a), or Rule 12(e), whereby the trial court may "protect the substance of qualified immunity," Shows v. Morgan, 40 F. Supp. 2d 1345, 1358 (M.D. Ala., 1999). A careful review of Moon's medical records reveals that Moon has been given appropriate medical treatment at all times. (See Exhibits "A"-"D"). All of the allegations contained within Moon's Complaint are either inconsistent with his medical and dental records, or are claims for which no relief may be granted. (Id.) Therefore, Moon's claims against the Defendants are due to be dismissed.

In order to state a cognizable claim under the Eighth Amendment, Moon must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 106 (U.S. 1976); McElligott v. Foley, 182 F.3d 1248, 1254 (11th Cir. 1999); Palermo v. Corr. Med. Servs., 148 F. Supp. 2d 1340, 1342 (S.D. Fla. 2001). In order to prevail, Moon must allege and prove that he suffered from a serious medical need, that the Defendants were deliberately indifferent to his needs, and that he suffered harm due to deliberate indifference. See Marsh v. Butler County, 268 F.3d 1014, 1058 (11th Cir. 2001) and Palermo, 148 F. Supp. 2d at 1342. "Neither inadvertent failure to provide adequate medical care nor a physician's

negligence in diagnosing or treating a medical condition states a valid claim of medical mistreatment under the Eighth Amendment." Id. (citations omitted).

Not every claim by a prisoner that medical treatment has been inadequate states an Eighth Amendment violation. Alleged negligent conduct with regard to inmates' serious medical conditions does not rise to the level of a constitutional violation. Alleged medical malpractice does not become a constitutional violation merely because the alleged victim is a prisoner. See Estelle, 429 U.S. at 106, McElligott, 182 F.3d at 1254, Hill, 40 F.3d 1176, 1186 (11th Cir. 1994), Palermo, 148 F. Supp. 2d at 1342. Further, a mere difference of opinion between an inmate and the physician as to treatment and diagnosis cannot give rise to a cause of action under the Eighth Amendment. Estelle, 429 U.S. at 106-108.

The Defendants may only be liable if they had knowledge of Moon's medical condition, Hill, 40 F. 3d at 1191, and acted intentionally or recklessly to deny or delay access to his care, or to interfere with treatment once prescribed. Estelle, 429 U.S. at 104-105. Obviously, Moon cannot carry his burden. The evidence submitted with this Special Report clearly shows that these Defendants did not act intentionally or recklessly to deny or delay medical care, or to interfere with any treatment which was prescribed or directed. The evidence demonstrates, to the contrary, that appropriate standards of care were followed at all times. (See Exhibits "A" – "C"). These facts clearly disprove any claim that the Defendants acted intentionally or recklessly to deny treatment or care.

The Defendants are, further, entitled to qualified immunity from all claims asserted by Moon in this action. There is no argument that the Defendants were not acting within the scope of their discretionary authority. See Eubanks v. Gerwen, 40 F. 3d

1157, 1160 (11th Cir. 1994); see also Jordan v. Doe, 38 F. 3d 1559, 1566 (11th Cir. 1994). Because the Defendants have demonstrated that they were acting within the scope of their discretionary authority, the burden shifts to Moon to show that the Defendants violated clearly established law based upon objective standards. Eubanks, 40 F. 3d at 1160. The Eleventh Circuit requires that before the Defendants' actions can be said to have violated clearly established constitutional rights, Moon must show that the right allegedly violated was clearly established in a fact-specific, particularized sense. Edwards v. Gilbert, 867 F.2d 1271, 1273 (11th Cir. 1989), aff'd in pertinent part, rev'd in part on other grounds, sub nom., Edwards v. Okaloosa County, 5 F. 3d 1431 (11th Cir. 1989).

The Eleventh Circuit further requires that the inquiry be fact specific, and that officials will be immune from suit if the law with respect to their actions was unclear at the time the cause of action arose, or if a reasonable person could have believed that their actions were lawful in light of clearly established law and information possessed by the individual. See Brescher v. Von Stein, 904 F.2d 572, 579 (11th Cir. 1990) (quoting, Anderson v. Creighton, 483 U.S. 635, 640, (U. S. 1987)). The question that must be asked is whether the state of the law in 2004, 2005 and 2006 gave the Defendants fair warning that their alleged treatment of Moon was unconstitutional. Hope v. Pelzer, 536 U.S. 730, 741 (U.S. 2002).

Therefore, to defeat summary judgment, Moon must be able to point to cases with "materially similar" facts, within the Eleventh Circuit, that would alert the Defendants to the fact that their practice or policy violates his constitutional rights. See Hansen v. Soldenwagner, 19 F.3d 573, 576 (11th Cir. 1994). In order for qualified immunity to be defeated, preexisting law must "dictate, that is truly compel (not just suggest or allow or

raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances." Lassiter v. Alabama A & M Univ., Bd. of Trustees, 28 F. 3d 1146, 1151 (11th Cir. 1994). The Defendants submit that there is no case law from the United States Supreme Court, the Eleventh Circuit Court of Appeals, or District Courts sitting within the Eleventh Circuit showing that, under the facts of this case, it was clearly established that these alleged actions violated Moon's constitutional rights. All of Moon's medical needs have been addressed or treated. (See Exhibits "A", "B," & "C" ). The Defendants have provided Moon with appropriate care at all times and he has received appropriate nursing care as indicated for treatment of his conditions.

**B.      The Plaintiff failed to exhaust his administrative remedies prior to filing suit in violation of the Prison Litigation Reform Act (PLRA).**

Congress enacted the Prison Litigation Reform Act of 1995 (PLRA), 110 Stat. 1321-71, as amended, 42 U.S.C. § 1997e et seq., in 1996 in the wake of a sharp rise in prisoner litigation in the federal courts. See, e.g., Alexander v. Hawk, 159 F.3d 1321, 1324-1325 (CA11 1998) (citing statistics).[1] The PLRA was enacted in attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus, to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Nussle, 534 U.S., at 525, 122 S. Ct. 983, 152 L. Ed. 2d 12. See also Booth, 532 U.S., at 739, 121 S. Ct. 1819, 149 L. Ed. 2d 958. The PLRA was also designed to "reduce the quantity and improve the quality of prisoner suits." Nussle, supra, at 524, 122 S. Ct. 983, 152 L. Ed. 2d 12.

---

[1] The PLRA contains a variety of provisions designed to bring inmate litigation under control. See, e.g., § 1997e(c) (requiring district courts to weed out prisoner claims that clearly lack merit); § 1997e(e) (prohibiting claims for emotional injury without prior showing of physical injury); § 1997e(d) (restricting attorney's fees).

A centerpiece of the PLRA's effort "to reduce the quantity . . . of prisoner suits" is an "invigorated" exhaustion provision. See § 1997e(a), and Porter v. Nussle, 534 U.S. 516, 524, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002).[2] Specifically, the PLRA provides that prisoners may not file suit in Federal court for complaints regarding prison conditions unless they have first fully extinguished all administrative remedies available. Specifically,

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." § 1997e (a) (2000 ed.) (emphasis added).

Id. Courts have determined that under the PLRA, exhaustion of administrative remedies is no longer left to the discretion of the district court, but is mandatory. See Booth v. Churner, 532 U.S. 731, 739, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001) (emphasis added). 42 USC § 1997e states:

> (c) Dismissal
> (1) The court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.

Id. (emphasis added).

In order to avoid dismissal, prisoners must exhaust all "available" remedies, not just those that meet federal standards. Moreover, exhaustion of available administrative

---

[2] Requiring proper exhaustion gives prisoners an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors. This is particularly important in relation to state corrections systems because it is "difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons." Preiser v. Rodriguez, 411 U.S. 475, 491-492, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (1973).

remedies is required for any suit challenging prison conditions, not just for suits under § 1983. See Nussle, supra, at 524, 122 S. Ct. 983, 152 L. Ed. 2d 12. See Pozo v. McCaughtry, 286 F.3d 1022, 1025 (CA7) ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require"), cert. denied, 537 U.S. 949, 123 S. Ct. 414, 154 L. Ed. 2d 293 (2002); Ross v. County of Bernalillo, 365 F.3d 1181, 1185-1186 (CA10 2004) (same); Spruill v. Gillis, 372 F.3d 218, 230 (CA3 2004) (same); Johnson v. Meadows, 418 F.3d 1152, 1159 (CA11 2005) (same).

A prisoner's lack of knowledge regarding the existence of the procedure does not relieve his/her responsibility to exhaust administrative remedies, and failure of officials to provide grievance forms is not a legitimate defense. See Abney v. McGinnis, 380 F. 3d 663 (2nd Cir. 2004). So long as the prisoner has access to writing material and officials do not interfere with the procedure, the process must be followed to conclusion before suit is filed. Id.

As relevant to the case at bar, Prison Health Services, Inc. (the company that provided healthcare to inmates at Ventress) has established a simple three-step procedure for identifying and addressing inmate grievances at Ventress Correctional Facility. (See Exhibit "D," to be supplemented). If an inmate has a grievance regarding a healthcare issue he must submit to the healthcare unit an "Inmate Request Slip." (Id.) These are standard forms that may be requested from an inmate's supervising officer in his dormitory. (Id.) The inmate request slip allows an inmate to communicate any healthcare related concern by placing the request slip in the sick call box or mailbox to be forwarded

to the healthcare unit. (Id.) Ventress's Health Services Administrator, Nettie Burks, R.N., H.S.A., subsequently reviews the request and responds accordingly verbally. (Id.)

If an inmate is unsatisfied with H.S.A. Burks' response, he may request an "Inmate Grievance" form from the healthcare unit. (Id.) This form allows an inmate to again voice his concerns relating to the healthcare issue addressed with the inmate request slip. (Id.) H.S.A. Burks again responds to the inmate verbally. (Id.)

If the inmate is still unsatisfied with Nurse Burks' response, he may request from the healthcare unit an "Inmate Grievance Appeal" form. (Id.) This form is again submitted to H.S.A. Burks and represents the final step of the informal grievance process. (Id.) After an inmate submits an inmate grievance appeal, H.S.A. Burks will meet with the inmate face-to-face in a final attempt to address his concerns verbally. (Id.)

The Plaintiff, James Moon, has filed suit in this matter alleging that Nurse Marsh failed to provide him with appropriate nursing care on two occasions; December 9, 2004 and February 27, 2005. (See Complaint). However, Mr. Moon has failed to exhaust Ventress' informal grievance procedure. (See Exhibit "D"). Specifically, as relevant to his Complaint, Mr. Moon has never submitted any grievances regarding the provision of nursing care by Nurse Marsh on these dates. (Id.) He has not submitted an Inmate Request Slip, an Inmate Grievance or an Inmate Grievance Appeal. (Id.) As such, the healthcare unit at Ventress has not been afforded an opportunity to resolve Mr. Moon's medical complaints regarding care provided by Nurse Marsh prior to filing suit. (Id.)

Since Mr. Moon has failed to extinguish those administrative remedies available for him at Ventress, the Prison Litigation Reform Act of 1995 (PLRA) demands that the Plaintiff's claims against Nurse Marsh be dismissed.

## V. <u>CONCLUSION</u>

The Plaintiff's Complaint is due to be dismissed on its face, and is, further, disproven by the evidence now before the Court. All of the Plaintiff's requests for relief are without merit. The Defendants have demonstrated both through substantial evidence and appropriate precedent that there is not any genuine issue of material facts relating to a constitutional violation, and that they are, therefore, entitled to a judgment in their favor as a matter of law. The Plaintiff's submissions clearly fail to meet his required burden. Moreover, since the Plaintiff failed to exhaust those administrative remedies available to him at Ventress prior to filing suit, this case is due to be dismissed pursuant to the PLRA.

Accordingly, the Defendants request that this Special Report be treated and denominated as a Motion to Dismiss and/or a Motion for Summary Judgment and that this Honorable Court either dismiss the Plaintiff's Complaint, with prejudice, or enter a judgment in their favor.

Respectfully submitted,

s/L. Peyton Chapman, III
Alabama State Bar Number CHA060
s/R. Brett Garrett
Alabama State Bar Number GAR085
Attorneys for Anthonette Marsh,
L.P.N. and Nettie Burks, R.N., H.S.A.

RUSHTON, STAKELY,
JOHNSTON & GARRETT, P.A.
Post Office Box 270
Montgomery, Alabama 36101-0270
Telephone: (334) 834-8480
Fax: (334) 262-6277

E-mail: bg@rsjg.com

## CERTIFICATE OF SERVICE

I hereby certified that I have mailed via U.S. mail, properly addressed and first-class postage prepaid, the foregoing document this 26th day of September, 2006, to the following:

James Charley Moon (AIS# 212228)
Ventress Correctional Facility
P.O. Box 767
Clayton, AL 36016

                                                s/R. Brett Garrett
                                                Alabama State Bar Number GAR085
                                                Attorneys for Anthonette Marsh,
                                                L.P.N. and Nettie Burks, R.N., H.S.A.