IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JAMES CHARLEY MOON (AIS# 212228),

    Plaintiff,

V.                                           2:06-CV-384-WKW

SAMUEL RAYAPATI, M.D., ET AL.,

    Defendants.

**SPECIAL REPORT OF DEFENDANTS SAMUEL RAYAPATI, M.D. AND PRISON HEALTH SERVICES, INC.**

COME NOW Defendants Samuel Rayapati, M.D. and Prison Health Services, Inc. in response to this Honorable Court's Order and present the following Special Report with regard to the Plaintiff's claims in this matter:

**I. INTRODUCTION**

The Plaintiff, James Charley Moon (AIS# 212228) is an inmate confined at Ventress Correctional Facility located in Clayton, Alabama. (See Complaint). Defendant, Samuel Rayapati, M.D. is the former medical director for Ventress Correctional Facility. (See Exhibits "A" & "B"). Defendant Prison Health Services, Inc. ("PHS") is the company that currently contracts with the Alabama Department of Corrections to provide medical care to inmates at Ventress and other prisons in the State of Alabama. At all pertinent times Dr. Rayapati was employed by PHS. (See Exhibit "B").

On April 27, 2006, Mr. Moon filed a Complaint against the Defendants as well as numerous other medical and correctional personnel alleging that they have failed to provide him with appropriate medical and dental care. (See Complaint). Along with the

Dr. Rayapati and PHS, Mr. Moon has also sued Nettie Burks, R.N., H.S.A., Ventress' Health Services Administrator; Anthonette Marsh, L.P.N., a licensed, practical nurse at Ventress; Marvin West, D.D.S., Travis Miers, D.M.D., and William Shirley, D.D.S. (dentists who have provided Mr. Moon with treatment at Ventress Correctional Facility); Ruth Naglich, the Associate Commissioner for the Alabama Department of Corrections; Commissioner Richard Allen, Warden J.C. Giles, Sgt. Sherwin Carter, and Capt. Larry Monk. (See Complaint).

As directed, the Defendants have undertaken a review of Plaintiff Moon's claims to determine the facts and circumstances relevant thereto. At this time, Dr. Rayapati and PHS are submitting this Special Report, which is supported by certified copies of Plaintiff Moon's medical and dental records from June 2004 through July 2006 (attached hereto as Exhibit "A"), the Affidavit of Samuel Rayapati, M.D. (attached hereto as Exhibit "B"), Plaintiff's Complaint in (CV-04-3287) (attached hereto as Exhibit "C"), Defendants' Brief in Support of Motion for Summary Judgment in (CV-04-3287) (attached hereto as Exhibit "D"), Order dated August 12, 2005 in (CV-04-3287) (attached hereto as Exhibit "E"), Plaintiff's Notice of Appeal in (CV-04-3287) (attached hereto as Exhibit "F"), and Dismissal of (CV-04-3287) from the Alabama Court of Civil Appeals (attached hereto as Exhibit "G"). These evidentiary materials demonstrate that Plaintiff Moon has been provided appropriate treatment at all times, and that the allegations in his Complaint are false and without merit.

## II. NARRATIVE SUMMARY OF FACTS

At all pertinent times as related to this inmate's claims against the Defendants, the Plaintiff, James Moon (AIS# 212228), has been incarcerated as an inmate at Ventress Correctional Facility. (See Exhibits "A" and "B"). Mr. Moon has made numerous allegations in this matter that Dr. Rayapati has failed to provide him with appropriate medical treatment.[1] (See Complaint). Specifically, Mr. Moon claims (1) that Dr. Rayapati failed to provide him with a follow-up esophagogastroduodenscopy (EGD) subsequent to being evaluated by Joseph Jackson, M.D. on December 9, 2004, (2) that Dr. Rayapati acted inappropriately in failing to transfer him from Ventress to another correctional facility to have an abscessed tooth pulled in 2004, (3) that Dr. Rayapati acted inappropriately in prescribing him pain medication for arthritis which caused esophageal erosion, (4) in contradiction, that Dr. Rayapati acted inappropriately in failing to provide him with pain relieving medication subsequent to suffering an acute case of pancreatitis in February of 2005, and (5) that Dr. Rayapati acted inappropriately in failing to provide him with a soft food diet in April of 2006 subsequent to his second esophageal dilation. (Id.) All of Mr. Moon's allegations against the Defendants in this matter are unfounded. (See Exhibits "A" & "B").

On August 12, 2004, Mr. Moon was transferred to Donald H. Dahlene, M.D. for evaluation of complaints for acid reflux. (Id.) Dr. Dahlene conducted an Upper GI and Barium Swallow Test. (Id.) The studies showed that Mr. Moon had gastroesophageal reflux to the level of the thoracic inlet as well as a small distal esophageal stricture approximately five centimeters proximal to the gastroesophageal junction. (Id.) No hiatal

---

[1] The Plaintiff makes no specific allegations against PHS aside from naming it as a Defendant. (See Complaint).

3

hernia was noted. (Id.) Dr. Dahlene believed that this stricture was most likely caused by Mr. Moon's acid reflux. (Id.)

Mr. Moon was referred for specialty evaluation to Dr. Jackson of Digestive Disorders and Liver Disease Associates on December 9, 2004. (Id.) Dr. Jackson performed an esophagogastroduodenscopy and evaluated Mr. Moon for esophageal stricture. (Id.) Dr. Jackson determined that Mr. Moon's esophageal erosion was likely aggravated by his taking a significant amount of non-steroidal, anti-inflammatory agents (NSAIDS). (Id.) Due to the erosion, Dr. Jackson decided against conducting an esophageal dilation. (Id.) Biopsies were taken to rule out malignancy. (Id.) The stricture was benign. (Id.)

Pursuant to Dr. Jackson's recommendation, Dr. Rayapati prescribed Mr. Moon Prilosec, a proton pump inhibitor, to combat his esophageal erosion. (Id.) Mr. Moon has been maintained for acid reflux with Zantac and Ranitidine. (Id.) These acid reducing medications have been adjusted as warranted by his changing condition. (Id.) Moreover, pursuant to Dr. Jackson's recommendation, Dr. Rayapati discontinued Mr. Moon's pain relieving medications (NSAIDS) which were contraindicated for his treatment due to esophageal erosion. (Id.)

On February 27, 2005, Mr. Moon was returned from Bullock County Hospital where he had been treated for an attack of acute pancreatitis. (Id.) Dr. Rayapati subsequently admitted him for observation to Ventress' infirmary. (Id.) On February 28, 2005, Mr. Moon was transferred to Baptist South Hospital in Montgomery, Alabama for total treatment of his pancreatitis. (Id.) Mr. Moon was transferred to Baptist South because Ventress' infirmary is not properly equipped to provide Mr. Moon with the care

necessary to treat this condition. (Id.) Moreover, since narcotics are not utilized in correctional medicine, Mr. Moon needed to be admitted to a hospital for effective pain management. (Id.)

Mr. Moon was again transferred to Dr. Jackson for follow up evaluation and treatment on February 16, 2006 subsequent to resolution of his pancreatitis. (Id.) He received a second esophagogastroduodenoscopy as well as a balloon dilation of his benign stricture. (Id.) Mr. Moon received another balloon dilation on April 4, 2006. (Id.) Mr. Moon did not require a soft food diet subsequent to his second dilation. (Id.) Such a diet was not medically indicated for his treatment. (Id.)

With regard to Mr. Moon's complaints regarding dental treatment, Dr. Rayapati defers to Mr. Moon's treating dentists, Marvin West, D.D.S., William E. Shirley, D.D.S., and Travis Neal Miers, Jr., D.M.D. whose testimony has been submitted to the court in this matter. (Id.) Mr. Moon has had access to appropriate dental care at all times. (Id.) Mr. Moon's dental condition in 2004 did not warrant his being transferred for treatment to another correctional facility. (Id.)

All of Mr. Moon's medical conditions and complaints have been evaluated in a timely fashion at Ventress Correctional Facility, and his diagnosed conditions have been treated in a timely and appropriate fashion. (Id.) At all times, he has received appropriate medical treatment for his health conditions from Dr. Rayapati and the other PHS personnel at Ventress. (Id.) At no time has he been denied any needed medical treatment. (Id.) In other words, the appropriate standard of care has been adhered to at all times in providing medical care, evaluation, and treatment to this inmate. (Id.)

At no time has Dr. Rayapati or any of the medical or nursing staff at Ventress Correctional Facility denied Moon any needed medical treatment, nor have they ever acted with deliberate indifference to any serious medical need of Moon. (Id.) At all times, Moon's known medical complaints and conditions have been addressed as promptly as possible under the circumstances. (Id.)

### III. DEFENSES

These Defendants assert the following defenses to the Plaintiff's claims:

1. The Defendants deny each and every material allegation contained in the Plaintiff's Complaint and demand strict proof thereof.

2. The Defendants plead not guilty to the charges in the Plaintiff's Complaint.

3. The Defendants assert the defenses of res judicata and collateral estoppel.

4. The Plaintiff's Complaint fails to state a claim against the Defendants for which relief can be granted.

5. The Defendants affirmatively deny any and all alleged claims by the Plaintiff.

6. The Plaintiff is not entitled to any relief requested in the Complaint.

7. The Defendants plead the defense of qualified immunity and aver that the actions taken by them were reasonable and in good faith with reference to clearly established law at the time of the incidents complained of by the Plaintiff.

8. The Defendants are entitled to qualified immunity and it is clear from the face of the Complaint that the Plaintiff has not alleged specific facts indicating that the Medical Defendants have violated any clearly established constitutional right.

9.     The Defendants cannot be held liable on the basis of respondeat superior, agency, or vicarious liability theories.

10.    The Plaintiff is not entitled to any relief under 42 U.S.C. § 1983.

11.    The allegations contained in the Plaintiff's Complaint against the Defendants, sued in their individual capacities, fail to comply with the heightened specificity requirement of Rule 8 in § 1983 cases against persons sued in their individual capacities. See Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992); Arnold v. Board of Educ. Of Escambia County, 880 F.2d 305, 309 (11th Cir. 1989).

12.    The Defendants plead all applicable immunities, including, but not limited to qualified, absolute, discretionary function immunity, and state agent immunity.

13.    The Defendants aver that they were at all times acting under color of state law and, therefore, they are entitled to substantive immunity under the law of the State of Alabama.

14.    The Defendants plead the general issue.

15.    This Court lacks subject matter jurisdiction due to the fact that even if Plaintiff's allegations should be proven, the allegations against the Defendants would amount to mere negligence which is not recognized as a deprivation of the Plaintiff's constitutional rights. See Rogers v. Evans, 792 F.2d 1052 (11th Cir. 1986).

16.    The Plaintiff's claims against the Defendants in their official capacities are barred by the Eleventh Amendment to the United States Constitution.

17.    Alabama law provides tort and other remedies for the allegations made by the Plaintiff herein and such remedies are constitutionally adequate.

18. The Defendants plead the defense that at all times in treating Plaintiff they exercised the same degree of care, skill, and diligence as other health care providers would have exercised under similar circumstances, and that at no time did they act towards the Plaintiff with deliberate indifference to any serious medical need.

19. The Defendants plead the affirmative defense that the Plaintiff's Complaint fails to contain a detailed specification and factual description of the acts and omissions alleged to render them liable to the Plaintiff as required by § 6-5-551 of the Ala. Code (1993).

20. The Defendants plead the affirmative defenses of contributory negligence and assumption of the risk.

21. The Defendants plead the affirmative defense that Plaintiff's damages, if any, were the result of an independent, efficient, and/or intervening cause.

22. The Defendants plead the affirmative defense that they are not responsible for the policies and procedures of the Alabama Department of Corrections.

23. The Defendants plead the affirmative defense that the Plaintiff has failed to mitigate his own damages.

24. The Defendants plead the affirmative defense that they are not guilty of any conduct which would justify the imposition of punitive damages against them and that any such award would violate the United States Constitution.

25. The Defendants adopt and assert all defenses set forth in the Alabama Medical Liability Act § 6-5-481, et seq., and § 6-5-542, et seq.

26. The Plaintiff has failed to exhaust his administrative remedies as mandated by the Prison Litigation Reform Act amendment to 42 U.S.C. § 1997e(a). The Plaintiff

has failed to pursue the administrative remedies available to him. See Cruz v. Jordan, 80 F. Supp. 2d 109 (S.D. N.Y. 1999) (claims concerning defendants' deliberate indifference to a medical need is an action "with respect to prison conditions" and is thus governed by exhaustion requirement).

27. The Prison Litigation Reform Act amendment to 42 U.S.C. § 1997(e)(c) mandates the dismissal of the Plaintiff's claims herein as this action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks money damages from the Defendants who are entitled to immunity.

28. The Plaintiff's claims are barred by the Prison Litigation Reform Act of 1995, 42 U.S.C. §1997(e).

29. The Plaintiff has failed to comply with 28 U.S.C. § 1915 with respect to the requirements and limitations inmates must follow in filing in forma pauperis actions in federal court.

30. Pursuant to 28 U.S.C. § 1915 A, this Court is requested to screen and dismiss this case, as soon as possible, either before or after docketing, as this case is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks money damages from the Defendants who are state officers entitled to immunity as provided for in 42 U.S.C. § 1997 (e)(c).

31. The Defendants assert that the Plaintiff's Complaint is frivolous and filed in bad faith solely for the purpose of harassment and intimidation and request this Court pursuant to 42 U.S.C. § 1988 to award these defendants reasonable attorney's fees and costs incurred in the defense of this case.

## IV. ARGUMENT

A. **The Plaintiff has failed to prove that these Defendants acted with deliberative indifference to any serious medical need.**

A court may dismiss a complaint for failure to state a claim if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations in the complaint. Romero v. City of Clanton, 220 F. Supp. 2d 1313, 1315 (M.D. Ala., 2002), (citing, Hishon v. King & Spalding, 467 U.S. 69, 73, (1984). "Procedures exist, including Federal Rule of Civil Procedure 7(a), or Rule 12(e), whereby the trial court may "protect the substance of qualified immunity," Shows v. Morgan, 40 F. Supp. 2d 1345, 1358 (M.D. Ala., 1999). A careful review of Moon's medical records reveals that Moon has been given appropriate medical treatment at all times. (See Exhibits "A" & "B"). All of the allegations contained within Moon's Complaint are either inconsistent with his medical and dental records, or are claims for which no relief may be granted. (Id.) Therefore, Moon's claims against the Defendants are due to be dismissed.

In order to state a cognizable claim under the Eighth Amendment, Moon must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 106 (U.S. 1976); McElligott v. Foley, 182 F.3d 1248, 1254 (11th Cir. 1999); Palermo v. Corr. Med. Servs., 148 F. Supp. 2d 1340, 1342 (S.D. Fla. 2001). In order to prevail, Moon must allege and prove that he suffered from a serious medical need, that the Defendants were deliberately indifferent to his needs, and that he suffered harm due to deliberate indifference. See Marsh v. Butler County, 268 F.3d 1014, 1058 (11th Cir. 2001) and Palermo, 148 F. Supp. 2d at 1342. "Neither inadvertent failure to provide adequate medical care nor a physician's

negligence in diagnosing or treating a medical condition states a valid claim of medical mistreatment under the Eighth Amendment." Id. (citations omitted).

Not every claim by a prisoner that medical treatment has been inadequate states an Eighth Amendment violation. Alleged negligent conduct with regard to inmates' serious medical conditions does not rise to the level of a constitutional violation. Alleged medical malpractice does not become a constitutional violation merely because the alleged victim is a prisoner. See Estelle, 429 U.S. at 106, McElligott, 182 F.3d at 1254, Hill, 40 F.3d 1176, 1186 (11th Cir. 1994), Palermo, 148 F. Supp. 2d at 1342. Further, a mere difference of opinion between an inmate and the physician as to treatment and diagnosis cannot give rise to a cause of action under the Eighth Amendment. Estelle, 429 U.S. at 106-108.

The Defendants may only be liable if they had knowledge of Moon's medical condition, Hill, 40 F. 3d at 1191, and acted intentionally or recklessly to deny or delay access to his care, or to interfere with treatment once prescribed. Estelle, 429 U.S. at 104-105. Obviously, Moon cannot carry his burden. The evidence submitted with this Special Report clearly shows that these Defendants did not act intentionally or recklessly to deny or delay medical care, or to interfere with any treatment which was prescribed or directed. The evidence demonstrates, to the contrary, that appropriate standards of care were followed at all times. (See Exhibits "A" & "B"). These facts clearly disprove any claim that the Defendants acted intentionally or recklessly to deny treatment or care.

The Defendants are, further, entitled to qualified immunity from all claims asserted by Moon in this action. There is no argument that the Defendants were not acting within the scope of their discretionary authority. See Eubanks v. Gerwen, 40 F. 3d

1157, 1160 (11th Cir. 1994); see also Jordan v. Doe, 38 F. 3d 1559, 1566 (11th Cir. 1994). Because the Defendants have demonstrated that they were acting within the scope of their discretionary authority, the burden shifts to Moon to show that the Defendants violated clearly established law based upon objective standards. Eubanks, 40 F. 3d at 1160. The Eleventh Circuit requires that before the Defendants' actions can be said to have violated clearly established constitutional rights, Moon must show that the right allegedly violated was clearly established in a fact-specific, particularized sense. Edwards v. Gilbert, 867 F.2d 1271, 1273 (11th Cir. 1989), aff'd in pertinent part, rev'd in part on other grounds, sub nom., Edwards v. Okaloosa County, 5 F. 3d 1431 (11th Cir. 1989).

The Eleventh Circuit further requires that the inquiry be fact specific, and that officials will be immune from suit if the law with respect to their actions was unclear at the time the cause of action arose, or if a reasonable person could have believed that their actions were lawful in light of clearly established law and information possessed by the individual. See Brescher v. Von Stein, 904 F.2d 572, 579 (11th Cir. 1990) (quoting, Anderson v. Creighton, 483 U.S. 635, 640, (U. S. 1987)). The question that must be asked is whether the state of the law in 2004, 2005 and 2006 gave the Defendants fair warning that their alleged treatment of Moon was unconstitutional. Hope v. Pelzer, 536 U.S. 730, 741 (U.S. 2002).

Therefore, to defeat summary judgment, Moon must be able to point to cases with "materially similar" facts, within the Eleventh Circuit, that would alert the Defendants to the fact that their practice or policy violates his constitutional rights. See Hansen v. Soldenwagner, 19 F.3d 573, 576 (11th Cir. 1994). In order for qualified immunity to be defeated, preexisting law must "dictate, that is truly compel (not just suggest or allow or

raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances." Lassiter v. Alabama A & M Univ., Bd. of Trustees, 28 F. 3d 1146, 1151 (11th Cir. 1994). The Defendants submit that there is no case law from the United States Supreme Court, the Eleventh Circuit Court of Appeals, or District Courts sitting within the Eleventh Circuit showing that, under the facts of this case, it was clearly established that these alleged actions violated Moon's constitutional rights. All of Moon's medical needs have been addressed or treated. (See Exhibits "A" & "B"). The Defendants have provided Moon with appropriate care at all times and he has received appropriate medical care as indicated for treatment of his conditions.

   B. **The Plaintiff's Claims Against The Defendants for Failure to Provide Appropriate Treatment Relating to his Esophageal Stricture are Barred by the Doctrine of Res Judicata.**

This is Mr. Moon's second lawsuit against Dr. Rayapati and PHS alleging that they have failed to provide him with appropriate treatment for esophageal stricture. On December 6, 2004, the Plaintiff filed a medical malpractice action in the Circuit Court of Montgomery County, Alabama (CV-04-3287) against PHS and Dr. Rayapati pursuant to both the Alabama Medical Liability Act ("AMLA") and the 8th Amendment to the United States Constitution alleging that the Defendants failed to provide him with appropriate medications and medical treatment for an esophageal stricture and acid reflux. (See Complaint (CV-04-3287), attached hereto as Exhibit "C"). He also made complaints for eye, tooth, back and neck pain. (Id.) As a result of these alleged failures, the Plaintiff complained that he could not eat properly and was made to vomit. (Id.)

On August 4, 2005, the Defendants filed a Motion for Summary Judgment in (CV-04-3287) which was supported by Dr. Rayapati's Affidavit testimony. (See Brief in Support of Motion for Summary Judgment (CV-04-3287), attached hereto as Exhibit "D"). Dr. Rayapati testified that all of the Plaintiff's medical conditions had been addressed in a timely and appropriate fashion and that the appropriate standard of care had been followed at all times in providing the Plaintiff with medical care. (Id.)

The trial court granted the Defendants' Motion for Summary Judgment on August 12, 2005. (See Order dated August 12, 2005, attached hereto as Exhibit "E"). On September 19, 2005, the Plaintiff filed an Appeal with the Alabama Court of Civil Appeals. (See Exhibit "F"). The Alabama Court of Civil Appeals affirmed the dismissal without opinion on June 9, 2006. (See Exhibit "G").

Mr. Moon filed the instant action on April 27, 2006, while resolution of (CV-04-3287) was pending before the Alabama Court of Civil Appeals. (See Complaint). As discussed above, Mr. Moon alleges similar allegations in the instant action against PHS and Dr. Rayapati regarding their failure to provide him with appropriate treatment for his esophageal stricture. (See Complaint). The Plaintiff has been afforded the opportunity to litigate these complaints previously before a Court of competent jurisdiction; therefore, he is barred from bringing similar claims against Dr. Rayapati and PHS in this action.

With regard to claims made for treatment of his esophageal stricture, Mr. Moon alleges that Dr. Rayapati has failed to provide him with a follow-up esophagogastroduodenscopy (EGD) subsequent to being evaluated by Joseph Jackson, M.D. on December 9, 2004 and that he acted inappropriately in prescribing him pain medications for arthritis which caused esophageal erosion. Id. He also claims that Dr.

Rayapati failed to act appropriately by not placing him on a soft food diet in April of 2006 subsequent to his second esophageal dilation. (See Complaint). These claims are due to be dismissed.

U.S. Const. art. IV, § 1, demands that full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state. Congress may by general laws prescribe the manner in which such acts, records, and proceedings shall be proved and the effect thereof. See San Remo Hotel, L.P. v. City & County of San Francisco, 545 U.S. 323 (U.S. 2005). 28 U.S.C.S. § 1738 provides that judicial proceedings shall have the same full faith and credit in every court within the United States and its territories and possessions as they have by law or usage in the courts of such state. Id. This statute is understood to encompass the doctrines of res judicata. Id. The general rule implemented by the full faith and credit statute is that parties should not be permitted to relitigate issues that have been resolved by courts of competent jurisdiction. Id.

As relevant here, Mr. Moon had an opportunity to litigate his claims relating to medical treatment for his esophageal stricture to finality in the Circuit Court of Montgomery County, Alabama (CV-04-3287). It is well established:

> Issues actually decided in valid state-court judgments may well deprive plaintiffs of the "right" to have their federal claims relitigated in federal court. This is so even when the plaintiff prefers not to litigate in state court, but is required to do so by statute or prudential rules. **The relevant question in such cases is not whether the plaintiff has been afforded access to a federal forum; rather, the question is whether the state court actually decided an issue of fact or law that was necessary to its judgment**.

Id. (emphasis added).

The Supreme Court has held that the doctrine of res judicata may apply when a Section 1983 action is preceded by a state court action involving the same parties and in which the litigant had a full and fair opportunity to present his claim. See Allen v. McCurry, 449 U.S. 90, 95-97, 101 S. Ct. 411, 415-16, 66 L. Ed. 2d 308 (1980). A federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was ordered. Migra v. Warren City School Dist. Bd. of Ed., 465 U.S. 75, 81, 104 S. Ct. 892, 896, 79 L. Ed. 2d 56 (1984); Jones v. Gann, 703 F.2d 513, 514 (11th Cir.1983).[2]

The defense of res judicata (claim preclusion) prevents parties from raising legal theories, claims for relief, or defenses which could have been raised in the prior litigation, even though such claims were never actually litigated in the prior case. See Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398, 101 S. Ct. 2424, 69 L. Ed. 2d 103 (1981). A judgment in a prior action will preclude another action based on the same facts and asserted injury even though the subsequent action asserts a different legal theory to justify recovery. See Nevada v. United States, 463 U.S. 110, 129-130, 103 S. Ct. 2906, 77 L. Ed. 2d 509 (1983). The elements of res judicata are as follows: (1) prior judgment rendered by court of competent jurisdiction; (2) prior judgment rendered on the merits; (3) parties to both suits substantially identical; and (4) same cause of action present in both suits. See Stevenson v. International Paper Co., 516 F.2d 103 (5th Cir. 1975). If these elements are present, then the former judgment is an absolute bar to any subsequent suit on the same cause of action, including any issue which was or could have been

---

[2] Federal courts have consistently accorded preclusive effect to issues decided by state courts. See Angel v. Bullington, 330 U.S. 183 (U.S. 1947). Thus, res judicata not only reduces unnecessary litigation and fosters reliance on adjudication, but also promotes the comity between state and federal courts that has been recognized as a bulwark of the federal system. See Younger v. Harris, 401 U.S. 37, 43-45 (U.S. 1971).

litigated in the prior action. See McGruder v. B & L Construction Co., 331 So. 2d 257 (Ala. 1976).

In the instant case, Mr. Moon alleges specifically that Dr. Rayapati has failed to provide him with appropriate treatment and medications for his esophageal stricture. (See Complaint). Specifically, as necessary to satisfy the elements of a res judicata defense, (1) the Circuit Court of Montgomery County, Alabama is a court of competent jurisdiction, (2) the Court entered a final judgment on the merits of Mr. Moon's claims against the Defendants regarding what constituted appropriate treatment for his esopheagel stricture--which was, consequently, affirmed on appeal to the Alabama Court of Civil Appeals, (3) the Defendants and Mr. Moon were parties to the earlier state court action (CV-04-1357), and (4) Mr. Moon based his claims against the Defendants in (CV-04-1357) on alleged violations of his Constitutional rights pursuant to the 8th Amendment to the United States Constitution as well as the Alabama Medical Liability Act. (See Complaint (CV-04-1357)).

Since Mr. Moon has had an opportunity to litigate his claims against Dr. Rayapati regarding care for his esophageal stricture in a court of competent jurisdiction, he may not relitigate the same claims in the instant action.

## V. CONCLUSION

The Plaintiff's Complaint is due to be dismissed on its face, and is, further, disproven by the evidence now before the Court. All of the Plaintiff's requests for relief are without merit. The Defendants have demonstrated both through substantial evidence and appropriate precedent that there is not any genuine issue of material facts relating to a

constitutional violation, and that they are, therefore, entitled to a judgment in their favor as a matter of law. The Plaintiff's submissions clearly fail to meet his required burden.

Moreover, since the Plaintiff has brought claims against these Defendants for alleged inappropriate care for his esophageal stricture in the Circuit Court of Montgomery County, Alabama, any claims relating to this treatment have been litigated in a Court of competent jurisdiction and are barred by res judicata.

Accordingly, the Defendants request that this Special Report be treated and denominated as a Motion to Dismiss and/or a Motion for Summary Judgment and that this Honorable Court either dismiss the Plaintiff's Complaint, with prejudice, or enter a judgment in their favor.

Respectfully submitted,

s/L. Peyton Chapman, III
Alabama State Bar Number CHA060
s/R. Brett Garrett
Alabama State Bar Number GAR085
Attorneys for Samuel Rayapati, M.D.
and Prison Health Services, Inc.

RUSHTON, STAKELY,
JOHNSTON & GARRETT, P.A.
Post Office Box 270
Montgomery, Alabama 36101-0270
Telephone: (334) 834-8480
Fax: (334) 262-6277
E-mail: bg@rsjg.com

## CERTIFICATE OF SERVICE

I hereby certified that I have mailed via U.S. mail, properly addressed and first-class postage prepaid, the foregoing document this 11th day of October, 2006, to the following:

James Charley Moon (AIS# 212228)
Ventress Correctional Facility
P.O. Box 767
Clayton, AL 36016

                                        s/R. Brett Garrett
                                        Alabama State Bar Number GAR085
                                        Attorneys for Samuel Rayapati, M.D.
                                        and Prison Health Services, Inc.