IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED
2006 NOV 22 A 9:30
DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| James Charley Moon, #212228, | * |
| Plaintiff, | * |
| v. | *   CIVIL ACTION NO. 2:06-CV-384-WKW |
| Richard Allen, et al., | * |
| Defendants. | * |

### ANSWER AND REBUTTAL TO DEFENDANT'S SPECIAL REPORT OF COMMISSIONER RICHARD ALLEN, ASSOCIATE COMMISSIONER RUTH NAGKICH, WARDEN J.C. GILES, CAPTAIN LARRY MONK, AND SERGAENT SHERWIN CARTER, ADOC DEFENDANTS

Comes now the Plaintiff, James Charley Moon, acting pro se and in the above styled cause presents this Answer and Rebuttal to the Defendant's Special Report.

### STATEMENT OF FACTS

On Feb. 27, 2005 Plaintiff had a severe attack of pancreatitis. Warden J.C. Giles came to Bullock County Hospital. I talked to him and told him about the problem with dental and my esophagus. He knew that the dentist had died in an automobile accident and their was a lack of staff in this area. Also on the 28th of February, 2005, the next day, I was hospitalized again, for 5 more days, more than likely because of the abcessed teeth.

In March of 2006 I talked to R.N. Burks about who took out an insurance policy on Plaintiff, which stated I was self-insured with Blue Cross/Blue Shield. Mrs. Burks stated it was the Alabama Department of Corrections (ADOC). See Exhibits # A-93         A emergency policy, but See Contact Mrs. Burks for emergency information. Also, will show that under the Guarantor Information that the Plaintiff had taken out this policy, but regardless

who has taken out this policy, there would be a 270 day waiting period because of the pre-existing condition. The ADOC and Prison Health Services, Inc. (PHS) both were working together on getting Plaintiff insured, due to the <u>high cost</u>. I had sent a written request for this information to Warden J.C. Giles and he sent it to Mrs. Burks to answer. The first E.G.D. was paid by Prison Health Services, Inc. See Exhibit # A-152, Dec. 9, 2004. The sec. time Blue Cross/Blue Sheild A-93

    Plaintiff contends that by not following Dr. Jackson's simple instructions: See Exhibits # A-24,25,26 Whatever was necessary to take care of Plaintiff's (Moon) dental problems would subject Moon to a condition that may develop into pre-cancerous Barrett's Esophagus. See <u>Jones v. Consuegra's Estate</u>, 338 F. Supp. 2d 1282 (11th Cir. M.D. Fla. 2004). (Plaintiff inmate claimed that defendant was deliberately indifferent to his serious medical need by not properly treating his gastro-esophageal reflux disease, resulting in the condition developing into pre-cancerous Barrett's Esophagus). Plaintiff contends 7 1/2 months taking pain medication cause detrimental damage to esophagus (quoting <u>Farmer</u>, 511 U.S. at 834, 114 S.CT. 1970). Base on the medical records and the attention given to Plaintiff's medical needs during the relevant time period, this Court concludes that Plaintiff's kidney and gastroenterological concerns were serious medical issues. Plaintiff also contends over 14 month delay for E.G.D. and dilation cause a fully developed stricture, instead of (1) dilation now, there has to be a series of dilations to remove stricture. 3 dilation's it is only 18 mm/normal esophagus is 48 mm

<u>SEE: HARRIS V. COWETA COUNTY, CITE AS 21 F.3D (11TH CIR. 1994)</u>

    (8) The tolerable length of delay in providing medical attention depends on the nature of medical need and the reason for the delay. <u>Ancata v. Prison Health Services, Inc.</u>, 769 F.2d 700 (11th Cir. 1985). The law was also

clearly established that the right to medical and surgical care, e.g., **H.C. by Hewett v. Jarrard**, 786 F.2d 1080 (11th Cir. 1986) confirming earlier case law taht "failure to provide diagnostic care and medical treatment known to be necessary (or) delay of necessary treatment for non-medical reasons ...establishe(s) deliberate indifference sufficient to establish a constitutional violation. Finally, it was clear that deliberate indifference could be inferred from an unexplained delay in treating a known or obvious serious medical condition. **Brown,** 894 F.2d 1538. Also, **Ancata v. Prison Health Services, Inc.,** 769 F.2d 700, 704 (Quote) The Court said:

> Deliberate indifference to serious medical needs is shown when prison officials have prevented an <u>inmate from receiving recommended treatment</u> or when an inmate is denied access to medical treatment or personnel capable of evaluating the need for treatment.

(8) Plaintiff alleges in PHS's authorization letter they would only authorize (1) visit for outpatient surgery; for endoscopy and dilation due to: High cost this as stated in above case, known as delay of necessary treatment for non-medical reason...establish(es) deliberate indifference for a 14 month delay in treatment known to be necessary is not in a timely fashion. Dr. Rayapati refused to follow recommended treatment due to his defiance of implicit medical instructions, to treat the symptoms, not the problem, cause detrimental, irreversible damage to Plaintiff Moon's esophagus, for the pain Medication (Moon) was taking for abcessed teeth, would stick to the esophagus where the 1/4 inch stricture was and dissolve in the esophagus instead of in the stomach, as intended, during which Plaintiff suffered considerably. Dr. Rayapati has not explained why there was a (14) month delay for a repeat E.G.D., <u>as recommended</u> December 9, 2004 and again on September 22, 2005 and not performed until February 16, 2006. An esophageal stricture <u>cannot</u> be removed with medication. It has to be done by a balloon dilation. See Exhibits # A-97 .

Page 3

Also, Plaintiff Moon contends that PHS and ADOC had made inmate Moon wait until the pre-existing time had lapsed so that the insurance policy taken with Blue Cross/Blue Shield came in effect so they would not have to pay the high cost of surgery. See 123 F. Supp. 2d 1286, **Duckett v. Blue Cross/Blue Shield**, 270 day waiting period for pre-existing condition See Exhibits # A-93 for this is known as a delay for non-medical reasons. See **Martinez v. Mancuis**, 443 F.2d 921 (2nd Cir. 1970) prison doctor failed to follow the express post-operative directions of the surgeon who had operated on the prisoner.

8. Sentencing and Punishment 1546

A prisoner states a valid 1983 claim for deliberate indifference to serious medical needs in violation of the Eighth Amendment, whether the indifference is manifested by prison doctors in their response to the prisoners needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed. U.S.C.A. Const. Amend. 8, 42 U.S.C.A. 1983.

In **Hinson v. Edmond**, cite as 192 F.3d 1342 (11th Cir. 1999), (quote) Inmate "Post-operative Notes" were not followed 72 day delay. See Page 1346 at [3 and 4] "Inmate health care" is defined, in the pertinent contract, as "all professional medical, dental, and related health care and administrative services for inmates." See: Prison Health Services, Inc. Contracts with ADOC, P. 37, 5.14 Outpatient of Site Services. See Exhibits # A-20 or 5.14 contracts states:

> Off-site clinic services "must" be provided within the time frame specified by Vendor's referring physician and result in a legible report in the inmate's medical record within three days after the appointment.
>
> All recommendations involving "Any Special procedures or non-routine follow-up" "must" be communicated verbally between the off-site consultant and the vendor's primary care physician within twenty-four hours of the consult.

Page 4

In September of 2005, my mother called Warden J.C. Giles and tried to get some help with my dental and esophageal stricture. He did talk to Nurse Burks. I also talked to Warden Giles, he called me to his office and I explained the problems I was having with dental and medical. I told him I had lost twenty pounds due to the 1/4 inch stricture in my esophageas and "NO" partial plates because I was unable to eat properly and I also told him I was tired of eating applesauce and cream potatoes. Mrs. Burks called me over to talk to her. I also explained everything to her so she would understand all that was going on.

On October 12, 2005 I sent a three page letter to Ruth Naglich, Associate Commissioner, who oversees medical contracts for medical between ADOC and PHS. See Exhibits # A-86 certified mail. On March 13, 2006 I put ADOC Warden J.C. Giles on notice of their wrongdoings. See Exhibits #A-115 thru 120. I also attached a request to Warden Giles and stated: As you know I have been trying to get my esophagus stretched so I can eat properly, but due to "NO" dentist and Dr. Rayapati's delay of treatment has destroyed my esophagus. I am requesting under: Model Sentencing and Corrections Act §4-105(c), (July 2001) Inmates should be permitted to use resources to obtain outside medical help (V.A.). Warden Giles sent this to Mrs. Burks I quoted applicable law showing Constitutional violations.

The ADOC never addressed allegation #2 and #4 under 8(d) F.R.Cr.Proc. considered true when not answered, which states: Plaintiff alleges that the D.O.C. failed to provide toothpaste, we are supposed to get tooth paste every 2 months, (1) 2.7 ounce tube. If you brush your teeth three times a day after meals it will last about two weeks. This leaves 6 weeks without toothpaste. See **Adkins v. Rodriguez**, 59 F.3d 1034-1037 (10th Cir. 1995)

citation omitted) stated claim due to denying him free toothpaste and razors. **Board v. Farnham**, cite as 394 F.3d 469 (7th Cir. 2005); Civil Rights at 1376(6); Prisons at 17(2); Sentencing and Punishment at 1546; County Sheriff by denying detainee toothpaste for over three weeks despite detainee's repeated requests, violated detainee's established Constitutional right to receive adequate attention for a serious medical condition, and thus, was not entitled to qualified immunity on detainee's denial of medical treatment claim, detainee suffered from dental pain throughout his incarceration, and had to have several teeth extracted because of tooth decay. U.S.C.A. Const. Amend. 8; 42 U.S.C.A. §1983 Sentencing at 1533.

The Eighth Amendment protects prisoners, and thus detainees, from an official's deliberate indifference to damage to prisoner's future health U.S.C.A. Const. Amend. 8. See Exhibits $ A-164 thur 223.

Plaintiff sent request to Captain Monk for toothpaste because there was none in the prison. Captain Monk called Plaintiff to his office I explained all of this to Captain Monk. He reached in his desk and handed Plaintiff a box of state toothpaste. He stated: he had had this for awhile and tore up my request and threw it in the garbage. I went back to my dorm and was using the toothpaste, it went to burning my mouth, I spit it out and got to looking at the toothpaste, it was dated 1997 and had been out of date for usage for (6) years. This was a 9 year old tube of toothpaste. I still have this box of State toothpaste. This was a 3 oz. tube we only get a 2.7 oz. tube now, we are getting less now than we got (9) years ago.

On March 13, 2006 I sent a request to Captain Monk again. I still had "NO" toothpaste. Plaintiff stated: See Exhibits # A-148 A I was put on restriction on the 15th of February, 2006 for a citation, this is my first

one since 2000, I have learned my lesson, I need some antacid tabs for reflux condition I have, and toothpaste and razors, shampoo and things, would you consider taking me off, so I can make store. Plaintiff was on restriction for 45 days without toothpaste. Plaintiff being deprived access to an adequate supply of toothpaste. See **Wynn v. Southward**, 251 F.3d 588, 593 (7th Cir. 2001). At the outset, we reiterate our view that "dental care is one of the most important medical needs of inmates."

On March 20, 2006 I sent a request to Sgt. Carter. He was the Administrative Sergaent. See Exhibits #A-148 B. I stated I need some acid tablets for acid reflux, and toothpaste. See **Wynn**, 251 F.3d at 593 (quoting **Ramos v. Lamm**, 639 F.2d 559, 576 (10th Cir. 1980). In addition, a number of other courts have also held that dental pain accompanied by various degrees of attentuated medical harm may constitute an objectively serious medical need. See **Fields v. Gander**, 734 F.2d 1313, 1314-15 (8th Cir. 1984); See Also **Penrod v. Zauras**, 94 F.3d 1399, 1406 (10th Cir. 1996) (recession of bleeding of gums); **Boyd v. Knox**, 47 F.3d 966, 969 (8th Cir. 1995) (deterioration of teeth due to lack of treatment); **Hunt v. Dental Dep't**, 865 F.2d 198, 200 (9th Cir. 1989) (an interference with the ability to eat).

For example, in **Penrod v. Zavaras**, the United States Court of Appeals for the Tenth Circuit held that, for summary judgment purposes, the deprivation of toothpaste resulting in bleeding gums and tooth decay which had to be attended to by a dentist could constitute serious harm under the Eighth Amendment. **Penrod**, 94 F.3d at 1406.

Plaintiff: The risk posed by tooth loss, the most common cause of which is periodontal disease (of which the most common form is known as gingivitis), cannot be under estimated. Such disease of the mouth are believed to lead to coronary atherosclerosis and a myriad of heart problems, as well as

bacterial infections such as transient bacteremia or sepsis, all of which are capable of causing death. See <u>Eugene Buaunwald, et al., Harrison's Principles of Internal Medicine</u>, 194-95, 7990800 (15th Ed. 2001).

Plaintiff almost died due to abcessed teeth for 7 1/2 months #29 tooth due to spreading infections. On February 27, 2005 pneumonia and pancreatitis See Exhibit # __A-48__ shows that the Plaintiff in fact has these items listed above such as: The heart has a left ventricular prominence, atherosolerotic changes can be seen on the abdominal aorta without aneurysm. Severe ulcerative esophagitis. Patients who have significant hemorrhage or pulmonary damage from aspiration of gastric contents are advised to undergo surgical correction of the <u>incompetent cardia</u>. See Exhibits # __A-92__.

Plaintiff alleged a broken false tooth P.2 Exhibits # __A-118__ has not been cured because Dr. West would not order a .02 cent post to repair tooth #8 crown cemented it without a <u>post</u> 2 times on 10-27-04 and 12-29-04 crown #8 wento down the drain while using urinal A $600.00 crown. The contract states: See Exhibits # __A-15(F)__.

> If a front tooth or series of front teeth are extracted while the inmate is incarcerated, <u>or a prosthetic that was made before entering the D.O.C. is broken or lost through no fault of the inmate, a dental prostesis will be provided for the inmate at the expense of the Vendor</u>.

PHS has failed to live up to their agreement with the ADOC. Allegation #2 is considered true when not answered 8(d) F.R.Civ.Proc.

Plaintiff alleges along with not having his crown replaced he did not receive annual routine cleaning for the records will show it took 21 months and a lawsuit to get Plaintiff's teeth cleaned. Plaintiff has been incarcerated 6 1/2 years without teeth being cleaned. See Contract's with PHS and DOC

__A-15 (I)__   See A-1 Request for teeth cleaning August 18, 2004

See   A- 225 April 25, 2006 states at teeth cleaning Plaintiff had "moderate bleeding."

In Penrod v. Zavaras, 94 F.3d at 1405-06, the Tenth Circuit held that the Plaintiff had raised a genuine issue of material fact as to whether prison official's denial of free toothpaste (the Plaintiff while incarcerated spent his available funds pursuing legal clamis), where the deprivation of toothpaste eventually caused serious harm to his medical needs - specifically recession of gums and tooth decay - violated the Eighth Amendment. Id at 1406. Also, in **Green v. Ferrell**, 801 F.2d 765 (5th Cir. 1986) the Fifth Circuit reversed a magistrate's holding that prison officials are required to furnish "additional laundry service and hygienic materials," including toothpaste. See Exhibits or S.24(I)
# A-15(I)   toothpaste and annual routine cleaning. SEE A 164 thur 223 third Alagations

        42 U.S.C.A. §1983 Criminal Law 1213.10(3)
        State must provide prisoners level of
        Health Services reasonably designed to meet
        routine and emergency medical, dental and
 psychological or psychiatric care.

ON March 13, 2006 I put Warden Giles on notice of their wrongdoings. I also sent a copy to Richard Allen, ADOC Commissioner and a copy to Ruth Naglich, Associate Commissioner. I sent letters addressing my dental and health problems, which I have copies of See Exhibits #A-115 thru 120. See **Ramos v. Lamm**, 639 F.2d 559 (10th Cir. 1980). P. 576.

On site coverage of 40 hours a week sufficient for 800-1000 inmates but not 1,400 according to State witness, Ventress Correctional Facility has 1,700 inmates with court transfers and the dental department was originally set up with (2) chairs with a population of 600 inmates. The population is now at triple capacity. Should have at least (4) chairs with (2) full time dentists. We have (2) part-time dentists that work only 2 days apiece leaving

NO dentist Friday through Sunday and in June of 2004 through March, 2005 10 months only came 3 or 4 days a month Dr. West came from Kilby Correctional Facility for which Plaintiff suffered dearly, and almost died due to lack of staff. Also because of delay of treatment causing infections and abcesses leading to continued and unnecessary pain and loss of teeth. That Plaintiff still has severe erosive esophagitis that I still have esophageal stricture that a normal esophagus 48-50 mm that Plaintiff's is on 21 mm not even half opened that Plaintiff suffers daily.

On February 7, 2006 Plaintiff had $110.00 sent in my mother's name because this is the way I was told to sent it in. Earline Moon is on my funds list. See Exhibits # A-146 B  This money was frozen until my release See EXhibits # A-146 A  In November of 2006 I checked my card at the Canteen store. It showed a $21.00 balance with a $110.00 freeze. There had been $89.00 withdrawn somebody has taken $89.00 without giving Plaintiff a receipt. So PHS has been taking a $3.00 co-charge for 3 visits, but $80.00 has been taken unexplained. So now this put Plaintiff at $199.00 freeze without explanation. Warden Giles is retaliating against Plaintiff.

See **Farrow v. West**, as cite 320 F.3d page 1248 (2003 11th Cir.) 25-27 quote. The First Amendment forbids prison officials from retaliation against prisoners for exercising the right to free speech. **Thomas v. Evans**, 880 F. 2d 1235, 1242 (11th Cir. 1989). To state a First Amendment claim for retaliation, a prisoner need not allege violation of a separate and distinct Constitutional right. Id, at 1242, the gist of a retaliation claim is that a prisoner is penalized for exercising the right by demonstrating that the prison officials actions were the result of having filed a grievance concerning the conditions of his imprisonment. **Wilderger v. Bracknell**, 869 F.2d 1467, 1468 (11th Cir. 1989). Also Officer Wheeler See 5 Sworn Affidavits. See

Page 10

Exhibits # A-153 thur 163. I also sent copies of these affidavits and put him on notice of Officer Wheeler's intentions, taking my food away from Plaintiff, not allowing Plaintiff to get medication and honoring profiles for special diets. These copies were sent to Warden J.G. Giles. On November 15, 2006 I was called to Health Care Unit (HCU) for Nurse Burks to answer a grievance. I filed. While I was talking to Mrs. Burks (DON) I showed her my missing crown that was missing due to Dr. West's negligence and order a post to properly cement it in DOC contracts, which contracts with PHS it states See Exhibit # A-20 or 5.24 Dental Services, f) states:

If a front tooth or a series of front teeth are extracted while the inmate is incarcerated or a prosthetic that was made before entering the DOC is broken or lost, through no fault of the inmate, a dental prosthesis will be provided for the inmate at the expense of the Vendor.

I told Mrs. Burks about this and she stated: You do not always get what you want, bye. I said "It's in my lawsuit;" "I don't care, bye." There were several inmates that heard this statement. How do you resolve a problem of any nature with this type attitude. DOC and PHS break their own rules and regulations and policys, contracts, which has caused a deteriorating state, to Plaintiffs Health, but that the treatment provided was grossly inadequate, amounting to no treatment at all. SEE exhibit's A-96 Picture of the esophagus.

## CONCLUSION

The Plaintiff's requests for relief are with merit, and furthermore, has proven by the evidence now before the Court. The Plaintiff has demonstrated both through substantial evidence and appropriate precedent that there is genuine issue of facts relating to constitutional violations, and that Plaintiff is, therefore, entitled to judgment in his favor as a matter of law. The Plaintiff has clearly met his required burden.

Accordingly, the Plaintiff requests this Answer and Rebuttal to their Special Report be treated and denominated as a Motion for Summary Judgment and enter a judgment in his favor.

Done this 20 day of November, 2006.

*James C. Moon*
James Charley Moon, pro se
AIS #212228, Dorm 8A
Ventress Correctional Facility
P.O. Box 767
Clayton, AL  36016-0767

### CERTIFICATE OF SERVICE

I hereby certify that I have mailed via U.S. Mail, properly addressed and first class postage prepaid, the foregoing document this 20 day of November, 2006, to the following:

Attention:  Honorable Troy King
Office of the Attorney General
11 South Union St.
Montgomery, AL  36130

*James C. Moon*
James C. Moon, Plaintiff, pro se

### NOTARY BLOCK

State of Alabama
County of Barbour

Subscribed and sworn to before me this 17th day of November, 2006.

*Carolyn R. Abercrombie*
Notary Public
My Commission Expires August 18, 2007
Comm. Exp. Date