IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED
2006 NOV 22  A 9:30

James Charley Moon, #212228,         *
                                     *
    Plaintiff,                       *
                                     *
v.                                   *   CIVIL ACTION NO. 2:06-CV-384-WKW
                                     *
Samuel Rayapati, M.D., et al.,       *
                                     *
    Respondents.                     *

## ANSWER AND REBUTTAL TO SAMUEL RAYAPATI, M.D.

Comes now the Plaintiff, James Charley Moon, acting pro se and in the above styled cause, presents this Answer and Rebuttal to the Defendant's Special Report.

On December 6, 2004 I filed a Civil Action Complaint against Samuel Rayapati, M.D. I believed I had <u>hiatal hernia</u> and was asking the Court in Circuit Court of Montgomery for relief, so I could get this hiatal hernia surgery. See Exhibits A·127 thur 130 Also see <u>Statement of Facts.</u> See Exhibits A·131 thur 133 In Dr. Rayapati's sworn affidavit on the second (2) page, first paragraph he states: See Exhibits A·135. Mr. Moon has a history which is significant for acid reflux. He does not suffer from a hiatal hernia <u>as stated in his "complaint."</u> Dr. Rayapati was right. On August 9, 2005 I found out that I has "an esophageal stricture and 2) severe erosive esophagitis and that according to the medical evidence that was in my medical files that I read See Exhibits #A·92 I needed correction of the <u>incompetent cardia</u> See Last Page 3. It states: Patients who have a significant hemorrhage or

pulmonary damage from aspiration of gastric content are advised to undergo surgical correction of the (incompetent cardia.)

In this complaint I am asking for repair of incompetent cardia. As you will see, these are (2) completely different issues and are not of the same identical issues "They are as different as an arm is to a leg and require two separate type of treatments and cannot be res judicata and collateral estoppel. That Dr. Rayapati also knew I needed a dilatation of the esophagus See Exhibits A-27. Dr. Jackson requested: Please contact my office to schedule for E.G.D. and dilatation on 10-26-04. On 10-28-04 Dr. Rayapati faxed an order for surgery. See Exhibits A-28 stated: DX: Esophageal stricture lowered - flu visit to GE for EGD and dilation of stricture. Even Dr. Rayapati believed I needed this surgery. On December 9, 2004 See Operative Notes Exhibits #A-25 Dr. Jackson stated: On passage of the endoscope the patient was noted to have ulceration and stricture of the distal esophagus. Multiple biopsies were taken and specimen submitted for histopathologic examination. Due to the severe inflammation the patient was not dilated. His diagnosis was: 1) Severe Erosive Esophagitis and 2) esophageal stricture Also See Exhibits A-24 Letter to Dr. Rayapati He stated: the patient gave a history of having severe toothache pain and using a significant amount of nonsteroidal anti-inflammatory agents. I felt at this point not to perform an esophageal dilatation. We recommend Nexium, AcipHex, Protonix or Prevacid. 2 times a day and discontinue Non-steroidal antiinflammatory agent. We STRONGLY recommend whatever efforts necessary to have his dental problems taken care of. See Exhibits A-30. Don't take Asp, Motrin or Advil. Also see Exhibits A-32 Dr. Jackson gave Plaintiff Tylenol for toothache 12:05 Tyleno is a pain reliever not an anti-inflammatory. Nurse Marsh changed

this order to include Tylenol See Exhibits A-31 and refused to give me anything for treatment for abcessed teeth pain even would not let me have some in my personal property that Plaintiff bought off the institutional comm- SEE A-33 issary. See **Farrow v. West**, 320 F.3d at 1235 at page 1242 [6-9]. Although the United States Constitution does not require comfortable prisons, neither does it permit inhumane ones. (11th Cir. 2003) Mrs. Marsh stated that Dr. Rayapati told Mrs. Marsh to do this, but in fact Mrs. Marsh only wrote this in her release paperwork See Exhibits A-31 and not in the New Orders See Exhibits A-34 by Dr. Rayapati.

Plaintiff contends that by not following Dr. Jackson's simple instructions: See Exhibits A-24 Whatever was necessary to take care of Plaintiff's (Moon) dental problems would subject Moon to a condition that may develope into pre-cancerous Barrett's Esophagus. See **Jones v. Consuegra's Estate**, 338 F.Supp. 2d 1282 (11th Cir. M.D. Fla. 2004). (Plaintiff inmate claimed that defendant was deliberately indifferent to his serious medical need by not properly treating his gastro-esophageal reflux disease, resulting in the condition developing into pre-cancerous Barrett's Esophagus.) Plaintiff contends 7 1/2 months taken pain medication caused detrimental damage to esophagus (quoting Farmer, 511 U.S. at 834, 114 S. Ct. 1970). Based on the medical records and the attention given to Plaintiff's medical needs during the relevant time period, this Court concludes that Plaintiff kidney and gastroenterological concerns were serious medical issues. Plaintiff also contends over (14) month delay for E.G.D. and dilation caused a fully developed stricture instead of (1) dilation now, there has to be a series of dilations to remove stricture, (3) dilation's 2 yrs. for completion, Still only Half open dilated Too: 21 mm Normal: 48 mm

SEE HARRIS V. COWETA COUNTY

CITE AS 21 F.3D (11TH CIR. 1994)

Page 3

(8) The tolerable length of delay in providing medical attention depends on the nature of medical need and the reason for the delay. **Ancata v. Prison Health Services Inc.**, 769 F.2d 700 (11th Cir. 1985). The law was also clearly established that the right to medical care may include diagnostic test known to be necessary, not just medical and surgical care, e.g., **H.C. by Hewett v. Jarrard**, 786 F.2d 1080 (11th Cir. 1986) confirming earlier case law that "failure to provide diagnostic care and medical treatment known to be necessary (or) delay of necessary treatment for non-medical reasons...establish(es) deliberate indifference sufficient to establish a constitutional violation." Finally, it was clear that deliberate indifference could be inferred from an unexplained delay in in treating a known or obvious serious medical condition. **Brown**, 894 F.2d 1538. Also, **Ancata v. Prison Health Services Inc.**, 769 F.2d 700, 704 (Quote) The Court said:

> Deliberate indifference to serious medical needs is shown when prison officials have prevented an inmate from receiving recommended treatment or when an inmate is denied access to medical treatment or personnal capable of evaluating the need for treatment.

(8) Plaintiff alleges in Prison Health Services authorization letter they would only authorize (1) visit for outpatient surgery; for endoscopy and dilation due to: "High cost" this as stated in above, case, known as delay of necessary treatment for non-medical reason...establish(es) deliberate indifference for a 14 month delay in treatment known to be necessary is not in a timely fashion. Dr. Rayapati refused to follow recommended treatment due to his defiance of implicit medical instructions, to treat the symptoms, not the problem, caused detrimental, irreversible damage to Plaintiff Moon's esophagus, for the pain medication (Moon) was taken for abcessed teeth, would stick to the esophagus where the 1/4 inch stricture was and dissolve in the esophagus

Page 4

instead of in the stomach, as intended, during which Plaintiff suffered considerable. Dr. Rayapati has not explained why there was a (14) month delay for a repeat E.G.D. as <u>recommended</u> December 9, 2004 and again on 9-22-05 and not performed until February 16, 2006. An esophageal stricture <u>cannot</u> be removed with medication. It has to be done by a balloon dilation See Exhibits A-97.

Also, Plaintiff Moon contends that Prison Health Services had made inmate Moon wait until the pre-existing time had lapsed so that the insurance policy taken with Blue Cross/Blue Shield came in effect so they would not have to pay the high cost of surgery. See 123 F. Supp. 2d 1286, **<u>Duckett v. Blue Cross Blue Shield</u>** 270 day waiting period for pre-existing condition See Exhibits A-93 for this is known as a delay for non-medical reasons. See **<u>Martinez v. Mancuis</u>**, 443 F.2d 921 (2nd Cir. 1970) prison doctor failed to follow the express post-operative directions of the surgeon who had operated on the prisoner See Exhibits A-26. Dr. Rayapati has been retaliating against Plaintiff. See **<u>Farrow v. West</u>**, as cite 320 F.3d page 1248 (2003 11th Cir.) 25, 27 quote. The First Amendment forbids prison officials from retaliation against prisoners for exercising the right to free speech. **<u>Thomas v. Evans</u>**, 880 F.2d 1235, 1242 (11th Cir. 1989). To state a First Amendment claim for retaliation, a prisoner need not allege violation of a separate and distinct constitutional right. Id., at 1242, rather the gist of a retaliation claim is that a prisoner is penalized for exercising the right by demonstrating that the prison officials actions were the result of having filed a grievance concerning the conditions of his imprisonment. **<u>Wilderger v. Bracknell</u>**, 869 F.2d 1467, 1468 (11th Cir. 1989).

<u>BROWN V. JOHNSON</u>

<u>CITE AS 387 F. 3D 1344 (11TH CIR. 2004)</u>

8. Sentencing and Punishment 1546

A prisoner states a valid 1983 claim for deliberate indifference to serious medical needs in violation of the Eighth Amendment, whether the indifference is manifested by prison doctors in their response to the prisoners needs or by prison guards in intentionally denying <u>or delaying access to medical care or intentionally interfering with treatment once proscribed</u>. U.S.C.A. Const. Amend. 8, 42 U.S.C.A. 1983.

In **Hinson v. Edmond**, cite as 192 F.3d 1342 (11th Cir. 1999) (quote) Inmate "Post Operative Notes" were not followed 72 day delay. Se P. 1346 at [3 and 4] "Inmate health care" is defined, in the pertinent contract, as "all professional medical, dental, and related health care and administrative services for inmates." See: Prison Health Services Inc. Contracts with ADOC., P. 37, 5.14 Outpatient of site Services. See Exhibits A-20 states:

> Off-site clinic services "<u>must</u>" be provided within the <u>time frame specified</u> by Vendor's referring physician and result in a legible report in the inmate's medical record within three days after the appointment.
>
> All recommendations involving "Any Special procedures or non-routine follow-up "<u>must</u>" be communicated verbally between the off-site consultant and the vendor's primary care physician with twenty-four hours of the consult.

See Operative Notes from December 9, 2004 through February 16, 2006 Plaintiff Moon has not had a repeat E.G.D. as recommended 8 to 12 weeks in December 9, 2004 Exhibits A-26 High Cost. And because of such a delay, the endoscope had to be forced through the stricture and into the stomach February 16, 2006. See Exhibits A-94. Also, See Exhibits A-95. Dated April 6, 2006 Dr. Jackson States: The patient has had a poor response to H2 antagonist therapy. Dr. Jackson also recommended: Nexium 40 mg. each day or equivalent dose. Plaintiff was only receiving 20 mg each day from

Page 6

90 days: 40 mg or twice daily 20 mg. SEEE exhibits
Dec. 9, 2004 only 20 mg

January 2005 through September 21, 2006 See Exhibits (A-109, 112) Also A-94, 95, 26  20 mg.  (40 mg)

#2) Take Prilosec 40 mg every day for 90 days (if you have Prisosec 20 mg caps, take two equal 40 mg.) Dr. Rayapati's defiance of implicit medical instructions is a deliberate indifference. It was not until we got a new doctor, did Dr. Peasut get in compliance with medication.

See **Boritti v. Wiscomb**, 930 F.2d 1150, 1155, (6th Cir, 1991) quote (Pain inflicted "when relief is readily available" is actionable even if no lasting impact); In **Westlake v. Lucas, 519 F.2d 857, 860 (6th Cir. 1976).** This Court held that a prisoner who suffers pain needlessly when relief is readily available has a cause of action against those whose deliberate indifference is the cause of his suffering. The Supreme Court in **Estelle v. Gamble** cited **Westlake** and stated that the unnecessary suffering which results from a denial of medical care is inconsistent with contemporary standards of decency. 429 U.S. at 103, 97 S. Ct. at 290. In the present case, Plaintiff has alleged this type of suffering, and the record indicates that relief was readily available.

Dr. Jackson also recommended: We strongly recommend whatever efforts necessary to have his dental problems taken care of, That the patient gave a history of having severe toothache pain and has been using a significant amount of nonsteroidal antiinflammatory agents. Dr. Rayapati could have sent Plaintiff to Easterling Correctional Facility, 30 minutes away. Dr. Rayapati could have sent a referral or a copy of this recommendation to the Dental Department on December 9, 2004 for it was March 30, 2005 before #29 tooth was pulled. There is nothing in the Dental Records as stated by Dr. Rayapati that he referred Mr. Moon to the Dental Department, as stated in the sworn affidavit, for the records will speak for themselves. This is a deliberate indifference See **Farmer v. Brennan,** 511 U.S. 825, 832, 114 S.Ct. 1970,

Page 7

128 L. Ed. 2d 22 (1993). The Eighth Amendment governs "The treatment of a prisoner in prison and the conditions under which he is confined." That Dr. Rayapati's conduct was committed by a person acting under color of state law and deprived the Plaintiff of his rights, priviliges or immunities secured by the Constitution or laws of the United States. With regard to Plaintiff's claim of being subjected to cruel and unusual punishment in violation of the Eighth Amendment, the Eleventh Circuit has stated: Although the United States Constitution does not require comfortable prisons, neither does it permit inhumane ones.

On February 27, 2004 I suffered a severe attack of pancreatitis. Upon arrival back from Bullock County Hospital, Nurse Marsh was on duty at the HCU. This was at 4:15 p.m. Dinner was being served. Nurse Marsh stated I will order you a tray from the mess hall. Nurse Marsh put an I.V. in Plaintiff. At 4:30 p.m. my tray arrived. I ate and layed down, at 8:30 p.m. Nurse Marsh instructed Plaintiff not to eat anything until seen by M.D. Plaintiff stated: See Exhibits A·42. I understood she also stated you know you weren't supposed to eat anything trying to put the blame on me. I have never had pancreatitis, nor do I "NO" how to treat it. If I had known I was not supposed to eat I wouldn't have eaten, for the next 5 days I was in severe pain, See Exhibits A·42 will confirm these statements. Their was a from 1615 to 2030 4 Hrs 15 mins on not to eat before she made this statement.

At 3:20 a.m. in the morning the pain in my stomache and chest started back, I thought I was having a heart attack like the pain I was having before. I stated: I needed to be in a hospital that they should have left me stay there. I was freezing to death, I had a fever. I was bent over double, throwing up. I stated to the Nurse Please don't let me die in here. See Exhibits A·43. As to this statement. I stated: I hurt all over and need some thing for pain. That the Hospital prescribed tylenol #3 for pain, but I have

↓
SEE exhibits A·41

not received anything, nor did they send me back to the Hospital. At 4:00 a.m. See Exhibits A·44. I think I'm going to die, I don't want to let me die in this place. Nurse notes states: Patient continues to gag (vomits clear mucus from abdomen). Still moaning of some pain 6:05 p.m. I stated: I need something for nausea, and I was still begging for something for pain, I continued to throw up, at this point I believed I was throwing up my bowels. See Exhibits A·45. That pneumonia was setting in 7:15 a.m. "I'm freezing, that I been throwing up all night, brownish, greenish colored emesis noted in emesis basin. They kept telling me Dr. Rayapati's coming for hours, finally he came in at 9:30 a.m. I begged Dr. Rayapati for something to stop my throwing up and something for pain. He stated: You need pain management See Exhibits A·46 for this statement also states: N-steroids/narcotics P.O. discouraged. Therapy around the clock. This was a transfer order to the Hospital. When I arrived at the Baptist South Hospital, I was gagging trying to throw up, they was trying to X-ray Plaintiff but, I couldn't stand up I was bent over double The doctor ordered a morphine shot and fenigen for nausea this finally stabilized Plaintiff. Dr. Rayapati has acted with deliberate indifference to serious medical needs. Plaintiff has satisfied both an objective and a subjective inquiry **Taylor v. Adams**, 221 F.3d 1254, 1257 (11th Cir. 2000): **Adams v. Poag**, 61 F.3d 1537, 1543 (11th Cir. 1995). Dr. Rayapati delayed in medical treatment was unnecessary. He stated in his sworn affidavit they did not keep the necessary medication to treat pancreatitis, yet their was 9 hr. delay in treatment and offered nothing for pain. See **Hill v. DeKalb Reg'l Youth Dept. Ctr.**, 40 F.3d 1176, 1187 (11th Cir. 1994) quote In our circuit, a serious medical need is considered "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. See **McElligott**

Page 9

**v. Foley**, cite as 182 F.3d 1248, pg. 1259 (11th Cir. 1999). Plaintiff argues that Dr. Rayapati should have known that deterioration of Plaintiff's condition was possible, but that Dr. Rayapati was aware on February 28, 2005 at 3:20 a.m. that Plaintiff's condition was, in fact, deteriorating, and still did nothing to treat this deteriorating state, but that the treatment provided was grossly inadequate, amounting to no treatment at all. See Exhibits A·58 Also see Exhibits A·58 thur 77 Treatment for the next 5 days at Baptist South.

On March 13, 2006 I put Warden J.C. Giles and P.H.S. Commissioner, Ruth Naglich all a copy of this I quoted **applicable law** See 4.15 under D.O.C. Contract's and P.H.S. See Exhibits A·115 thru 120 States: All services under the contract will be performed in accordance with applicable Alabama and Federal Law, Statutes, provisions, and regulations. Any Federal Court orders. Also See Exhibits A·19.

On April 6, 2006 Plaintiff received his (2) second dilation on his esophagus See Exhibits A·95, 96. Dr. Jackson stated: The patient has had a poor response to H2 antagonist therapy. Operative Notes stated I still had esophageal stricture with severe erosive esophagitis post dilatation.

When Plaintiff returned from Montgomery Surgical Center, I was asked to go to H.C.U. where Dr. Rayapati made me sit outside his office in a chair Mrs. March relayed messages between Dr. Rayapati and Plaintiff. I was not allowed to have a conversation with him. He took me off a soft food diet even even after pleading with Mrs. March (LPN) to ask him could I keep it until my partial plates could be made, but he declined it. Mrs. March wrote me a regular diet out stated per Rayapait See Exhibit A·84. I was to return to have another dilation in 6-8 weeks and again I was put on Nexium 40 mg. orally each day. Dr. Jackson stated in his operative note: That the patient had a poor response to H2 antagonist therapy. See Exhibit A·95. Meaning: A person who opposes or completes with another; adversary opponent

Page 10

a muscle working against another muscle, drug that acts in opposition to or counteracts another, to make an enemy of.

You see for 18 months he has refused to follow the instructions of a specialist in his field; **West v. Keve**, 571 F.2d 162 (3rd Cir. 1978) (post-operative patient had right to care by qualified doctor); **Goodman v. Wagner**, 553 F. Supp. 255 (E.D. Pa. 1982) (failure to follow doctor's orders for treatment and denial of prescribed medication). You see the medication Dr. Jackson put me on had proton pump inhibitors in it to help healing period, before the dilation he listed (4) such medications. On December 9, 2004 but Dr. Rayapati never complied with these simple instructions, Plaintiff only received 20 mg. See Exhibits A-34, 26 Patient has severe esophagitis erosion is allowed to continue cancer is the next step. In the month of July 06 I received only 2 weeks medication.

This constituted a need for medical attention that would have been obvious to a lay-person, **Boyd v. Knox**, 47 F.3d 933 (8th Cir. 1995) (quote) **Choate v. Lockhard**, 7 F. 3d 1370, 1376 (8th Cir. 1993). The supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what he or she might see.

You will see on the warning label it states: Do not use if you have trouble or pain swallowing food. As you will see in Exhibits A-146 Dr. Rayapati wrote me a special diet for difficulty swallowing. A-83 I had to chew the SEE A-83 medication up in order to get it to pass through the 1/4 inch stricture. Prilosec are delayed release tablets that are not to be (quote) do not chew or chush the tablets. I did not know these facts until recently when I started getting the (KOP-keep on person). So you see I am not getting the recommended treatment and prescriptions I so desperately need for the healing process to accrue before surgery. So I can eat things like normal people eat, like

Page 11

chicken, weiners, bread or hamburgers. I still have to eat soft food and be allowed 30 to 40 minutes to chew my food and swallow it.

Dr. Rayapati has been sanctioned before, in Georgia, on the adverse effects on drugs and sent back to school from 2000 through February 18, for he killed a patient J.M. See Exhibit A·139 — 144. Due to drug Allopurinal. Medical experts have opined Dr. Rayapati's diagnosis and treatment fell below minimal prevailing standards.

Patients having ulcerative Grade III esophagitis are usually treated surgically in an effort to avoid a fully developed stricture which requires more difficult and less successfull therapy. Patients who have significant hemorrhage or pulmonary damage from aspirationof gastric contents are advised to undergo surgical correction of the incompetent cardia. This is why Plaintiff wishes or seeks an injunction, directing Defendants to immediately issue a repair to the incompetent cardia and issue an order to them to give Plaintiff correct medication 40 mg. Nexium April 6, 2004 repeat dilation 6-8 weeks recommended See Exhibit A·95 . Refuses to follow recommended treatment this has not happened. I still am getting choked up. The Department of Corrections needs to fire Dr. Rayapati for he is an incompetent doctor. He needs investigating his defiance of explicit medical instructions. In July 2006 was fired, quit left with notice I do not know.

In September 21, 2006 I was sent back and had another dilation. This dilation was the first real relief so I could swallow for (2) years because of Dr. Rayapati's delay and treatment I suffered dearly. See **Shannon v. Lester**, 519 F.2d 76 (6th Cir. 1975). "[W]e held that a plaintiff may recover for any injury caused by the delay in care and any concomitant pain, suffering, or mental anguish. See Exhibits A·2 thur 12 Mental health records will show stated: I'm reported Plaintiff is unable to take his medication due to A-11

difficulty swallowing. Just before my first dilation around the 1st of February, 2006 I stopped taking my **Mental Health medication** because it See A.11 numbed my throat because I had to chew it up to swallow it. Had I not taken pain medication for 7 1/2 months due to (2) abcessed teeth. This was bad on the esophagus. See **McElligott**, 182 F.3d at 1258, Note #6. Although the Plaintiff's needs were not so serious that a day or so would have been constitutionally intolerable, the week long delays he endured, a jury would conclude were the product of deliberate indifference. Plaintiff still has to chew thoroughly and take my time eating. This 2 year delay in treatment has surely caused this deteriorating state, but that the treatment provided was so grossly inadequate, amount to no treatment at all.

## CONCLUSION

The Plaintiff's requests for relief are with merit, and furthermore has proven by the evidence now before the Court. The Plaintiff has demonstrated both through substantial evidence and appropriate precedent that there is genuine issue of facts relating to constitutional violations, and that Plaintiff is, therefore, entitled to judgment in his favor as a matter of law. The Plaintiff has clearly met his required burden.

Accordingly, the Plaintiff requests this Answer and Rebuttal to their Special Report be treated and denominated as a Motion for Summary Judgment and enter a judgment in his favor.


Done this  20  day of November, 2006.

                                            /s/ James C. Moon
                                            James Charley Moon, pro se
                                            AIS #212228, Dorm 8B
                                            Ventress Correctional Facility
                                            P.O. Box 767
                                            Clayton, AL  36016-0767

## CERTIFICATE OF SERVICE

I hereby certify that I have mailed via U.S. Mail, properly addressed and first class postage prepaid, the foregoing document this 20 day of November, 2006 to the following:

Attention: S/R Brett Garrett
Rushton, Stakely, Johnson and Garrett, P.A.
P.O. Box 270
Montgomery, AL 36101-0270

Attention: Hon. Troy KiNG
Office of the Attorney General
11 South Union St.
Montgomery, AL 36130

*James Charley Moon*, pro se

### NOTARY BLOCK

STATE OF ALABAMA
COUNTY OF BARBOUR

Subscribed and sworn to before me this 7th day of November, 2006.

*Carolyn R. Abercrombie*
Notary Block

My Commission Expires August 18, 2007
Comm. Exp. Date