IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

James Charley Moon #212228
       Petitioner

vs.                                        Case No.: 2:06-CV-384-WKW

Richard Allen, et AL.,
       Defendants

*(Received stamp: DEBRA P. HACKETT, CLK, U.S. DISTRICT COURT, MIDDLE DISTRICT ALA, 2008 FEB 12 A 10:25)*

ANSWER AND REBUTTAL TO DEFENDANT'S
SUPPLEMENTAL SPECIAL REPORT AND MOTION
TO DISMISS CLAIMS

    Comes Now, the Plaintiff, James Charley Moon acting pro se and in the above styled caused presents this answer and rebuttal to the Defendant's Supplemental Special Report, Motion to dismiss claim.

    Plaintiff submits this Response to defendants motion to dismiss claims because defendants have failed to meet their burden of demonstrating that there is no dispute as to any material fact and because the facts set forth in Plaintiff's STATEMENT of material facts and the attached evidence will show that defendants violated his clearly established Constitutional Rights, this court should deny defendants motion to dismiss.

## STATEMENT OF FACTS

1. Defendants are not ENTITLED to qualified Immunity, Defendants argue that the doctrine of qualified immunity shields them from liability for their decision to subject Plaintiff to cruel and inhumane conditions.

On November 29, 2007 the Defendants ADOC were ordered for good cause to file to

1

Supplemental Special Report to Plaintiffs allegation that he was placed on RESTRICTION for 45 days and during such time he was denied toothpaste and/or the ability to purchase toothpaste. Defendant's Supplemental Special Report should as include any and all documents, regulations, records etc., regarding Plaintiff's violation of administrative regulation 403 and the subsequent freeze placed on his inmate account as a result of his involvement in the rule violation.

1) Denied toothpaste: On or/about 20th Feb. 2006 Plaintiff sent a request slip to Capt. Monk stating that he needed some toothpaste that their was none at Shift Office or at Laundry, the next day Plaintiff was called to Capt. Monk's Office. Capt. Monk stated: What is this about and stuck a request slip up in the air he was holding I looked at it and told him I had been to 1) The Shift Office, 2) The Laundry, 3) And the Chapel looking for toothpaste, but there was none. He then calls Officer (Ms. Dykes) at the Laundry and ask Ms. Dykes if their was any toothpaste and then ask her when was the next shipment. I do not know what

she said, but I do know they only give it out (1) time every (2) two months. Anyway he reached in his drawer and pulled a tube of toothpaste and said "Here is a tube of toothpaste. I have had it a while but, this is all I have," then he wadded up the request slip and threw it in the trash can. The tube he gave Plaintiff was (9) nine years old I tried to use it but in burnt my mouth and I spit it out. I looked at the date on the toothpaste and it was 1997 the expiration date was 2000 making it (6) six years out of date. It stated on the tube do not use after expiration date three (3) years. I showed it to my neighbor

2

Henry Holtzclaw SEE exhibits #A Sworn Affidavit. Capt. Monk doesn't deny that I sent a request to him about "NO" toothpaste being in the Camp or does he deny that he gave me "A Old tube of toothpaste" when I went to his office. He only states that I did not state the date it took place. Capt. Monk "Aludes" a direct allegation in Plaintiff's original complaint

SEE "STATEMENT OF CLAIMS" allegation #4 which states:

> Plaintiff alleges that the A.D.O.C. (Defendants) fail to provide toothpaste. We are suppose to get toothpaste every (2) months. One (1) 2.7 ounce tube. If you brush your teeth three times a day after meals it will only last about two weeks. This leaves (6) weeks without toothpaste. If you are not awake around 11:00 P.M. til midnight on Friday Nights they will not leave you any toothpaste at the foot of your bed, then if you go to the shift office and ask for some they they cuss you out and say "Can't you read, were out!" SEE exhibit's P & A

You will see in the Affidavits they had a sign up stating "were out of toothpaste and soap don't ask. Capt. Monk has never addressed this allegation whether it is true or untrue only makes general statements such as:

> Although Plaintiff states that he requested toothpaste from
> Capt. Monk and received "Old" toothpaste he does not state
> when this request took place.

In **Penrod v. Zavaras** 94 F.3d at 1406, The United States Court of Appeals for the Tenth Circuit held that, for summary judgement purposes, the deprivation of toothpaste resulting in bleeding gums and tooth decay which had to be attended to by Dentist could constitute serious harm under the Eighth Amdendment.

Plaintiff alleges, that if Plalintiff used this "Old" out of date toothpaste it could have caused serious medical problems. Plaintiff also alleges that the toothpaste inmates

3

are using now has a poisonous ingredient in it called "**Diethylene Glygol**" used in antifreeze as a solvent. (Article out of Montgomery paper) Quote:

> SPOKANE WASHINGTON JAIL STOPS USING SUSPECT TOOTHPASTE
>
> The Spokane County Jail stopped giving inmates china-made toothpaste seven weeks after the FDA warned the public to avoid the product because of suspected contamination. Distribution of 2.75 Ounce tubes of "**AMERFRESH BRAND**" Food and Drug Administration issued a general warning to consumers June 1, 2007 to avoid any toothpaste imported from China because some samples contained a poisonous ingredient DIETHYLENE GLYCOL used in Antifreeze as a solvent, can be toxic to liver and kidney.
> SEE Exhibits #B

Although prison officials have broad administrative and discretionary authority to manage and control prisons, Bailey v. Shillinger, 828 F.2d 651, 653 (10th Cir. 1987), they must provide humane condition of confinement guided by "contemporary standards of decency." Estell v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976) "[A] prison official may be held liable under the eighth amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."

Capt. Monk and Sgt. Carter both knew Plaintiff needed toothpaste, anti-acid medication of the Institutional "store", not the Canteen. "Canteen only sells food items." SEE exhibits #C stated on March 13, 2006 inmate request slip. Capt. Monk has "perjured" himself. Plaintiff will show he does it over and over again. Capt. Monk:

> I was put on restriction 15th of Feb. 2006 for citation, this is my first since 2000. I have learned my lesson. I "need" some

> ancid tablets for reflux condition I have, and toothpaste and
> razors, shampoo and things. Would you consider taking me off
> so I can make "<u>STORE</u>."

1.) His answer was quote: I only help out when asked by the arresting officer. Plaintiff had been without toothpaste for a month and there was "NO" toothpaste in the camp, Plaintiff wrote another inmate request slip to see if Sgt. Carter would help, <u>SEE exhibits #D</u> March 20th, 2006 which will show Capt. Monk "perjured" himself, he knew that Plaintiff was on (45) days of restriction. This was the arresting officer. Sgt. Carter:

> I was one of the (8) people that got a citation for receiving a
> money order from Shannon Crumps' mother. <u>Most of them
> has already been taken off their restriction</u>. I need some
> ancid tablets for acid reflux, and toothpaste. This was my
> "first" citation in almost 6 years. This want happen again. I
> Thank you James C. Moon.

Answer to request: Restrictions end on 4-1-06 STOP VIOLATING.

Sgt. Carter does not deny that most of them had already been taken off their restriction and also allowed to return to the faith honor dorm. Plaintiff was never allowed to go back to honor faith dorm, Plaintiff was being retaliating against him for filing Grievance against prison officials, such as Sgt. Carter and Capt. Monk.

Plaintiff alleges that he was denied equal protection because the defendants created an illegal suspect class of inmates who were subjected to cruel and unusual punishment and lost of privileges. Under regulation 502 minor violation such as this one, the punishment only calls for thirty (30) days restrictions for privileges and store. Plaintiff received 45 days, <u>SEE exhibits #E Rule 502</u>. The equal protection

5

clause requires that no state deny any person within it jurisdicton the equal protection of the laws. "<u>AN EQUAL PROTECTION VIOLATION OCCURS WHEN THE GOVERNMENT TREATS SOMEONE DIFFERENTLY THAN ANOTHER WHO IS SIMILARY SITUATED. CITY OF CLEBURNE V. CLEBURNE LIVING CTR., 473 U.S. 432, 439, 105 S.CT. 3249, 3254, 87 L.ED.2D 313 (1985)</u>", Plaintiff claims he is a member of a constitutionally protected class and that he has been denied a fundamental right of equal protection.

Plaintiff alleges that this deprivation is "objectedly "sufficiently serious," and that prison official acts with "deliberate indifference" to inmate health or safety" SEE <u>Adkins v. Rodriquez,</u> 59 F.3d 1034, 1037 (Citations omitted).

> **Plaintiff specifically alleged that prison officials retaliated against him by denying him FREE toothpaste and razors from July 13, 1992 to September 20, 1992. He asserts this violated his right to be free from cruel and unusual punishment because it caused his gums to bleed and recede and tooth decay that eventually had to be treated by a dentist.**
> **Plaintiff has raised a genuine issue of material fact in regard to whether prison officials alleged denial of hygienic items caused Plaintiff serious harm. Thus, we reverse and remand on whether prison officials caused Plaintiff serious harm by failing to satisfy his hygienic needs.**

Capt. Monk stated that Plaintiff sent a request to him due to dental issue, and he stated he forward it on to Nurse Burks (Director of Nursing) but he failed to state that the request issue's were due to "NO" toothpaste in the camp and that he needed his teeth cleaned due to "NO" toothpaste his gums were bleeding for lack of toothpaste.

Three (3) weeks after getting off restrictions, the Plaintiff seen the dentist on April 25, 2006 SEE <u>Exhibits #F</u> Dental Records stated: Plaintiff had Pott-Light Calaulus c

"**Moderate bleeding.**" Toothpaste is one of the most important things in prison. SEE Board v. Farnham, 394 F.3d 469.

> County Sheriff by denying detainee toothpaste for over three (3) weeks despite detainee's established constitutional right to receive adequate attention for-serious medical condition, and thus was not entitled to qualified immunity on detainee's denial of medical treatment claim detainee suffered from dental pain throught his incarceration and had to have several teeth extracted because of tooth decay. U.S.C.A. Const. Amend. 8.

In allegation #2,3,4, defendants never answered the allegation, that the defendants failed to provide proper dental care due to lack of staff. SEE Williams v. Scully, 552 F. Supp. 431 (S.D.N.Y. 1982) Five and one-half months delay in filling caused by Lack of Staff during which Plaintiff "suffered considerable pain" SEE Newman v. Alabama, 503 F.2d 1320 (5th Cir. 1974), cert. denied, 421 U.S. 948, 95 S.Ct. 1680, 44 L.Ed. 102 (1975), When systematic Deficiencies in staffing, facilities or procedures make unnecessary suffering inevitable, a court will not hesitate to use its injunctive powers. SEE Bishop v. Stoneman, supra; Newman v. Alabama, supra 503 F.2d at 1328-30. SEE also Cruz v. Ward, 558 F.2d 658, 662 (2d Cir. 1977).

Plaintiff alleges that due to "Lack of Staff" from June 2004 thur March of 2005 and Lack of Toothpaste Plaintiff lost (14) fourteen teeth, Plaintiff has all his teeth entering Prison and due to taking so much pain medication during this 7 1/2 months waiting to get #29 tooth extracted, (17) months for partical plates, see Hunt v. Dental Dept, 865 F.2d 198, 200 (9th Cir. 1989) can interference with the ability to eat) Plaintiff "has suffered dearly" not only did this Lack of Staff cause lose of teeth, but

7

caused a lose of 80% of his esophagus. It is bad enough to eat your food with "NO" molars to chew with, but you have to get it threw a hole only a 1/4 of inch, which your food had to be chewed to almost liquid form, which a jury would concluded was a "<u>deliberate indifference</u>" to a serious medical condition. Warden Giles knew their was a <u>Lack of Staff</u> and Capt. Monk. Monk knew there was a lack of toothpaste in the camp in Feb. 2006 and when Plaintiff ask for toothpaste in March of 2006 (2) times he denied Plaintiff "Minimal civilized measure of Life's necessities" Id (quoting Chandler v. Crosby, 379 F.3d 1278, 1289-90 (11th Cir. 2004) Even a lay person would easily recognize the necessity for toothpaste. Plaintiff would also assert his statement of facts pleading dated November 20, 2006 rebuttal their pleading ADOC.

    Plaintiff also, ask for some an-acid tablets for a very serious life treating disease Plaintiff had. Prison Health Service that contract out medical and dental from ADOC Defendants was not following recommended treatment and providing Plaintiff with correct amount of medication and Plaintiff needed these acid tablets. Plaintiff was so pos to be receiving 40 mg of nexium or 40 mgs of prilosec which is the eqivilent dose of nexium which is the same. Plaintiff was only receiving 20 mg's which was causing a esophageal stricture. Plaintiff had surgery (2) times during this restriction.

    Capt. Monk stated Plaintiff spent $186.00 prior to his restriction and $95.00 after restriction. <u>SEE exhibits #G will show "NO" Canteen sales</u> between 15th Feb. 2006 and 2 of April 2006. Plaintiff's mother was sending extra money, because of his esophageal stricture, due to the triple capacity of inmates in the camp. Inmates

were only 5 mins. to eat there food in the chow hall. Plaintiff constantly got chocked, "It takes at least a hour to eat in the Dorm." Plaintiff's esophagus was only a 1/4 inch in diameter or 10mm. a normal esophagus is 49 to 50 mili meters. Due to improper medication Plaintiff had lost 80% of his esophagus, the acid tablets would have helped Plaintiff from suffering "so badly" when he layed down at night. SEE exhibit #H SEE the under lined porsion dated Feb. 16, 2006.

### OPERATIVE NOTE
The stricture measured 10-11 mm. The Endoscope
was forced through the stricture and into the stomache
(dilated to 15 mm)
Recommendation: 1) Repeat dilation in 4-6 wks.

On April 6, 2006 Plaintiff had another dilation, Plaintiff truely need these acid tabs. As you can see this a serious medical condition SEE exhibits #I OPERATIVE NOTE. DATED: April 6, 2006

Under - Lined Porsion.

The patient has had a poor response
To H2 ANTAGONIST THERAPY (dilated to 18mm)
Recommendation: 1) Nexium 40mg. ORALLY each day
2) REPEAT dilaton in 6-8 wks

Had Capt. Monk and Sargent Carter and Dr. Rayapat: Let Plaintiff get the acid tablets requested and medication ORDERED by Dr. Jackson, their would not have been so much permantant damage done to the esophagus, Dr. Rayapati's part was: He was only giving Plaintiff half (1/2) what was recommended by Dr. Jackson, which was 40 mg. SEE exhibits #J plaintiff is to receive 40 mg of Nexium or

equivilent dose of P.P.I. which is (2) 20mg tablets of Priosec <u>SEE exhibits K </u>dated 9/21/06 quote:

> Take Prilosec 40 mg. everyday for 90 days.
> (If you have Prilosec 20 mg caps. Take two
> to equal to 40 mg.)

This was not done till Sept. 21, 2006 and another dilation later SEE OPERATIVE NOTE dated 9/21/2006 <u>SEE exhibits L (15mm dilatation to 18mm).</u> All due to not receiving proper medication and dental problems. The new Doctor, Dr. Peasant is the one who finally got in compliance. After 21 months of Dr. Rayapati's refusal to follow recommended treatment, cause a fully developed stricture, which could have been avoided.

    4) Capt. Monk was asked to provide any and all documents, regulations, records etc., regarding Plaintiff's violation of adminstrative regulation 403 and the subsequent FREEZE placed on his inmate account as a result of his involvement in the Rule violation. Capt. Monk refuses to provide these documents and to acknowledge they every happened and that his answer was that they were "<u>UNTRUE</u>" THE Defendants demand strict proof thereof. <u>SEE exhibit's #M </u>which state: Capt. Monk

Dated: 4/6/2006

> I have $283.00 my PMOD ACCOUNT, Ms. Ross says "I only have $173.00 available to me. The $110.00 that I received from Shannon Crumps mother is being blocked. "<u>**I have finished my restriction.**</u>" can you please let me know why I have a hold of $110.00, because I need to send money out for Attorney Fees.

Answer to request: **Because any money gotten illegally is put account and FROZEN UNTIL YOUR RELEASE.**

Capt. Monk has commented "Purjury" Plaintiff will show in the records, provided by the Defendant's ADOC that when Plaintiff got down to the frozen $110.00 dollars, the Defendant started taking misc. "withdrawals out of his account," but Plaintiff could not use any of the $110.00 dollars. SEE exhibits #N

### REQUEST SLIP DATED: JULY 2006

Ms. Ross:

As of May 30, 2006 I had $107.11 as of July 19, 2006 I now have $27.11 their is $80.00 missing. Can you show me or tell me were the $80.00 went." Their is $110.00 FREEZE ON MY ACCOUNT WERE DID THE MONEY GO?

ANSWER: We had sent a check to the court for you-after 90 days the check didn't clear, so we reversed it putting it back ON YOUR ACCOUNT-then it cleared, so I took it back out of your PMOD. SEE exhibit's O TRANSACTION INFORMATION

The records will show that on May 11, 2006 was the last sale made on the Canteen and freeze started again. In July Plaintiff sent request to Warden Giles and ask for a hyigene "STORE" draw out of the $110.00 freeze, but never received request back. From 5/31/2006 thur 12/21/06 Plaintiff could not buy any hygiene products, due to FREEZE ON PLAINTIFF'S ACCOUNT SEE exhibits N The other (7) seven inmates that received citations were allowed to return to the honor faith dorm and were taken off restriction after (30) days and aloud to spend their money, "was this a conspirancy, or if not, it surely is "AN EQUAL PROTECTION VIOLATION?"

1) Plaintiff alleges for (7) month's as stated above from 5/31/06 thur 12/21/06

11

This FREEZE AFFECTED Plaintiff's ability to buy toothpaste or 2) to receive proper supply of toothpaste due to ADOC not giving out toothpaste but (6) times a year 2.75 x 6 = 16.5 ounces a year, which amounts to (1) one family size tube a year. SEE exhibits #P (4) four Affidavits declaration under pentally of perjury allegation #2, 3, #4 must be considered true. The Plaintiff call the court's attention to A.R.Civ.PRO. RULE 8(d) "<u>AVERMENTS IN PLEADING IS REQUIRED, OTHER THAN THOSE AS TO THE AMOUNT OF DAMAGE, ARE ADMITTED WHEN NOT DENIED IN THE RESPONSIVE PLEADING.</u>" This is the Defendants second (2) time the ADOC have been giving a chance since the original filings to answer this allegation therefore, they must be considered admitted and this would twarted any grant of summary judgement in the future, pursuant to MANDATES OF RULE 55(b)(2) F.R.Civ. PRO., HAS "failed to plead."

 Plaintiff will show according to Rule Number 107 packages and money, Plaintiff violated no rule under the administrative regulation 403 which caused a subsequental freeze to be placed on his that their inmate account as a result of a rule violation, that their is no such rule that exist. SEE exhibits # G Rule 107 which states: The money orders must be from someone on your approved funds list. SEE exhibits # U will show the $110.00 received on Feb. 7, 2006 was from Earline Moon which is on Plaintiff's approved funds list.

 The ADOC Defendant violate their on Rules and regulations. The high courts have consistently held that once an administrative agency has promulgated their rules they may

not violate them arbitrarily and capriciously. The defendants have once again failed to comply with the court's order to come forward with their proofs, instead, they come forward with blatant outright lies constituting perjury under oath according 13A-10-101 (b) which is a Class C felony under ala code 1975, in his affidavit of 5-19-06 Capt. Monk states..:

> Inmate Charley Moon states that I refused to grant his request to buy items off the canteen because he was on restrictions. <u>That is true.</u>
>
> Capt. Monk further states in his affidavit of 12-20-07 "Inmate Moon further states his account had a hold on it. <u>That is Untrue.</u>

Capt. Monk has perjury himself under oath as these conflicting statements clearly reflects. The issue is clear and unambiguous there is absolutely no differences between restriction from store/canteen and hold on PMOD account it is Exactly the same subject matter and Capt. Monk is perjury himself under oath. The defendants attempt to cloud the issue by stating Moon made canteen purchase before and after his restriction/hold on PMOD account. This is irrelevant to the issue at hand the records furnished by defendants clearly show that Moon was unable to purchase Store/Canteen items for a continous period of 45 days, in addition, Moon was unable to purchase store/canteen items for the period of 7 continous months while his $110.00 was frozen. However while Moon could not access his $110.00 the DOC periodically took money from his PMOD account until such a time that the disputed $110.00 was exhausted.

13

## CONCLUSION

The Plaintiff's requests for Relief are with merit and furthermore has proven by the evidence now before the court. The Plaintiff has demonstrated both through substantial evidence and apprpriate precedent that there is genuine issue of facts relating to constitutional violations and that Plalintiff is therefore, entitled to judgement in his favor as a matter of Law. The Plaintiff has clearly met his required burden.

Respectfully submitted,

*James C. Moon*
/James Charley Moon

<u>Address of Plaintiff</u>
STATON CORR. FACILITY
P. 0. Box 56
Elmore, Alabama 36025

## CERTIFICATE OF SERVICE

I hereby certify that I have, this 11th day of February, 2008, served a copy of the foregoing

upon the Defendants by placing same in the United States Mail, postage Prepaid and properly addressed as follows:

Hon. S/Bejamin H. Albritton
Assistant Attorney General
11 South Union Street
Montgomery, Alabama 36130

CLERK OF THE COURT
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
P.O. Box 711
MONTGOMERY, ALABAMA 36101-0711

James Charley Moon A.I.S. 212228 Dorm-B
STATON Correctional Facility
P.O. Box 56
ELMORE, ALABAMA 36025