IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA RECEIVED
NORTHERN DIVISION

2008 MAY -9 A 9: 26

James Charley Moon
(AIS# 212228)
    Plaintiff,

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

vs

2:06-CV-384-WKW

Samuel Rayapati MD, et al,
    Defendants.

## ANSWER AND REBUTTAL TO SUPPLEMENTAL
## SPECIAL REPORT OF DEFENDANT ANTHONETTE MARSH, L.P.N.

Comes now Plaintiff James Charley Moon pro se in the above styled case,

and answers the Defendant's Anthonette Marsh, L.P.N. allegations with the

following:

(1) On 10th day of April Anthonette Marsh, L.P.N. stated the following: quote
word verbatim.

> In my original Affidavit filled in support of my pending Special
> Report I stated that I evaluated Mr. Moon at approximately 8:30
> A.M. on February 27, 2005. This statement was made in **ERROR**.
> Mr. Moon's medical chart indicates that I evaluated him at 8:30
> P.M.Moreover, Mr. Moon was seen by Dr. Rayapati at approximately
> 9:30 A.M. on February 28, 2005, not 10:30 A.M. on the 27th as
> stated in my original Affidavit.

(2) Plaintiff alleges that this is not a true statement. Moreover, the medical charts
Ms. Marsh talks about states: That the Plaintiff arrived back to Ventress from
Bullock E.R. 1615 military time which is 4:15 P.M. c/o Moon being weak and
dizzy. A-42  A. Marsh (signature) See Exhibits A-1 thru A-220 original filed on
November, 2000 to rebuttal to supplemental Special Report's of Defendant's.

(3) Plaintiff alleged that he arrived back at approximately 3:30 p.m. with only a
(45) minutes variation of the actual facts with Dr. Siddio TAH diagnosis and

1

treatment instructions. When Plaintiff arrived back at H.C. Unit it was close to dinner/time and Ms. Marsh L.P.N. stated she would order me a tray.

(4) At 1630-hours or 4:30 p.m. Dr. Rayapati notified Ms. Marsh with new orders, I.V. started in back left hand. Plaintiff stated (See Record) c/o "gas pressure under Ribs." Exhibit same.

(5) At approximately 1700 hours or 5:00 p.m. my tray Ms. Marsh ordered for me came. I ate some of what was on the tray, and after eating, about 30 minutes later Ms. Marsh comes and picks up my tray after I had finish, Ms. Marsh then stated:

> You know you are not supposed to eat anything for (2) two days and tried to lay the blame on me. Then stated for the Record at 2030 (same exhibit).

(6) At 2030 Hours or 8:30 p.m. Ms. Marsh instructed "Inmate to not eat anything until seen by M.D.", Inmate stated: He understood. See exhibits A-42 Ms. Marsh was (4) hours and 15 mins to late. The records indicate she read the Report from the hospital and conferred with Dr. Rayapati at 1630 hours or 4:30 p.m. on February 27, 2005 and to start I.V., that the Plaintiff had pancreatitis. The records in Exhibit A-41 clearly gives a diagnosis and treatment plan. It appears that Tylenol #3 was to be given for pain and nothing by mouth was to be eaten. The records are very clear when Ms. Marsh evaluated Plaintiff at 4:15 p.m. or 1615 hours military time and not 8:30. p.m.

(7) Plaintiff alleges Ms. Marsh and Dr. Rayapati were in a conspiracy to do harm to Plaintiff and these acts were done with malice and for thought and evil intent for having filed complaint and grievances against the defendant that Plaintiff could have died as a result of these acts, that the Plaintiff started throwing up at 3:20 a.m. on the 28th of February 2005 several hours after Ms. Marsh fed Plaintiff. See infirmary nursing progress notes Exhibit #A-43

(8) 2-28-05 at 3:20 a.m. stated:

> That pain in my stomach and chest started back-like it was earlier. I need to be in a hospital-they should left me stay there. I am having chills, I have a fever, don't let me die here, given Pennigan 25mg stated" I hurt all over, I need something for pain.

The Plaintiff threw up said medication for nausea right away and couldn't keep from gagging, Dr. Rayapati called back after nurse called him at 3:20 a.m. but, refused to give Plaintiff anything for pain she said "Dr. Rayapati said that I needed pain management and he couldn't give me anything unless he order it. Dr.

Rayapati and Nurse Marsh was "Torturing" Plaintiff Dr. Rayapati believed I had
gallstones and acute pancreatitis. See Exhibits A-46 which stated:

> DX acute pancretitus c/o N.P.O. WC therapy around the clock
> and needs pain management N/Steroida/Narcotics p.o.
> discouraged c + abdominal for gallstones was now complaint
> with prilosec.

At this point Dr. Rayapati should have sent Plaintiff to hospital 3:20 a.m.

see infirmary nursing progress notes See Exhibit's # A-43

(9) 2-28-05 at 4:00 a.m. stated: See Exhibit's A-44

> I think I am going to die/don't let me die in this place "O-patient
> continues to gag (vomits) clear mucus from (abdomen) -stated
> at hospital they gave me some cocktail 6:05 cool/sweaty still
> moaning c/o of the same pain he had in the hospital complain
> of nausea begging for something for pain.

Plaintiff at this point believed that he would not live through the night, all

pervasive fear had set in that Plaintiff would not live to get out of prison. The

nurses keep telling me Dr. Rayapati was on his way. See nursing progress notes

(10) 2/28/05 at 7:15 a.m. stated: See Exhibits A-45

> S-"I'm freezing, I have been throwing up all night." Bowel sounds
> hyperactive, brownish, greenish colored emesis noted in emesis
> basin.

Plaintiff was now throwing up his bowels for there was nothing left in his

stomach to throw up. My stomach hurts so bad I continued to gag and try to throw

up. Ms. Marsh and Dr. Rayapati caused all this physical torturous pain" that

lingered on for hours to the Plaintiff. See Farrow v. West, 320 F.3d at 1235 at page

1242 [6-9] although the United States Constitution does not require comfortable

3

prisons, neither does it permit inhumaness. The evidence will show Ms. Marsh

lied to cover up for her evil misdeeds. See Shannon v. Lester, 519 F.2d 76 (6th

Cir. 1975). [W]e held that Plaintiff may recover for any injury cause by the delay

in care and any concomitant pain, suffering or mental anguish.

 Plaintiff only had a 6 tenths of a centimeter esophagus See Exhibits #B. Attached

At this  time throwing up through this 1/4 inch in diameter was even more

torturous pain and caused emesis to get in the lungs and set up pneumonia in the

left lung. Plaintiff also had abscessed teeth #9 and 29 See Exhibits A-13 Plaintiff

believes that: The infection from the abscessed teeth got into the blood stream and

brought on the pancreatitis attack for Plaintiff has never in 55 years had but this

one episode of pancreatitis, and this was no less than a "deliberate Indifference" to

his serious medical conditions. Plaintiff asserts that the punishment of which the

defendants deliberately inflicted upon him was retaliation for writing grievances,

and threatening to file a lawsuit. And therefore, violates the 8th Amendment.

(11) On February 27, 2005, Ms. Marsh does not deny she feed Plaintiff, but only
stated that: "She did not literally take away the tray to keep me from eating." As to
it being on February 26, 2005 Plaintiff did not state it was on the 26th of February
rather than February 27, 2005. Plaintiff's statement was that it happened on the
following day after sending a notarized request on February 26, 2005 to Dental
department anybody with common sense knows the following day means February
27th, 2005 would be the following day to February 26th, 2005. Ms. Marsh is only
trying to confuse the dates and issues to cover up her deliberate indifference to
Plaintiff serious medical condition.

(12) On April 10, 2008 Supplemental Special Report of defendant Anthonette
Marsh, L.P.N. Exhibit A she stated:

4

I would like to take this opportunity, however, to reiterate that Mr. Moon did not have an order for Tylenol on December 9, 2004." Further Affiant sayeth not.

(12) Plaintiff agrees with the defendant, however, Plaintiff did have a order for Motrin 200mg PRN 30 days 11/18/04-12-18-04 at every pill call 3 times a day See Exhibits #C Attached medication administration record L.P.N. Marsh signature initials A. Marsh at 9:00 p.m. that Plaintiff received this medication from nurse Marsh daily for toothache pain and tendonitis prescribed by Ms. Floyd C.R.N.P. moreover, Tylenol is not a narcotic, but a over the counter pain reliever given to inmates upon request most any pill call for inmates suffering from toothache pain, and that Plaintiff had some Tylenol in locked up in H.C.U. Hospital, that Plaintiff bought off the Institution Store, that Plaintiff was refused to have it by Ms. Marsh. See Exhibit's A-32, 34 D/C motrin-given Tylenol 500mg medication Plaintiff could have in place of motrin.

> City of Cleburne v. Cleburne Living CTR., 473 U.S. 432, 439, 105 S.Ct. 3254, 87 L.Ed. 2D 313 (1985) EQUAL PROTECTION Clause requires that no State deny any person within its jurisdiction the equal protection of laws. "AN EQUAL PROTECTIONVIOLATION OCCURS WHEN THE GOVERNMENT TREATS SOMEONE DIFFERENTLY THAN ANOTHER WHO IS SIMILARLY SITUATED.

Plaintiff claims he is a member of a Constitutional protected class and that he has been denied a fundamental right of equal protection. Plaintiff alleges that this deprivation is "Objectedly" sufficiently serious," and that prison officials acts with "deliberate indifference" that Ms. Marsh was torturing Mr. Moon, See Exhibits #A-1 will show Ms. Marsh's signature was on the Dental screening request slip on August 18, 2004 for filling been out "exposed nerves" are one of the most painful things there is, that there were no dentist at this time, that our permanent dentist had been killed in an automobile accident, that the nurse that gave me the Tylenol at the hospital in Montgomery Surgical Center See Exhibit's

A-32. On December 9, 2004 was the (**Sister**) of the dentist that got killed at

Ventress Correctional Facility, this is why Dr. Jackson wrote a letter to Dr.

Rayapati stating: whatever

is necessary take care of Mr. Moon's dental problems <u>See Exhibits #A-24</u> as you

can see Dr. Jackson **underlined** these statements or <u>attached Exhibit's #</u> **A**

> See NEWMAN V. ALABAMA, 503 F.2d 1320 (5th Cir. 1974)
> cer. denied, 421 U.S. 948, 95 S.Ct. 1680, 44 L.Ed. 102 (1975)
> when systematic <u>Defiencies in Staffing,</u> facilities or procedures
> make Unneccessary **suffering inevitable**, a court will not
> hesitate to use its injunctive powers. See Bishop v. Stoneman,
> supra; Newman v. Alabama, supra 503 F.2d at 1328-30. See
> also <u>Cruz v. Ward</u>, 558 F.2d 658, 662 (2d cir. 1977).

In allegations #2, 7, defendants never answered the allegations, that P.H.S.

Inc. failed to provide proper dental care due to <u>LACK OF STAFF</u>, See Williams

v. Scully, 552 <u>LACK OF STAFF</u> during which Plaintiff" suffered considerable

pain." Plaintiff's has proved in the evidence provided to this court, it took 7 1/2

months to pull #29 tooth. Plaintiff has made a prima-facia showing of <u>material</u>

<u>facts</u> to "deliberate indifferences." Nurse Marsh Knew Mr. Moon had a toothache

for the records are clear <u>See Exhibits #A-29</u> stated c/o toothache at 1800 hours 12-

9-04. And because Plaintiff made a big scene about Ms. Marsh not giving

Plaintiff his Institutional medication Tylenol, he asked out loud would any of you

inmates give  a sworn affidavit that Ms. Marsh refuses to give me my personal

Tylenol I bought of the Institutional store in order to keep Plaintiff from getting

these names and affidavits Nurse Marsh " ordered" Plaintiff to shift office to

6

receive a disciplinary by Lt. Taylor, and went against Dr. Jackson <u>orders,</u> that

Plaintiff was to remain in the presence of a responsible person today (3.) <u>General</u>

<u>Instructions.</u> <u>See Exhibit's A-30</u>


(6) Do not sign important documents or make important decisions for next **24**
**hours.**

(4) Notify your physicians if you experience any of the following
     A. Chest or Abdominal pain
     B. Difficulty swallowing
     C. Fever-100 or above
     D. Persistent nausea and vomiting

<u>See Exhibits #A-29</u>  Plaintiff was thrown out of H.C.U. and D/C back to

population by Nurse Marsh at 1830 hours, but called back at 5:30 a.m. the next

morning by B. Luke R.N. in which she stated:

> Mr. Moon you were not suppose to leave H.C.U. for 24 hours
> you were ordered by Dr. Jackson to be under observation for
> the next <u>24 hours,</u> that you could have bleed to death, due to
> having (7) seven biopsies taken yesterday, I told R.N. B. Lukes
> that "Nurse Marsh refused to let me have some Tylenol for
> toothache" she stated "Yes, she could have given you some
> Tylenol, that I was limited only to not have aspirin, Advil or
> Motrin, then released 9:15 12-10-04 with new instructions. (Same
> Exhibit)

Plaintiff alleges that Ms. Anthonette Marsh, L.P.N. did not have the Power

to over-ride Dr Jackson ORDERS, but she done so with Wantonness, Malice and

Evil Intent. Intentional failure to provide service acknowledge to be necessary is

the deliberate indifference proscribed by the Constitution. See Patterson v.

Pearson, 19 F.3d 439 (8th Cir. 1994). Federal Civil Procedure 2491.5

Material issue of fact as to whether approximately one month delay in providing
prisoner with follow-up dental care established Eighth Amendment violation
precluded summary judgment for prison dentist in 1983 action brought by
prisoner. 42 U.S.C.A. 1983.

## CONCLUSION

In conclusion, Plaintiff asserts that L.P.N. Marsh's supplemental affidavit of

April 10, 2008 amounts to an admission that she did not apply due diligence in

reviewing the medical records and is an attempt to further cloud the issue, and

cover up the absolute fact that Ms. Marsh's mistreatment of the Plaintiff was for

the specific purpose of inflicting punishment (pain and misery).

First and foremost, Moon points out that in her original affidavit Ms.

Marsh attempts to assert that Moon's complaint was that she took his food tray

from him not allowing Moon to eat.

When in fact, and in essence, the complaint is just the opposite
Ms. Marsh deliberately gave Moon a food tray knowing that Moon was not
supposed to eat!... Then, she deliberately attempts to shift the blame to
Moon for eating when he was not supposed to the clear and unambiguous
record shows that Ms. Marsh had read the medical orders, and knew that
Moon had an I.V. installed in lieu of food by mouth, and that eating would
make him extremely sick, which it did.

Next, Ms. Marsh revisits the issue of Tylenol and attempts to cloud the

8

issue once again. Moon's claim is <u>not</u> that he has an order for Tylenol, but that Moon had <u>his own</u> Tylenol and Marsh refused to let him have it. When the record clearly shows that Tylenol was the medication which Moon <u>could</u> have. The record clearly shows that Moon was given Tylenol <u>before</u> and <u>after</u> his encounter with Ms. Marsh.

The record further shows that when Moon attempted to assert his need for Tylenol Ms. Marsh retaliated against Moon, and ordered him out of the hospital to the shift office, for disciplinary action.

But still Ms. Marsh claims she did nothing wrong.

Moon was to be kept under observation due to internal bleeding.

Ms. Marsh's malicious actions put Moon's life in jeopardy.

Ms. Marsh's statements are in direct conflict with the medical record, and Moon's pleadings, therefore, creating a genuine issue of material fact for a jury determination.

James C. Moon
James Charley Moon

Dated this 7th day of  may  ,2008

## AFFIRMATION

The Affiant affirms the foregoing to be true to the best of his information,

knowledge and belief.

Dated this 7th day of ᴍᴀʏ _____ 2008.

James Charley Moon

## CERTIFICATE OF SERVICE

I hereby certify that I have mailed via U.S. Mail, properly addressed and first class
postage prepaid, the foregoing document this 7th day of May, 2008 to the
following:

Attention: S/R Brett Garrett
Rushton, Stakely, Johnson and Garrett, P.A.
P. O. Box 270
Montgomery, Alabama 36101-0270

Attention: Hon. Troy King
Office of the Attorney General
11 South Union St.
Montgomery, Alabama 36130

James Charley Moon Pro se
AIS# 212228-B1-32A
Staton Correctional Facility
P. O. Box 56
Elmore, Alabama 36025-0056

10