IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

_____

JAMES CHARLEY MOON, #212 228     *

       Plaintiff,              *

          v.                *        2:06-CV-384-WKW
                                          (WO)

SAMUEL RAYAPATI, M.D., *et al.*,     *

       Defendants.        *

_____

## RECOMMENDATION OF THE MAGISTRATE JUDGE

In this 42 U.S.C. § 1983 action, James Moon ["Moon"], a state inmate, challenges the constitutionality of actions taken against him during his incarceration at the Ventress Correctional Facility. Specifically, Moon complains that he was subjected to inadequate and untimely medical and dental treatment as well as unconstitutional conditions of confinement, that his inmate account was improperly frozen, and that the interest generated from inmate accounts goes to the Alabama Department of Corrections rather than the prisoners.[1] Moon names as defendants Warden J.C. Giles, Sergeant Sherwin Carter, Captain Larry Monk, Associate Commissioner Ruth Naglich, Commissioner Richard Allen, Dr. William Shirley,

---

[1] The court addresses the claims raised and presented in Plaintiff's complaint. To the extent Moon presents new claims and allegations against the named defendants in his opposition which were not presented in his original complaint nor in any properly filed amendment to the complaint (*see Doc. Nos. 42-48, 110, 116*), those claims and allegations are not properly before the court, and as such, they are not addressed herein. Moon is free, however, to file a separate civil action if he wishes to pursue such new and/or additional claims and allegations against the named defendants.

Dr. Marvin West, Dr. Travis Miers, Prison Health Services, Inc., ["PHS"], Nurse Nettie Burks, Nurse Anthonette Marsh, and Dr. Samuel Rayapati.  Moon seeks declaratory and injunctive relief and monetary damages for the alleged violations of his constitutional rights. (*Doc. No. 1*.)        In accordance with the  orders of the court, Defendants filed answers, special reports, supplemental special reports, and supporting evidentiary material in response to the allegations contained in the complaint.   The court then informed Moon that Defendants' special reports, as supplemented,  may, at any time, be treated as  motions for summary judgment, and the court explained to Moon the proper manner in which to respond to a motion for summary judgment. Moon filed  responses to the  special reports and supplemental special reports filed by Defendants.   This case is now pending on Defendants' motions for summary judgment.   Upon consideration of the motions, the evidentiary materials filed in support thereof, and Moon's opposition to these motions, the court concludes that Defendants' motions for summary judgment are due to be granted.

## I.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir.2007) (*per curiam*) (quoting Fed.R.Civ.P. 56©).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis

for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence showing there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

Defendants have met their evidentiary burden and demonstrated the absence of a genuine issue of material fact. Thus, the burden shifts to Moon to establish, with evidence beyond the pleadings, that a genuine issue material to his case exists. *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991); *Celotex*, 477 U.S. at 324 (non-movant must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'"); Fed.R.Civ.P. 56(e) ("When a motion for summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials of [his] pleading, but [his] response ... must set forth specific facts showing that there is a genuine issue for trial."). A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

In civil actions filed by inmates, federal courts

must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord

deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, ___ U.S. ___, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006). Consequently, to survive Defendants' properly supported motions for summary judgment, Moon is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Anderson*, 477 U.S. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not provide sufficient evidence to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging a defendant's actions); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th

Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248. "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the

court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party, and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine issue of material fact. *Beard*, ___ U.S. at ___, 126 S.Ct. At 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). In this case, Moon fails to demonstrate a requisite genuine issue of material fact in order to preclude summary judgment. *Matsushita*, 475 U.S. at 587.

## II. DISCUSSION

*A. Injunctive Relief*

Moon is no longer housed at Ventress which is where he was incarcerated when he filed this action.[2] The transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief. *See County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *see also Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (past exposure to even illegal

---

[2]During the pendency of this action, Moon was transferred from Ventress to another correctional facility.

conduct does not in and of itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing present injury or real and immediate threat of repeated injury). As it is clear from the pleadings and records before the court that Moon is no longer incarcerated at Ventress, his requests for declaratory and injunctive relief, which have been rendered moot as a result of his transfer, are due to be dismissed.

*B. The Medical/Dental Claims*

Moon challenges the constitutionality of medical and dental care provided to him during his confinement at the Ventress Correctional Facility ["Ventress"]. He claims that Defendant Rayapati delayed providing him with a follow-up esophagogastroduodenscopy (EGD) and failed to follow post-operative instructions as recommended by a free world physician, failed to transfer him to another institution in order to receive dental treatment for abscessed teeth and swelling gums during a ten month period when Ventress lacked a full time dentist, caused him to suffer esophageal erosion as a result of prolonged treatment with pain medication, failed to provide him with proper medical care and pain medication during an attack of pancreatitis, and retaliated against him by removing his profiles for a soft diet and no prolonged standing and by failing to give him a bottom bunk profile. He complains that Defendants West, Meirs, and Shirley denied him adequate dental care for abscessed and/or broken teeth and bleeding gums, and failed to timely provide him with dentures and dental cleanings. He complains that Defendant Marsh failed to give him pain medication following a surgical procedure and failed to follow instructions of another health care

provider which caused him to experience nausea and vomiting. He complains that Defendant Burks delayed in responding to sick call request slips and grievances as well as in adhering to medical recommendations made by a free world physician. Finally, Moon claims that PHS, Inc., is "guilty of dereliction of duty" for its failure to hire a permanent dentist at Ventress for several months and for its failure to properly care and treat inmates' medical and dental needs. In response to the claims of inadequate medical and dental care presented in the complaint, the medical and dental defendants argue that such claims are due to be dismissed because Moon failed to properly exhaust his administrative remedies as directed by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). (*Doc. Nos. 24, 26, 33.*)

The PLRA requires exhaustion of available administrative remedies before a prisoner can seek relief in federal court on a 42 U.S.C. § 1983 complaint. Specifically, 42 U.S.C. § 1997e(a) directs that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." "Congress has provided in § 1997(e)(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative remedies." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion of all available administrative remedies is a

precondition to litigation and a federal court cannot waive the exhaustion requirement. *Booth*, 532 U.S. at 741; *Alexande*r v. Hawk, 159 F.3d 1321, 1325 (11ᵗʰ Cir. 1998); *Woodford v. Ngo*, ___ U.S. ___, 126 S.Ct. 2378, 2382 (2006).  Moreover, "the PLRA exhaustion requirement requires **proper exhaustion**."  *Ngo*, 126 S.Ct. at 2387 (emphasis added).

The Supreme Court in *Woodford* determined "[proper exhaustion] means ... that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." 126 S.Ct. at 2384.  The Court further explained "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules [prior to seeking relief from a federal court] because no adjudicative system can function effectively without imposing some orderly structure on the courts of its proceedings . . .  Construing § 1997e(a) to require proper exhaustion . . . fits with the general scheme of the PLRA, whereas [a contrary] interpretation [allowing an inmate to bring suit in federal court once administrative remedies are no longer available] would turn that provision into a largely useless appendage."  *Id*. at 2386.  This interpretation of the PLRA's exhaustion requirement "carries a sanction" for noncompliance and avoids "mak[ing] the PLRA exhaustion scheme wholly ineffective."  *Id*. at 2388.  Consequently, a prisoner cannot "proceed . . . to federal court" after bypassing available administrative remedies, either by failing to properly exhaust administrative remedies or waiting until such remedies are no longer available, as allowing federal review under these circumstances would impose "no significant sanction" on the prisoner and "the

PLRA did not create such a toothless scheme." *Id.*   In determining whether a plaintiff has exhausted his administrative remedies, a court does "not review the effectiveness of those remedies, but rather whether remedies were available and exhausted." *Miller v. Tanner*, 196 F.3d 1190, 1193 (11th Cir. 1999) (citing *Alexander*, 159 F.3d 1326).

The record before the court establishes that during Moon's confinement at Ventress, a grievance procedure for inmate healthcare complaints was available.[3] (*Doc. No. 24, Exh. E.*) Specifically, PHS, Inc., has a three-step procedure for identifying and addressing inmate healthcare grievances at Ventress. The first step requires that an inmate who has a grievance regarding a healthcare issue must submit to the healthcare unit an "Inmate Request Slip." An inmate not satisfied with the response to the inmate request slip may request from the healthcare unit an inmate grievance form.  If still unsatisfied with the health services administrator's response to the inmate grievance, an inmate may request from the healthcare unit an inmate grievance appeal form. (*Doc. No. 24, Exh. E- Burks Affidavit.*)     T h e evidentiary materials submitted by both Moon and the medical and dental  defendants demonstrate that Moon failed to either file a grievance with respect to the actions about which he complains in the instant cause of action and/or failed to properly exhaust the administrative remedies available to him.  While Moon initiated the grievance procedure on

---

[3]By its terms, the PLRA's exhaustion requirement is not limited to actions respecting prison conditions at the prisoner's current place of confinement. *See Medina-Claudio v. Rodriguez-Mateo,* 292 F.3d 31, 35 (1st Cir. 2002) (the fact that the plaintiff happened to be a prisoner in various locations, and under the custody of different officials, did not affect his obligation to exhaust his administrative remedies before filing suit).

several occasions complaining of matters made the subject of the instant action, it is clear that at the time of the filing of this case he had not fully exhausted the administrative grievance procedures available to him. Moon must grant jail medical personnel a reasonable time to investigate and respond to his grievance, as well as avail himself of any administrative appeals process before he files an action in federal court. Because exhaustion is a precondition to suit and because the full exhaustion of all administrative grievance procedures are important for effectively determining how the institution addressed the issues presented to it, it is necessary for Moon to comply with the available grievance process.

The record in this case establishes that PHS, Inc., provided a grievance procedure for inmate health-related complaints relating to the receipt of dental and medical care and that, at all times relevant to this litigation, the healthcare providers at Ventress maintained an inmate grievance procedure. (*See Doc. No. 24, Exh. E- Burks Affidavit*.) According to the healthcare defendants, this administrative remedy is available to all inmates housed at Ventress, including Moon during his incarceration at that facility. The healthcare defendants contend that Moon's medical records reflect that he failed to fully exhaust the available grievance procedures regarding the matters made the subject of his complaint. The court rejects Moon's self-serving assertion that there is effectively no administrative remedies available at Ventress due to the manner in which prison healthcare personnel handle the grievance process, *e.g.*,"*if* you file a grievance appeal Mrs. Burks answers that too . . . [s]o as you see the buck stops here," and "it takes over a month for her to answer this grievance,"

11

(*Doc. No. 45 at 5*) (emphasis added). Moon's subjective belief that resort to administrative remedies would have been futile and/or ineffectual is not relevant. *Woodford*, 126 S.Ct. 2382. The court also rejects Moon's averment that he exhausted the available grievance procedure by going "above and beyond Administrative Remedies available" because he contacted the Commissioner and Associate Commissioner of the Alabama Department of Corrections with regard to his medical and dental complaints. (*Doc. No. 45 at 7*.) As noted, the PLRA exhaustion requirement requires full *and* proper exhaustion. *Woodford*, 126 S.Ct. at 2382.

The parties to this action have presented evidence that a grievance procedure was available to Moon while he was incarcerated at Ventress, that he was provided with and/or had access to relevant grievance forms, and that he had numerous opportunities to resort to and exhaust the grievance process available to him prior to filing this action. (*See Doc. No. 24 at Exh. E - Burks Affidavit*; *Doc. No. 49*.) *See Kozuh v. Nichols*, 185 Fed. Appx. 874, 878 (11th Cir. 2006) (*per curiam*) (rejecting prisoner's argument that he "was thwarted from bringing his grievances" where the evidence showed that he "was able to file numerous informal complaints" and that administrative remedies were available), *reh'g en banc denied*, 213 Fed. Appx. 970 (11th Cir. 2006) (Table), cert. denied, ___ U.S. ___, 127 S.Ct. 1283 (2007). The evidence submitted on the healthcare defendants' summary judgment motions establishes that Moon failed to complete the health service provider's three-step grievance procedure for his claims. Moon's opposition offers nothing to refute the healthcare defendants' evidence on this point. The court, therefore, concludes that Moon's claims for

12

relief presented in this cause of action against the medical and dental defendants are subject to dismissal as he did not properly exhaust an administrative remedy previously available to him which is a precondition to proceeding in this court on his claims of inadequate medical and dental care asserted against Defendants PHS, Inc., Rayapati, Miers, Shirley, West, Marsh, and Burks. *Woodford*, 126 S.Ct. at 2384-2388.

*C.  Respondeat Superior*

> *1.  Defendants Allen and Naglich*

It is undisputed that Commissioner Allen and Associate Commissioner Naglich were not involved in the provision of Moon's medical care. Moreover, there is no indication much less allegation that the actions about which Moon complains occurred pursuant to a policy enacted by them.

A defendant cannot be held liable under § 1983 based on a theory of respondeat superior or on the basis of vicarious liability. *Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1308 (11th Cir. 2006), *cert. denied*, ____ U.S. ____, 2007 WL 1461087 (May 21, 2007) (" Supervisory officials cannot be held liable under § 1983 for the unconstitutional actions of their subordinates based on respondeat superior liability. *Hartley v. Parnell,* 193 F.3d 1263, 1269 (11th Cir.1999)."); *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994); *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986). "Instead, supervisors can be held personally liable when either (1) the supervisor personally participates in the alleged constitutional violation, or (2) there is a causal connection between the actions of the

13

supervisor and the alleged constitutional violation." *Gray*, 458 F.3d at 1308 (citation omitted); *Jones v. Preuit & Mauldin*, 851 F.2d 1321 (11th Cir. 1988). Moon does not allege that Defendants Allen and Naglich personally participated in the provision of medical or dental care made the basis of the instant complaint. Thus, the court must address his claims against these defendants under the second prong. Under such method of liability, "'[t]he causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.' [*Hartley*, *supra*.] (quoting *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990)." *Gray*, 458 F.3d at 1308. Furthermore, to sufficiently notify the supervisor, the deprivations must not only be widespread, they also "must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Brown*, 906 F.2d at 671.

Defendants Allen and Naglich did not personally participate in the provision of medical and dental care about which Moon complains. Moon has presented no probative evidence of widespread, obvious, flagrant, or rampant abuse of continuing duration in the face of which Defendants Allen and Naglich failed to take corrective action. In light of the foregoing, the court concludes that Defendants Allen and Naglich's motion for summary judgment with respect to Moon's claims against them is due to be granted.

*2. Warden Giles*

Moon argues that Defendant Giles knew or should have known of the violations of his constitutional rights in regard to his medical and dental care claims because he put him

on notice of the violations via both internal complaints and communications from his family members.[4]  Warden Giles denies violating Moon's constitutional right.  As the Warden of Ventress,  Warden Giles maintains that neither he nor his subordinates has any medical expertise and cannot make medical determinations for an inmate.  Rather, Warden Giles states it is the responsibility of correctional staff to ensure that inmates have access to healthcare personnel and such was the case with Moon.  Warden Giles and his subordinates otherwise rely on the medical expertise of the prison healthcare staff to diagnose and treat inmates' health related needs.  (*Doc. No. 10, Exh. 1 - Giles Affidavit, Exh. 2 - Monk Affidavit*.)

To prevail against a defendant, Moon must show that the defendant was involved in acts or omissions that resulted in the constitutional deprivation.  *Hale v. Tallapoosa County*, 50 F.3d 1579 (11th Cir. 1995).  The language of § 1983 plainly requires proof of an affirmative causal connection between the actions taken by a defendant and the constitutional deprivation.  *Swint v. City of Wadley, Ala.,* 51 F.3d 988, 990 (11th Cir. 1995).

Moon has produced no evidence and makes no argument against Warden Giles that he either personally participated in the alleged constitutional violation or instigated or adopted a policy that violated Moon's constitutional rights.  *See Hill v. Dekalb Regional*

---

[4] Moon points out that Warden Giles, in response to a phone call from Moon's mother concerning his dental issues and esophageal stricture, spoke to Nurse Burks as well as Moon concerning his medical concerns. Moon further acknowledges that Warden Giles forwarded to Nurse Burks correspondence from Moon regarding his medical and dental complaints. (*Doc. No. 42 at 5*.)

15

*Youth Detention Center*, 40 F.3d 1176, 1192 (11th Cir. 1994). As noted, the law is clear that supervisory personnel cannot be liable under 42 U.S.C. § 1983 for the action of their subordinates under a theory of respondeat superior or vicarious responsibility. *Monell v. Dept. of Soc. Svces.*, 436 U.S. 658, 691 (1978); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003); *Greason v. Kemp*, 891 F.2d 829, 836 (11th Cir. 1990). Warden Giles is, therefore, only liable if he personally participated in the allegedly unconstitutional conduct or if there is "a causal connection between his actions . . . and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360. Moon must present sufficient evidence of either (1) a "custom or policy [that] result[s] in deliberate indifference to constitutional rights or . . . facts [that] support an inference that the supervisor directed subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so;" or (2) "a history of widespread abuse [that] put[ ] the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." *Cottone*, 326 F.3d at 1360 (internal quotation marks and citations omitted) (second alteration in original). *See also Brown*, 906 at 671.

Moon has presented no evidence from which a reasonable trier of fact could conclude that Warden Giles personally participated in the alleged constitutional violation, he instigated or adopted a policy that resulted in deliberate indifference to constitutional rights, or that there were incidences of widespread abuse. Moreover, Moon has pointed to no case which establishes that prison officials have a duty to directly supervise medical staff, to set policy

16

for the medical staff or to intervene in treatment decisions where they are not informed by medical personnel that intervention is necessary to prevent a constitutional wrong. *See Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977) (a medical treatment claim cannot be brought against the managing officers of a prison absent allegations that they were personally connected with the denial of treatment). Defendant Giles' dispositive motion regarding Moon's claims of inadequate medical and dental care is, therefore, due to be granted.

*D.  The Conditions Claim*

Only those conditions which deny inmates "the minimal civilized measure of life's necessities" are grave enough to violate the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (19891).[5] "'[T]he Constitution does not mandate comfortable prisons.' *Id.* at 349, 101 S.Ct. at 2400. If prison conditions are merely 'restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.' *Id.* at 347, 101 S.Ct. at 2399. Generally speaking, prison conditions rise to the level of an Eighth Amendment violation only when they 'involve the wanton and unnecessary infliction of pain.' *Id.*" *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004). A prison official may likewise be held liable under the Eighth Amendment for acting with "'deliberate indifference'" to an inmate's health or safety when the official knows that the inmate faces "a substantial risk of serious harm" and disregards that risk by failing to take reasonable

---

[5]The Eighth Amendment applies to the states through the Fourteenth Amendment. *Rhodes,* 452 U.S. at 344-345.

measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). A constitutional violation occurs only when a plaintiff establishes the existence of "a substantial risk of serious harm, of which the official is subjectively aware, ... and [that] the official does not respond[] reasonably to the risk'. . ." *Marsh v. Butler County*, 268 F.3d 1014, 1028 (11th Cir. 2001)(en banc), *quoting Farmer*, 511 U.S. at 844. Thus, in order to survive summary judgment on his claims challenging the conditions of confinement, Moon is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Hale*, 50 F.3d at 1582; *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003) ("To be deliberately indifferent, Defendants must have been 'subjectively aware of the substantial risk of serious harm in order to have had a "'sufficiently culpable state of mind.'"" *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991). . . Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists-and the prison official must also 'draw that inference.' *Farmer,* 511 U.S. at 837, 114 S.Ct. at 1979.").

The living conditions within a prison will constitute cruel and unusual punishment when the conditions involve or result in "wanton and unnecessary infliction of pain, [or] . . . [are] grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes*, 452 U.S. at 347. "Conditions . . . alone or in combination, may deprive inmates of

18

the minimal civilized measure of life's necessities. Such conditions could be cruel and unusual under the contemporary standard of decency. . . But conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional." *Id*. at 347. To determine whether conditions of confinement constitute cruel and unusual punishment, the court must look to the effect the condition has upon the inmate. *Id*. at 366. In a case involving conditions of confinement generally or several different conditions, the court should consider whether the claims together amount to conditions which fall below constitutional standards. *Hamm v. De Kalb County*, 774 F.2d 1567 (11th Cir. 1985); *see also Chandler v. Baird*, 926 F.2d 1057 (11th Cir. 1991).

Moon contends that prison officials show deliberate indifference to inmate's medical, dental, and psychiatric care needs due to overcrowding, inadequate staffing, and failure to maintain an environment conducive to treatment of serious medical illnesses. Moon states that such conditions caused him to suffer extreme physical and mental hardship. (*See Doc. No. 1 at 7*.) These conclusory allegations of unconstitutional conditions, without more and whether viewed alone or in the aggregate, are not "sufficiently serious" enough to implicate the Constitution. Moon had not shown that the named correctional defendants knew of an obvious risk of serious harm to him as a result of the above-noted deprivations and disregarded that risk, *Farmer*, 511 U.S. at 837, *Marsh*, 268 F.3d at 1028, or that the named correctional defendants' actions resulted in the denial of the minimal civilized measure of life's necessities. *Rhodes*, 452 U.S. at 347.

19

Moon next claims that Ventress dispenses inadequate supplies of toothpaste. He contends that the prison distributes only a 2.7 ounce tube of toothpaste to inmates every two months which will last only about two weeks. He asserts that "[i]f you are not awake around 11:00 p.m. til midnight on Friday nights they will not leave you any toothpaste at the foot of your bed." (*Doc. No. 1 at 5-6*.) Moon further claims that while he was on restriction for a violation of institutional rules from February 15, 2006 to on or about April 1, 2006, sanctions or which included a temporary loss of canteen privileges, he sent an inmate request slip on March 13, 2006 to Defendant Monk asking that he be taken off canteen restriction so that he could purchase toothpaste and acid reflux tablets. Defendant Monk replied that he "only help[s] out when asked by the arresting officer." On March 20, 2006 Moon sent an inmate request slip to Defendant Carter asking for acid reflux tablets and toothpaste and advising Defendant Carter that other inmates involved in the same rule violation as he was had already been removed from restriction. Defendant Carter replied "restrictions end on 4-1-06. Stop violating." (Doc. No. 42 at 6-7;Doc. No. 49 at 148A/B. (emphasis in original). Moon alleges that because his requests to Defendant Carter and Monk were not granted, he went without toothpaste during his 45-day stay on restriction. (*Doc. No. 42 at 7.*)

In response to Moon's allegations, Defendant Monk maintains that Moon could buy supplies from the canteen or alternatively receive the regular issue of hygiene items supplied by the prison. (*Doc. No. 105, Exh. 1 - Monk Affidavit.*) The correctional defendants' evidence

reflects that Moon made several purchases from the canteen prior to his placement on restriction. (*Doc. No. 105, Attachment - Inmate PMOD Account.*) Given Moon's statement that the regular issue of toothpaste at Ventress lasted a couple of weeks but was dispensed only six times a year, it is reasonable to assume that he would make regular purchases of toothpaste from the prison commissary.

Notwithstanding any ability or proclivity Moon may have had to purchase toothpaste from the canteen prior to or during the time period in question, he has failed to demonstrate any deliberate indifference or reckless disregard by Defendants Monk and Carter with respect to his health or safety. The undisputed evidence shows that Defendants Monk and Carter were each sent one request by Moon in mid-March 2006 wherein he indicated a desire to purchase toothpaste, antacid tablets, and other various hygiene articles. Nothing in these singular requests put Defendants Monk and Carter on notice that Moon was completely out of toothpaste and/or that he was unable to obtain any toothpaste at all from any available source in the prison, or that he needed antacid tablets for what appears to be Moon's self-diagnosed need for additional amounts of antacids over and above the amount he was already receiving from the infirmary.[6] The evidence before the court fails to show that Moon made any additional requests for toothpaste or antacid tablets while on restriction or that he

---

[6]Even taking as true Moon's assertion that he was not receiving the proper amount of medication, that issue would be a matter for medical personnel. The record shows that Moon was seen in the infirmary several times in March 2006 and sent request slips to Warden Giles during that time period about various medical matters but there is no evidence that he reiterated any complaints he had regarding a lack of toothpaste or his desire for additional antacids during the time he was on restriction. (*See e.g., Doc. No. 24-3 at 17, 42, 53, 58, 59, 77, Doc. No. 36, Doc. No. 49 at 115, 116.*)

specifically apprised Defendants Monk and Carter of his reasons for requesting that he be removed from restriction so that he could "make store" in order to purchase various hygiene articles and antacid tablets.[7]

Here, Defendants Monk and Carter deny being deliberately indifferent to the health, safety, or well-being of Moon. (*Doc. No. 10, Exhs. 2-3; Doc. No. 105, Exh. 1.*) Despite his contentions regarding the conditions of confinement as described above, Moon fails to proffer any evidence, other than his own self-serving statements, that the challenged conditions denied him the minimal civilized measure of life's necessities or subjected him to a wanton and unnecessary infliction of pain. *Wilson*, 501 U.S. at 298-299; *Rhodes*, 452 U.S. at 347. Furthermore, he fails to demonstrate any deliberate indifference or reckless disregard by Defendants Monk and Carter with respect to his health, safety, or well-being. Notable, the record is completely devoid of any evidence that Defendants Monk or Carter had knowledge of specific facts regarding a particular condition from which an inference could be drawn that a substantial risk of harm existed to Moon, that they actually drew this inference and thereafter ignored the attendant risk of harm. Consequently, summary judgment is due to be granted in favor of Defendants Monk and Carter on Moon's this claim. *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999); *Carter*, 352 F.3d at 1349-1350.

---

[7]In his request to Defendant Monk made on March 13, 2006, Moon requested "razors, shampoo, and things," in addition to toothpaste and "ancid [sic] tabs for reflux condition." (*Doc. No. 49 at 148A.*)

*E. The Due Process Claim*s

*1. Interest Earnings Claim*

Moon alleges that on February 9, 2006 he attempted to make a purchase from the prison canteen for "such items as toothpaste [and] antacid tablets" and learned at that time that $110.00 of the funds in his prisoner money on deposit ["PMOD"] account had been frozen. Moon complains that the conduct of the Alabama Department of Corrections' ["ADOC"] in freezing inmate funds defrauds prisoners and amounts to criminal conduct inasmuch as inmates are unable to use the frozen funds and yet the ADOC is still able to make interest off the money in the PMOD accounts. (*Doc. No. 1 at 8*.)

Moon fails to specify what criminal law the ADOC is in violation of by freezing inmate accounts and/or funds or by its receipt of interest which accrues on PMOD accounts and/ or how such conduct constitutes a fraud upon inmates. Nevertheless, the court finds that Moon has failed to establish that the ADOC's receipt of interest from PMOD accounts violates either federal or state law.

In *Givens v. Alabama Department of Corrections*, 381 F.3d 1064 (11th Cir. 2004), the court concluded that Alabama has not created a property interest in its inmates in the interest that accrues on their PMOD accounts via common law, statute, or regulation. Rather, PMOD accounts are administered in accordance with the ADOC's *Manual of Accounting Procedures for Institutions and Community Based Facilities*. *Id*. at 1065. According to a specific provision in the manual, "inmates are not entitled to receive interest

on PMOD accounts. *Id*.   An inmate may, at most, have only a limited property interest in the principle amount in his or her PMOD account.   *Id*. at 1069.   Furthermore, the PMOD accounts are maintained by the ADOC as a convenience for inmates at a considerable cost to the Department.   *Id*. at 1065.   Although service fees are not imposed on the PMOD accounts to offset the cost of the inmate accounts, interest earned by the Department on these accounts helps to defray at least a portion of the costs and also funds various recreational activities for inmates.   *Id*.; *see also Givens v. Alabama Department of Corrections*, 2003 WL 25739367 (N.D. Ala. 2003).

Here, Moon has only a limited property interest, to the extent established by state law, in the principle that he has accumulated within his inmate account.  Thus,  Moon's allegation that prison officials are improperly appropriating interest earned on the principal amounts in inmate accounts, which is used to help cover the cost of the PMOD accounts as well as cover other activities for the benefit of inmates, entitles him to no relief as he has no protected property rights under either common law, statute, regulation, or policy, in those funds. *See Givens*, 381 F.3d at 1069; *Washlefske v. Winston*, 234 F.3d 179, 185-86 (4th Cir.2000); *Hatfield v. Scott*, 306 F.3d 223 (5th Cir. 2002).

   *2. Frozen Funds Claim*

As noted, Moon complains that prison officials improperly froze $110.00 posted to his account.  He complains that on February 9, 2006  he attempted to spend "some of this $110.00 for store . . . items [such] as toothpaste and antacid tab[l]ets" but was unable to use

24

those funds. (*Doc. No. 1 at 8*.) Further, Moon alleges that the frozen funds are not available for an inmate's use until his or her release from prison. (*Id*.)

The undisputed facts show the following. Moon purchased commissary items on February 2 (3 separate purchases), 3, 6, 7, 8, **9**, 10, and 14 (3 separate purchases), 2006. He received a deposit of $110.00 to his PMOD account on February 8, 2006 which created a balance in that account of $178.72.[8] Prison officials froze the February 8 deposit because it represented receipt of funds in violation of prison rules. Specifically, it appears from the unrefuted documents and records before the court that Moon and seven other inmates were involved in illegal receipt of money orders from "Shannon Crump's mother." As a result of this activity, involved with and/or connected to the inmates' rules violation under Administrative Regulation 403 of bartering and trading with other inmates,[9] Moon and seven of his fellow inmates were placed on restriction on February 15, 2006. At the time Moon's restriction began on February 15, his PMOD balance was $110.66 as he had drawn down his balance to this amount as a result of canteen purchases made on February 8, 9, and 10, 2006. During the time he was on restriction, Moon's mother made deposits to his PMOD account totaling $170.00. On April 3, 2006, after he was removed from restricted status, Moon was able to resume making commissary purchases as result of the additional funds deposited by

---

[8]The transaction information on Moon's PMOD account reflects that he received $110.00 on February 8, 2006 and that such amount was not from his mother, Earline Moon. Further, contrary to Moon's assertion, Ms. Moon made no deposits to his PMOD account on February 9, 2006. (*Doc. No. 105, Exh. 1 at 10*.)

[9]*Available at http://www.doc.state.al.us*.

his mother. (*Doc. No. 10, Exhs. 1, 2, Doc. No. 105, Exh. 1 at 9-10, Doc. No. 110, Exhs. C, D, G, M.*)

The court as already determined that Moon has failed to demonstrate that the correctional defendants were deliberately indifferent his health, safety, or well-being during the time period when he was on restriction and temporarily unable to buy goods from the canteen. Moon's contention that he was unable to make a canteen purchase on February 9, 2006 due to a freeze on his PMOD funds is belied by the record. Further, his claim that prison officials unconstitutionally deprived him of his property by freezing funds in his PMOD account is without merit.

As noted, this Circuit recognizes that inmates in the Alabama prison system have, at most, a limited property right in the principal amount contained in their PMOD accounts whether the funds making up such principal derive from wages earned in prison or obtained from outside sources. *See Givens*, 381 F.3d at 1069.[10] A due process claim under the Fourteenth Amendment, however, can only be maintained where there exists a constitutionally cognizable liberty or property interest with which the state has interfered. *See Bd. of Regents of State Colls. v .Roth*, 408 U.S. 564, 569 (1972). An inmate has no property right protected by the Fourteenth Amendment to receive an unauthorized and/or

---

[10]Although the plaintiff in *Givens* filed suit complaining about an inability to earn interest on wages posted to his PMOD account from his employment through work release, the court's analysis is equally applicable to allegations regarding the ability earn interest on the principal within an inmate's PMOD account with respect to receipt of funds from sources other than wages.

contraband money order while in prison. That is because rules prohibiting prisoners from possessing unauthorized property and permitting seizure of such property are constitutional. Clearly, the state has "a compelling interest in maintaining security and order in its prisons and, to the extent that it further this interest in reasonable and non-arbitrary ways, property claims by inmates must give way." *Harris v. Forsyth*, 735 F.2d 1235 (11th Cir.1984) (holding that confiscation of a prisoner's money, pursuant to a rule forbidding prisoners to possess money, did not constitute an unconstitutional deprivation of property in violation of § 1983) (quoting *Sullivan v. Ford*, 609 F.2d 197 (5th Cir. 1980). *See also Baker v. Piggott*, 833 F.2d 1539 (11th Cir.1987) (same).

The law is well settled that prison officials may legitimately ban receipt of money as one type of contraband. *See Bell v. Wolfish*, 441 U.S. 520, 551 (1979). Further, substantial deference is given to the professional judgment of prison administrators because they have "significant responsibility for defining the legitimate goals of [the prison] and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

In this case, the undisputed evidence reflects that Moon was subjected to disciplinary action and/or restrictions along with seven other inmates for violating institutional rules which involved receipt of funds from an unauthorized individual. (*Doc. No. 105, Exh. 1, Doc. No. 110*.) The ADOC has a legitimate interest in controlling both the amount and source of funds received by inmates. The correctional defendants have presented evidence

27

that their conduct in freezing the funds in question derived from the institution's legitimate penological interest in preventing Moon from engaging in conduct unauthorized and/or prohibited by institutional rules and security with respect to such property. The court, therefore, finds that under the circumstances presented here, correctional officials' actions were reasonably related to a legitimate penological interest and represented a reasonable restriction on Moon's right to receive funds from certain outside sources. *See Bell* 441 U.S. at 554-55. Moreover, as Moon concedes and the correctional defendants indicate, his inability to access the frozen funds is limited only to the duration of his confinement. Thus, upon Moon's release from prison or his passing, the funds remaining in his PMOD account will be given to him or his estate. In light of the foregoing, the court finds that Defendants are entitled to summary judgment on this due process claim.

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendants' PHS, Inc., Rayapati, Miers, West, Shirley, Marsh, and Burks' motions for summary judgment (*Doc. Nos. 24, 26, 33, 113*) be GRANTED to the extent that these defendants seek dismissal of this case due to Plaintiff's failure to exhaust an administrative remedy;

2. Plaintiff's claims against Defendants PHS, Inc., Rayapati, Miers, West, Shirley, Marsh, and Burks be DISMISSED without prejudice in accordance with the provisions of 42 U.S.C. § 1997e(a). *Woodford v. Ngo*, ___ U.S. ___, 126 S.Ct. 2378 (2006);

3.   Defendants Allen, Naglich, Giles, Monk and Carter's motion for summary judgment (*Doc. Nos. 10, 105*) be GRANTED;

4.  Plaintiff's claims against Defendants Allen, Naglich, Giles, Monk, and Carter be DISMISSED with prejudice; and

5.  The costs of this proceeding be TAXED against Plaintiff for which execution may issue.

It is further

ORDERED that on or before **August 24, 2008** the parties may file objections to the Recommendation.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit

handed down prior to the close of business on September 30, 1981.

Done, this 11th day of August 2008.

        /s/   Wallace Capel, jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE